UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UMAR ALLI

           PLAINTIFF,

      VS.

STEWARD-BOWDEN, ET AL

          DEFENDANTS,

ORDER TO AMEND COMPLAINT
IN ACCORDANCE TO THE
MAGISTRATE JUDGES ORDERS
11-cv-4952 (PKC)(KNF)

       I Umar Alli plaintiff in the above refferenced matter in accordance to the magistrate judges orders submits without leave of the court a amended complaint. This complaint is filed timely in accordance to the courts order and shall be deemed sufficient. The proposed amended complaint is attacted to this notices and a copy is mailed to the defense counsel in this matter. Please produce a summons and all other necessary document pursuant to the FEDERAL RULES OF CIVIL PROCEDURE..

DATED; OCTOBER 5, 2012
OSSINING , NEW YORK

                    RESPECTFULLY

                    PRO SE
                  UMAR ALLI
                  SING SING
                  354 HUNTER ST.
                  OSSINING N.Y,10542

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED #: 10-18-12

## AFFIRMATION OF SERVICE

I Umar Alli pro se plaintiff in the matter Alli V. Steward-Bowden Et Al . 11-CV-4952(PKC)(KNF). Hereby sworn under prejury mails the below stated documents to the below stated parties through Sing Sing Correction Facility First class mail on the date of October 5, 2012.

        A. Amended Complaint

        B. Order to amend complaint....

To.  Pro se office
     SOuthen District Of New York
     United States District Court
     500 Pearl St.
     New York New York, 10007

CC.  Patrict Beath
     City Law Department
     100 Church St.
     New York New York 10007

DATED; October 5, 2012
OSSINING N.Y

              Umar Alli

              354 Hunter. ST
              OSSINING N.Y 10542

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UMAR. Alli:

Plaintiff

Vs.

Captain Lisa, Steward-Bowden(1285);
Security captain B. Behari;(1603);
Adjudication Captain Joesph, Caputo(481)
Warden Kathleen, Mulvey; Warden
Rose, Argo, "John Doe" supervising
Warden; "John Doe" Deputy Warden
Of Security. Of G.R.V.C; Commissioner
Of the New york City Department of
Corrections  Dora Schriro; "John Doe"
Department of Corrections Cheif Of
Department; Department Of Corrections
Deputy Commissioner "John Doe";
Chair of the Broad of Corrections
Hildy J. Simmons; Vice-Chair Of
the Board Of Corrections; Executive
Director Of the Board Of Corrections
Richard. T. Wolf; Deputy Executive
Of the Broad Of Corrections Cathy
Potter; Director of field Operation
Of the Broad Of Corrections; Officer
T. Dixon(17963); Officer Victor(14410);
Officer Alceus(18380); Officer Arkhurst(18507)
Officer Phillips(18518); Officer Velez(11352);
Officer Bohr(13104); Captain Dunbar(717)
Officers B. Bunton; Correctional Health Services
City Of New York.    Defendants.

First Amended
Complaint

11-CV-4952

(PKC)-(KNF)

Jury Demand

Pro se Plaintiff Umar Alli, for this Complaint, alleges as follows:

## Preliminary Statement

1. Plaintiff Umar Alli is the victim of a perverse and pervasive practice, Sanctioned at the highest levels of the New York City Department of Corrections (the "Department" or "DOC"), In which Correction Officers at New York City Jails (Rikers Island) Engaged in unnecessary and unwarranted excessive Use's of force In the Mini Clinic of their facilities. These Officers would use excessive malicious force in the Confines of an inmates Cell, then escort the inmate to the Minic Clinic to continue these malicious assault Methods. These Practices would routinely occur in the Punitive Segregation Units and Punitive Segregation Jails of Rikers Island. Mainly facilities George.R. Vienro. Center (G.R.V.C) and Otis Bantum Correction Center (O.B.C.C). Correction Officers tend to use this excessive force during exractions and or alleged Attempts to prevent an inmate from Committing Suicide Or self harm. Regardless of the initial Conduct inmates are taken the Mini Clinic to be Serverely assaualted. Correction Officer Nomaraly enter these mini Clinic When they are Closed, Empty, Or if Occupied they will force the doctors and nurses to leave. Yet it has been Multiple time When the doctors have been Present during the Malicious

2

assaults. Correction Officers also had a Practice and Custom to deprive inmates of daily mandated life necessities. Correction Officers would deprive inmates of phone usuage, working water, flushing toilets, personal property, bedding, hygiene products, incoming/out going personal and or legal mail and showing.

2. These Practices took place as a way of control and discipline. These Post Assault Practices took place to Prevent inmates from reporting the malicious assault to there relatives or investigating authorities, Also as a form of Cruel and Unusual Punishment.

3. The aboved mentioned Practices have been Uncovered and substantiated by investigations of the New York City Department of investigations, D.O.C'S Inspector General, and D.O.C Board of Corrections. As a result Mutiple indictments arose, Mutiple Law suits State and federal, Many officers have been disciplined, complaint upon, fired, or removed from assigned post. Despite the many officers who were disciplined, Many officers have slip through the cracks.

4. To cover these Malicious and Cruel Practices, Correction Officers had a Custom and Practice to; Conspire to make false reports on incidents involving use's of force. This Practice was termed "Write with us"

5. On information and belief, as early as September 2003 a former correction officer Roger Cullen, "See, Jackson v. City of New York, Et. AL, 04 Civ. 5799, In his disposition testified and or complained to the department About the instances of Corruption involving misconduct ranging from excessive force, to lying, and falsifying reports

3

6. In many instances inmates have sought to reveal these unlawful practices. See Andy Ramos 10-cv-8465 (Ramos v. Capt. Merced et al 10-cv-8465 (JGK)(GWG). Where a Pre-trail Detainee Adolescent was assaulted in the mini Clinic of Rikers Island G.R.V.C. As a result Andy Ramos was serverely injuried. Then immeadiately after the assault Ramos was deprived personal property and phone usuage. This is only one of the hundreds relating policies.

7. After these assaults inmate were often taken back to there cells without medical attention, and deprived medical care untill there visual injuries are no longer visable.

8. Inmates were often assaulted in there cells and the Mini clinic, as forms of retaliation. Inmates were often subjected to these retaliation methods due to there; Prior conducts, prior grievance and complaint writing and or "Violating an officers tour." "Violating my tour" is a term used by officers when a inmates fights or fail to follow any rules set by D.O.C, during that officers working shift.

9. These assaults tend to go uncovered due to the officers falsifing report and not allowing inmates to contact relatives and investigation officials.

10. One of the many motives for this brutality stems from the Municipal and supervisory defendants failure to properly train and supervise correction officers.

4.

11. Inadequate Staffing and Supervison, Inadequate Systems for investigating and discipling staff for the misuse of force, and failure to implement defendants use of force Policy, Plays a significant Role in the continuation of these Unconstitutional Practices.

12. facility investigations, investigation of Misuse of force requires several requirements, yet dozenens of these incidents of use's of force or excessive force are not reported. Some of the specific deficiencies are; (1) A agency lack of thoroughness, (2) failure to Pursue unanswered questions, (3) failure to address whether staff conduct actually complied with Policy, (4) Inadequate efforts to identify and interview witnesses, (5) failure to explain how conflicting evidence was resolved, (6) A double standard of interpreting medical evidence (7) Magnification on discrepancies in inmate statements and failure to inquire into discrepancies in staff statements. (8) Use of boilerplate language, and (9) "reaching" for some basis to approve staff conduct.

13. Systematic deficiencies in the stated above areas described above are a significant cause of Misuse of force. failure to guide and train its officers in the correct way to use force if necessary, and its failure to monitor, investigate and discipline the Misuse of force, has allowed and indeed even inevitable and unacceptably cause the high rate Misuse of force by staff on inmates. These Practices have been revealed in Many case such as but not limited to "fisher v. Koehler, 692 F. Supp. 1519 (S.D.N.Y 1989)

5

14. After these forms of brutality medical care is denied or delayed. While a single incident may be view as mere negligence, yet there are repeated examples of such treatment. Bespeaking a deliberate indifference by Prison Authority to the agony engendered haphazard and ill conceived Procedures. It is indeed well settled in the second circuit that a series of incidents closely related in time or action, may disclose a Pattern of Conduct amounting to the deliberate indifference to the medical needs of a Prisoner.

15. In March 2007 Tyreek Shuford, a teenage inmate at Robert B. Davoren Center (RNDC) was seriously and visibly injured. Yet denied medical care until 1 days later. See Shuford v. City of New York, 09 Civ. 00945. On October 17, 2008 inmate Christopher Robinson died while under the supervision of the D.O.C. Inmate Robinson did not receive medical attention and was forced to bleed to death in his cell. These are some of the many instances where inmates where deprived medical care.

15. Through DOC's elaborate report system the City and the Supervisory defendants were aware of the pattern of a large number of incidents involving staff on inmate violence in the mini clinics and cell area of Punitive Segregations of Rikers Island, deprivation of medical care and forms of Cruel and Unusual Punishment. Yet they failed to take sufficient steps to curb such actions.

6

17. The City and the supervisory defendant were also aware, should have been aware, which officers were involved in these incidents, yet failed to take sufficient steps to curb such conduct.

18. The City and the supervisory defendants were also aware, or should have also been aware of the failure of the department to bring disciplinary charges against those officers who sanctioned, participated, or covered up such conduct, and failed to discourage and discipline others from doing so.

19. Through all these cases and department reports, the City and the supervisory defendants have been made aware of the widespread practice by DOC Staff of sanctioning, encouraging, participating, or covering up said conduct. They also have been made aware of the failure of DOC's investigation division to adequately investigate allegations of correction officers complicity in such beatings, a practice that causes further abuse. Defendants conduct constitutes a municipal policy, practice, and custom. Deeply embedded implementing law.

20. Though this information was known to the department defendants failed to protect and were deliberately indifferent to the dangers posed by their insubordinate employee's.

21. As a result Plantiff Umar. Alli was assaulted in his cell and the mini clinic while imprisoned at George. R. Vierno. Center (GRVC) on Rikers Island. Plantiff was also deprived medical care for serious injuries, and subjected to cruel and unusual punishment

7

22. As a result to this incident, Plaintiff Umar Alli has been humiliated by Officers and Inmates. Physically Mr. Alli received bruises and abrasions to his eye, arms, legs, Face r.b cage, Wrist and head. Mr. Alli has lost eye sight permenently requiring surgery. Also due to this incident Mr. Alli has become hearing impaired requiring a hearing aid. Lastly Mr. Alli has suffered and continued to suffer throbing, pain, and disconfort to the lower back, head, and eye.

## Jurisdiction And Venue

23. Jurisdiction is Proper in this Court Pursuant to 28 U.S.C § 1331, because Plaintiff brings Constitutional Claims Under 42 U.S.C § 1983 as well as federal law claims. The Court has Supplemental Jurisdiction Over Plaintiff's Other Claim Pursuant to 28 U.S.C § 1367.

24. Venue is proper Pursuant to 28 U.S.C § 1391(b), as the event giving rise to this action occured within this district. Venue is also Proper because, upon information and belief, defendants are located or do business in this district.

## Demand for Jury trial

25. Plaintiff demands a Jury trial in this action.

8

## The Parties

26. Plaintiff UMAR Alli is a Citizen of the United States and is Currently housed at Five Points Correctional facility. During the relevant time Period, Mr. Alli was a Pre-trail detainee in DOC Custody at the George B. Vierno Center (G.R.V.C) on Rikers Island.

27. At all times relevant hereto defendant Captain Lisa Steward-Bowden, was a housing Area Captain of Rikers Island G.R.V.C. Acting in the Capacity of agent, Servant, and employee of defendant City, Acting within the scope of her employment, Under State law and DOC's directives and Policies. Defendant Steward-Bowden was Present during the excessive and Malicious in Mr. Alli's Cell and the mini Clinic of GRVC, and during the Cruel and Unusual Punishment methods and retaliation claims from May 5 2011 through June 15, 2011. Defendant has Personal involvement and direct Participation and directed, Participated, Sanctioned, facilitated, Covered UP, and or Witnessed Yet failed to intervene or Prevent Such Violation of Plaintiff's rights. Defendant also Participated and Sanctioned the delay and deprivation of Mr. Alli Medical needs. Steward Bowden had a responsibility to assure the Care Custody and Control of inmates are carried Out in a manner Consistent with the legal marelcks that govern the Operation of DOC Facilities, including department Policies, Procedures directives and Protocol. Defendant Steward Bowden is Sued in her Official and individual Capacity.

9

28. At all times relevant here to Defendant Security Captain B. Beharri, was a security captain withing Rikers Island G.R.V.C, acting in the capacity of agent, servant and employee of defendant city. Within the scope of her employment acting under color of state Law. On information and belief defendant Beharri, as Captain of security, was responsible for supervising correction officers, and other supervisors with respect to care, custody, and control of inmates. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of DOC facilities. Defendant Beharri had personal involvment and direct participation in Plaintiffs denial, delay, and deprivation of Medical care and life necessities resulting to cruel and unusual punishment. Defendant is being sued in his official and individual capacity.

29. At all times relevant here to, Defendant Adjudication Captain Joesph Caputo, was acting in the capacity of agent, servant, and employee of defendant city. Acting in the scope of his employment, acting under color of state law. As a adjudication Captain it is Mandated that he reports any and all cruel and unusual incidents or uses of force that is reported to him. Joesph Caputo facilitated, covered up, and was deliberately indifferent to the malicious assault that arose in Mr. Alli's cell and the mini clinic on May 5 2011. Caputo is being sued in his official and individual capacity.

10

30. At all times relevant hereto defendants, Warden Kathleen Mulvey, and Warden Rose Agro were the highest ranking DOC officers during the time periods which Plaintiff claims arose Kathleen Mulvey was the warden of G.R.V.C, yet defendant Warden Rose Agro replaced defendant Mulvey as the warden for a period of time Plaintiff claims arose. Both defendants acted under color of state law in the capacity of agent, servant and employee of defendant City of New York. Wardens Agro and Mulvey were responsible for supervising Correction officers as it concerned the care, custody, and control of inmates confined at GRVC. Agro and Mulvey was also responsible for implementing and enforcing DOC Policy at GRVC. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of the DOC facilities, namely the DOC Policies, Procedures, directives and Protocols. Agro and Mulvey knew of, should've knew of, sanctioned, facilitated and or condoned the malicious uses of force in detainees cell and the mini clinic of G.R.V.C, the delay and deprivation of medical treatment and the delay and deprivation of daily life necessities. Mr. Alli mailed countless complaints to wardens Agro and Mulvey, yet they failed to intervene or prevent the cruel and unusual punishment Mr. Alli endured. They also failed to remove Mr. Alli from the officers whom were daily harassing Mr. Alli. They also failed to prevent the continuous assaults that occurred in G.R.V.C Punitive Segregation Units and the mini clinic. Defendants Agro and Mulvey had personal involvement and being sued in official and individual capacity.

11.

31. At all times relevant hereto, defendant "John Doe" Supervising Warden of GRVC. Acted under color of State law in the capacity of agent, Servant, and Employee of defendant City of New York. The supervising Warden was responsible for ensuring the care, custody, and control of imates are carried out in a manner consistant with the Policies, directives, and Protocol of DOC. The supervising warden was also responsible for the supervision of all DOC Staff in GRVC regardless of rank. The supervising Warden know of, Should have known of, facilitated or condoned the unlawfull Practices that occured in G.R.V.C Yet failed to intervene or take remidial steps to cease these actions. The Supervising Warden had Personal involvment and is being sued in his Official and individual Capacity.

32. At all times relevant hereto, defendant "John Doe" deputy warden of Security in GRVC. Defendant acted Under color of State law in the capacity of agent, Servant, and employee of defendant city of New York. As deputy warden of Programs/Security he was responsible for the core, custody, and control of imates confined to MHAUii GRVC. Defendant knew of, tolerated, Sanction, or failed to stop to intervene or Prevent the illegal Practices that arose throughout this complaint, defendant John doe deputy warden of Security had Personal involvment and is being sued in his Official and individual Capacity.

33. At all times relevant hereto, defendant Dora Schriro, the commissioner of the New York City Department of Correction. Was the highest ranking DOC official

12

She acted under color of State law in the capacity of a Agent, Servant, and employee of the defendant City of New York. On information and belief defendant Schriro as Commissioner of DOC, was responsible for the Policy, Practice, Supervision, Implementation, and Conduct of all DOC Personnell, including defendants referenced herein. As Commissioner Schriro was also responsible for the care, custody, and control of all inmates housed in the department Jails. Schriro was Provided On a daily basis with reports of applications of force, allegations of Unreported Use's of force, Schriro also received ample Complaints From Mr. Ali in regards to the incidents in this complaint. Schriro Promulagets and implements Policy including those with respect to the use of force, discipline on Staff, Minium standards, reporting and investigating use of force by Prison Officials. Schriro was responsible for enforcing the rules of the DOC Namely the directives, Policies, Procedures, and Protocol of DOC. Dora Schriro tolerated, Condoned, Sanctioned, knew of, or should've knew of the Practices by subordinate Employees in the Jails, including those that are inconsistent with formal Policy. These Practices are so long-standing and deeply embedded in the Culture of the agency, they Constitute unwritten departmental Policy or custom. Yet Schriro Failed to Prevent or take action to stop the Policies stated throughout this Complaint. Dora Schriro is being Sued in her Official and individual Capacity.

34. At all times relevant hereto, defendant "John Doe" Department of Corrections Cheif of department, acted under color of State law in the capacity of a agent Servant, and Employee of the defendant City of New york. As a Chief John doe was responsible for the Supervision Oversight, discipline, Of the Uniformed Security staff in all department Jails.

13

He was also responsible for the care, custody, and control of all inmate in the department Jails. As Chief of department John Doe was provided with a daily basis report of applications of force, allegations of unreported uses of force, and other breaches of security in department Jails. The Chief of the department of Corrections knew of, should've knew, tolerated, Sanctioned, Covered up, or Condoned the state Practices throughout this Complaint. The Chief had Personal involvement in the Malicious and Unlawful Practices and is being Sued in the Official and individual Capacity.

35. At all times relevant hereto, defendant "John Doe" Deputy Commissioner of the Department of Corrections. Acted under state law (color) in the Capacity of agent, Servant, and employee of defendant City of New york. As Deputy Commissioner John Doe is responsible for Supervising the investigation of any and all incidents in which any employee of the Department is alleged to have Used Force against any inmate and recommending Department discipline against staff believed to have Violated Department Policy and rules. As Deputy Commissioner of the departments "Investigation Division", John Doe was provided with a daily report of applications of force, allegations of Unreported Use of force. John Doe has Personal involvement in the Condoning, tolerating, sanctioning, or Covering up the Unlawful Practices that Occured. Defendant John Doe is being sued in the Official and individual Capacity.

14

36. At all times relevant hereto, defendant Hildy J. Simmons was the commissioner of the Board Of Corrections (Board). Acting under color of State law in the Capacity Of agent, Servant, and employee of defendant City Of New York, within the scope of her employment. On information and belief Ms. Simmons, as Commissioner of the Board or (BOC), was responsible for the Policy, Practice, Supervision, implementation, and Conduct of all DOC Personnel including the defendant referenced herein. Hildy J. Simmons Promulgates and implements Policy, including those with respect to; Use of force, Minimum standards, reporting and investigating excessive use's of force, discipline, access to Medical Service and other Mandated Services and Accessities. Ms. Simmons was aware of and tolerate of certain Policies and Practices by subordinate Prison officials. Including those inconsistent with Formal Policy. These Practices are so longstanding and deeply embedded in the Culture of DOC/BOC they constitute Unwritten departmental Policy and Customs. As the Commissioner of BOC Ms. Simmons is responsible for the training, supervision, and Conduct of all DOC/BOC Personnel. Also for the care custody and control of all inmates in the department Facilities. As Commissioner She was Provided on a basis with reports of excessive use's of force and Other breaches of Security. At all times She was responsible for enforcing the rules Of DOC/BOC and ensuring that DOC Personnel Obey the laws Of the united States, State Of New York, Correction laws, DOC Directive and Policy. Defendant also knew Of these action through Plaintiff's written Complaints Yet failed to intervene, or take steps to remedy the Wrong. MS. Simmons has Personal involvement and is being Sued in her individual And Official Capacity

15

37. At all times relevant hereto the Vice Chair of the Board of Corrections Micheal J. Regan, Acting Under Color of state law in the Capacity of agent, Servant, and Employee of defendant City of New York, Within the Scope of his employment. Micheal J. Regan was Responsible for ensuring the implementation of written Policy throughout City Jails. He was responsible for the supervision of all Board Staff member. Mr. Regan was aware of and tolerate of the unlawful practices within this Complaint, Yet failed to take any action to remedy these unlawful Procedures. Micheal J. Regan has Personal involvement and is being Sued in his Official and individual Capacity.

38. At all times relevant hereto, the executive director of the board of Corrections Richard T. Wolf, Acting under Color of State law in the Capacity of agent, Servant, and Employee of the defendant City Of New york, Within the Scope of his employment IS responsible for overall Staff Operations, and Serves as Co-Counsel to the Board With the Deputy executive Director. Wolf received daily reports of the application of force. Wolf Should've Knew of, Knew of, was tolerate of Covered up the actions or Practices Stated throughout this Complaint. Defendant Wolf had Personal involvement. And is being Sued in his Official and individual Capacity.

39. At all times relevant hereto, The Deputy Executive Of the Board of Corrections Cathy Potler, Acting in the Capacity Of Servant, Agent, and employee of defendant City Of New york. Acting Under Color of State law, Within the scope of her employment. Cathy Potler IS responsible

16

Monitoring Compliance with the Minimum Standards and assisting facility staff in Solving Problems at the facility. Potter is also aware of the unlawfull Practices Stated herein and has Peronal involvement. Defendant is being Sued in her official and individual Capacity.

40. At all times relevant hereto, The Director of Field Operations of the Board of Correction Kennith T. Armstrong, Acting under color of State law in the Capacity of agent, servant and employee of the ~~~~~~ defendant City of New York. In the Scope of his employment Mr Armstrong is responsible for; The Supervision of the daily active activities of the Field representatives who Work the Jails each day, Monitoring Compliance with the Minimum Standards and assisting facility Staff to resolve Small Problems untill or before they escalate into Major Ones. As director of field operations Mr. Armstead frequently inspects DOC facilities, and assist the field representatives in addressing and resolving Particullary intractable Problems. Mr. Armstead has Personal involvement and is being Sued in his official and individual Capacity.

41. At all times relevant hereto, The field representatives Of the board Of Correction Whom toured the Punitive Segregation Jails, Acting Under color of state law, in the Capacity of Agent, servant, and employee of defendant City Of New york. In the Scope of their responsible for; The handling Of Prisoner Complaints, Violent and unusual Incidents, to help smooth the delivery Of basic Services and to Calm tension in the facilities, also to Prevent and lessen assaults by Staff on Prisoners. Defendants had Personal Involvement and is being Sued in their official and individual Capacity.

17

42. At all times relevant hereto, Defendant City of New york (City) is a municipal Corporation, which through its Department of Corrections, Operates a number of detention facilities. The Department, through its Senior Officials at the Central office, in each facility, and its Specialized units, Promulgates and implements Policies, including those with respect to the use, reporting and investigation of force by Staff, Conditions of Confinement, and access to medical Services. In addition, Senior Officials in the department are aware of and tolerate Certain Practices by Subordinate employees in the Jails, including those that are inconsistent with formal Policy. These Practices, because they are Widespread, long-standing, and deeply embedded in the Culture of the agency, Constitute unwritten Department Policies or customs. The City is also responsible for the appointment, training, Supervision, discipline, and Conduct of all Doc Personnel, including the defendants referenced herein. The City is being sued in its Official Capacity.

43. Defendants Steward Bowden, B. Beharri, Joesph Caputo, Kathleen Mulvey, Rose Agro, John Doe Supervising ~~Coston~~ Warden, John Doe Deputy warden of Security, Dora Schriro, John Doe Department of Corrections Chief of department, Department of Corrections Deputy Commissioner John Doe, Hildy J. Simmons, Micheal Regan, Richard T. Wolf, Cathy Potler, Kenith Armstead, The Field representatives of the Board of Corrections, and the City of New york, are Collectively referred to as the Supervisory defendants.

44. At all times relevant hereto, Correction Officer T. Dixon, Acting under color of State law in the Capacity of Agent, Servant, and employee of defendant City of New york, within the Scope of his employment

18.

Defendant dixon was present during the excessive use's of force in plaintiffs cell and the mini clinic of G.R.V.C. Dixon also participated in plaintiff's cruel and unusual Punishment claims. In each claim Dixon directed, participated, sanctioned, faciliated and or witnessed and knew of such actions and failed to intervene or prevent such violations of plaintiff. Defendant dixon is being sued in his official and individual capacity.

45. At all times relevant here to, Correction Officer Victor (14410) acting under color of state law in the capacity of agent, servant, and employee of defendant City of New york. Within the scope of his employment defendant victor maliciously and excessively assaulted plaintiff in his cell of G.R.V.C. Victor also knew of tolerated, and failed to rememdy or prevent the use of force in the mini clinic of G.R.V.C. Defendant is being sued in his official and individual capacity.

46. At all times relevant here to Correction Officer Alceus (18380) acting under color of state law in the capacity of agent, servant, and employee of defendant City of New york. Within the scope of his employment defendant Alceus maliciously assaulted Mr. Alli in his cell and the miniclinic of G.R.V.C. Alceus is being sued in his official and individual capacity.

47. At all times relevant here to, Correction Officer Arkhurst (18507). Acting under color of state law in the capacity of agent, servant, and employee of defendant City of New york. Within the scope of his duties, Arkhurst knew of participated, sanctioned, facilitated and witnessed the malicious excessive force in Mr. Alli's cell and the mini clinic of G.R.V.C, and failed to intervene to stop or prevent such violations of plaintiff's rights. Defendant is being sued in his official capacity and individual capacity.

48. At all time relevant here to, Correction Officer Phillips (18518) acting under color of state law, in the capacity of agent, servant, and employee of defendant City of New york. Within the scope of his employment, Phillips knew of, participated sanctioned, facilitated and witnessed the cruel and unusual punishment methods being applied on Mr. Alli. Yet failed to stop, report or prevent said actions. Defendant has personal involvement and is being sued in his official and individual capacity.

19.

49. At all times relevant hereto, Correction Officer Velez (11352) Acting Under Color Of State law in the Capacity Of agent, servant, and employee of City of New York. Within the Scope of his employment, Velez Participated, Sanctioned, facilitated Or witnessed the excessive Use of force Claims and the Cruel and Unsual Punishments Methods. Yet he failed to report, Prevent Or remendy the Wrong. Velez has Personal involvement and is being Sued in his Official And individual Capacity

50. At all times relevant hereto, Correction Officer Rohr (18104) Acting Under Color of State law, in the Capacity of agent, Servant, and Employee of defendant City Of New York. Within the scope of his employment, Rohr Participated, Sanctioned, facilitated and or witnessed, Yet failed to intervene or Prevent the Cruel and Unusual Punishment Methods Mr. Alli was Subjected to. Rohr had Personal involvment and is being Sued in his individual and Official Capacity.

51. At all times relevant hereto, Correction officer B. Bunton a Security Officer in G.R.V.C. Acting Under Color of State law in the Capacity Of a agent, Servant, and employee of defendant City Of New York. Bunton Knew of, Should've Knew of, Participated, Sanctioned, facilitated and or witnessed the Cruel and Unusual Punishment being endured on Mr. Alli. Yet failed to remendy the Wrong. Bunton has Personal involvement and is being Sued in his individual and Official Capacity.

52. At all time relevant hereto Correctional health Services, a Municipal Corporation, Operates and assures adequate Medical Care to all inmates. Correctional health Services are aware and tolerate of Subordinate employee whom fail to follow the Procedures and rules governed by their Scope of duties. As a result Mr. Alli was denied and deprived adequate Medical Care. Correctional health Services is responsible for Municipal Liability and is being Sued in its Official Capacity.

53. Defendants, Dixon, Victor, Alceus, Arkhurst, Phillips, Velez, Rohr, Bunton, and Correctional health Services are collectively referred to as the individual defendants and they all have a form of Personal involvement.

54. At all times relevant hereto, Captain Sherma Dunbar (717) Acting Under Color of State law in the Capacity Of agent, Servant, and employee of defendant City Of New York. Dunbar had Personal

Involvement, knew of, directed, Participated, and or. Witnessed and failed to intervene or Prevent the Cruel and unusual Methods endured on Mr. Alli. Defendant is being sued in his individual and Official Capacity. Defendant is also Referred to as a supervisory defendant.

## STATEMENT OF FACTS

I. Rikers Island: A History of Correction Officers Useing excessive force in inmates Cell and the Mini Clinics Of Punitive Segregation Units and depriving Medical Care also Subjecting inmates to Unsanitary Living Conditions, and Outside Communication, with the intent Of retaliation and to prevent inmates from reporting Unlawful treatment.

54. For years, through department reports, Civil litigation, Criminal indictment, Investigation division investigations, Inspector general investigation, Board Of Correction investigation And any Other investigations or discipline that May have been Commenced, the City and Supervisory defendant have been aware, tolerated, Sanctioned, facilitated, Witnessed, and Or covered Up the routine, Malicious, dangerous and Unconstitutional Police (Correction Officers) assault or gang assault Violence at any Jail facilites On Rikers Island. These assaults took place during extractions, Searches, transporting inmates on the gallery to any location, Or during an alleged attempt to Prevent a inmate from Causing harm to his or her Self. After the initial incident inmates were then taken to the Mini Clinic to be assaulted again. After the assault in the Mini Clinic Inmate Were denied Phone Usuage, deprived Mail, deprived Showering and Placed in Cell with no Clothing, Sheets, hygeine Products, or Personal Property, these cell Were often Filthy and Unsanitary. These Practices cause Mr. Alli's injuries. These Practices are so longstanding and deeply embedded they constitue Municipal Policy and Procedures.

55. Inmates Were also deprived any or adequate Medical Care despite the intensity Of the Sustained injuries.

56. On May 13 2011 in the Punitive Segregation units Of Rikers Island Otis bantum Correctional Center.

21.

Inmates Christopher roper, Chirstopher Sanders, Justin harris, and antony Paige were all individually assaulted in there cell and or the gallery immeadiately after the intitial assault the inmates were taken to the Mini Clinic to be reassaulted. Each inmate suffered Multiple Servere injuries rangeing from broken bones to Contusions. These injuries were not treated on the date of the incident due to the improper Medical Care. These inmates were also denied daily life ~~necessaties~~ Necessities and Outside Communication.

57. In 2011 of Aug, inmate leon thomas was Maliciously assaulted in the mini Clinic Of Otis Bantum. Correction Center, resulting into a broken bone and Multiple injuries. leon thomas was deprived Medical Care. Once recieving such treatment test's found bones had been broken on Mr. Thomas. Mr. thomas was also Subjected to the unsanitary living condition and deprivation of Outside Contact or Communication.

58. The inmates stated above are only a slight few of the thousands of inmates whom were subjected to these Practices.

59. Through DOC's elaborate report System, Officers being disciplined, investigations, and Complaints either Civil, Criminal, or internally, the City and Supervisory defendants were aware of the Pattern Of a large number of incident involving Officers on inmates Violence in the Mini Clinic and the cells of Punitive Segregate inmates and have failed to take sufficient steps to curb such actions.

60. The City and the Supervisory defendants were also aware, or should have been aware Of the failure of the Department to bring disciplinary Charges against those Officers who Sanctione or ignored Staff - on - inmate Violence, Punish Staff that Sanctione Participated or covered up such Practices, to discourage others From doing so.

61. Through all these cases and reports, the City and the Supervisory defendants have been made aware of the widespread Practice by DOC Staff Of Sanctioning, encouraging, or Participating in Violence against inmates and Cruel and Unusual Punishment Methods. They have also been made aware of the failures of DOC's investigation Division and Inspector General to adequately investigate allegations Of Correction Officers Complicity in said Conduct. A Practice that Causes further Abuse

22

62. Due to the City and Supervisory defendants actions and inactions, Such as the failure to act or discipline officers with records of misusing force, histories of inadequate training, inadequate investigation of complaints, failure to adequately train and supervise staff and investigate use of force complaints, and maintaining or tolerating a "Code of Silence and staff misconduct caused Mr. Alli's injuries.

## II. THE ASSAULT ON UMAR. ALLI ON MAY 5, 2011

63. On or about May 5, 2011 UMAR. ALLI was a Pre-trial detainee being held at Rikers Island GRVC. On May 5, 2011 Mr. Alli was excessively assaulted and battered in the confines of his cell.

64. Mr. Alli was assaulted by individual officers Arkhurst, Dixon, Alceus, Victor.

65. Captain Steward-Bowden was present during the use of excessive force in the confines of Mr. Alli cell. She played part as a facilitater, sanctioner, and bystander. She has personal involvement and direct participation in the malicious assault. She was deliberately indifferent, being that she had a realistic opportunity to prevent or stop the excessive use of force.

66. Defendants Arkhurst, Dixon, Alceus, Victor and Captain Steward Bowden acted with the intent to punish and retaliate with evil intent to cause harm.

67. My conduct didn't warrant this malicious and sadistic assault. Mr. Alli was not assaultive, violent, or physically resisting staff. This assault was not reasonably related to a legitimate penological interest, nor for the safety and security of myself or others. All defendant acted willfully with a culpable mind to cause harm.

68. At approx 10:43 PM on May 5th 2011, Captain Steward-bowden along with officers Dixon, Arkhurst, and Alceus came in front of Mr. Alli cell. Captain Steward-Bowden came to allegedly only serve Mr. Alli an infraction for a inmate-on-inmate fight that took place on May 2nd, 2011 during Captain Steward-Bowden's "tour" (working shift).

69. Captain Steward-Bowden began to serve Mr. Alli the Notice of infraction from the May 2, 2011 incident through the cuffing port slot attached to Mr. Alli's cell door. Despite this method being proper, Captains including Steward-Bowden have a unwritten

23

Policy and Practice to insert the infraction through the side of the door or under the door. Allowing the inmate to read and then sign the infraction.

70. As Captain Steward-Bowden Placed said infraction inside Mr. Alli's Cuffing Port Slot She intentional held the infraction with unnecessary force and grip. She then issued an unauthorized Pen despite Mr. Alli claiming to be in Possesion of a authorized Pen.

71. Due to the position of the Cuffing Port Slot, Captain Steward-Bowden hand blocking the contents of the infraction, and Mr. Alli upward viewing angle position, and the infractions inward position placed on the slot, Mr. Alli was not able to read the infractions. All Pre-trial detainee's have a right to read any and all documents before signing.

72. Under the infraction was Carbon Copy Paper and Many other documents. Carbon Copy is never used for infractions being that a infraction contains the orginal infraction (white paper), Carbon Copy identical to the infraction One Sheet is Green and one is Pink. These three papers are composed of one infraction. Being so any additional Carbon is never needed or used. Due to the Captains action and the illegal Presence Of the additional Papers and black Carbon Paper, Mr. Alli felt something illegal was being hidden.

73. As Mr. Alli was making a reasonably effort to read the infraction despite the Prior Stated Conditions. Yet Captain Steward-Bowden rushed and ridiculed Mr. Alli to hurry and sign. Once Mr. Alli was complete reading the infraction, he then Peaked under the infraction to assure he wasn't signing any illegal or falsified materail. As Mr. Alli began to look under infraction Captain Bowden Yanked all the Papers in from the Slot, While Mr. Alli was still holding a end. Due to her Conduct all the Papers were torn in half.

74. Mr. Alli then told Captain Steward-Bowden the tearing of the papers was not his fault or his intentions. Captain Steward-Bowden and Officer Arkhurst then yelled and Comanded the control room officer to open My cell door so they can begin Maliciously assaulting Me.

75. Being that Mr. Alli was in Punitive Segregation there are mandatory Procedures that are needed to be followed before and how to open a inmates Cell in accordance with DOC Directives, Policy and Procedure. None of these Protocols were followed intentionally to Cause harm to Mr. Alli with evil intent.

76. Once Mr. Alli Cell was opened Officer Arkhurst entered first immeadiately strikeing Mr. Alli with a Powerful Closed Fist

24.

From his 350 Pound body frame, to Mr. Alli's left eye droping. him to the floor. Officer Arkhurst then began hoovering over Mr. Alli's body, Kicking, Kneeing, Stomping and Punching me as Officers Alceus and Dixon did the same. Captain Steward-Bowden instigated and blocked the enterance of Mr. Alli's Cell door.

77. Officer Victor whom was assigned to watching the Sanitation Crew inmates and Conducting Sanitation in the housing area this incident took Place, Illegally left his Post and Sanitation Workers Unattended without being properly secured, in violation of D.O.C Policy. Yet defendant Victor lied on reports alleging he secured his inmates in the pantry room before responding to the incident. Yet the Cameras Clearly Show all Sanitation Workers still on the gallery and watching the incident.

78. When entering Mr. Alli's Cell Officer Victor immeadiately Joined the Malicious assault by Punching and Kicking Mr. Alli along with officers Arkhurst, Dixon, and Alceus.

79. As officers Victor, Alceus, Dixon, and Arkhurst Punched, Kneed, Stomped, and Kicked Mr. Alli they all Used death threats, threats, and many belittleing and humilating Comments. Such as; Ex; "Were going to Kill you", "you think your going to get away with fighting on our captains tour", "being a smart mouth", or Writing complaint and grievances.

80. Mr. Alli was in extreme Pain and Crying for help or Mercy. Yet they Continued the assaulted alleging "take your beating like a men", "you deserve it", or Cry like the little bitch You are.

81. Captain Steward-Bowden Watched and encourage the Use of force. Telling Mr. Alli to Shut UP as he Complaned of the Pain.

82. Inmate whom had direct view of the assault or heard the Comotion, yelled from the Confines of there Cell for the officers to Cease the Violence. Captain Steward-Bowden Noticed Some of the inmates Could see inside the Cell of Mr. Alli, She then turned of the light Switch to avoid witnesses from seeing the entire event.

83. Minutes later after being assault Captain Steward-Bowden told the officers to end the assault because they were in My Cell for too long. I was then escorted Out of My Cell Shirtless and barefooted to the Mini Clinic of Rikers Island G.R.V.C

III. MR. ALLI WAS ASSAULTED IN THE MINI CLINIC AFTER THE ASSAULT IN HIS CELL.

25

84. Despite the facilities Camera system clearly showing Mr. Alli entering the mini Clinic with defendants, Dixon, Alceus, Arkhurst, and Captain Steward-Bowden, at approx 10:49 PM, all defendants denied entering the Mini Clinic. On their use of force reports, investigation reports and all other reports written.

85. After Mr. Alli exited his Cell, and before entering the mini Clinic he was forcibly held by officer Arkhurst Against the wall in front of the building 11A Control Room of Rikers Island G.R.V.C. While pressing Mr. Alli to the wall, Officer Arkhurst began twisting Mr. Alli fingers and wrist. Mentioning he will make me endure more pain once entering the mini clinic.

86. Mr. Alli was held against the wall by officer Arkhurst While officer Dixon and Captain Steward-Bowden attempted to search the Control room bubble for the key to unlock the locked Mini Clinic. Yet this search result was negative.

87. The Mini Clinic closes at APPOX 7:45 PM daily. When the Mini Clinic is closed or no doctors/nurses are present all Punitive Segregation inmates are taken to the Main Clinic regardless of injuries or medical needs.

88. The mini clinic is used for punitive Segregation inmates. Due to the fact theres no Cameras in the Front Section of the Mini Clinic. Prison Official have a Custom and unwritten policy of taking inmates inside of the Mini Clinic to assault them Physically or Sexually without any Proof of incident or witnesses. Officers tend to endurge in these practices when medical Personnel is not Present.

89. Due to the Mini Clinic being Closed during the time of the incident without any doctors or nurses and being locked. Officer Dixon used his Utillity Knife to Pick the lock of the Mini Clinic to gain entry.

90. Each defendant whom entered the Mini Clinic with Mr. Alli, did so with the evil intent to Cause harm, and use excessive force, without a reasonable Penological interest or for the Safety and Security matters.

91. Now inside the Mini Clinic Shirtless and rear Cuffed. Mr. Alli was present with Officers Arkhurst, Alceus, and dixon also Captain Steward Bowden. Officer Victor returned back to his abandoned Post.

92. Mr. Alli was then brutally and Maliciously assaulted making the Prior and Current death threats More believable.

26

93. Officers Arkhurst, Alceus, and Dixon each individually took turns punching me in the ribs, stomach, back, head, and face. Mr. Alli was forced to stand and endure the continued blows all over his body. Each time Mr. Alli fell to the ground due to the intensity of the blows, he was kicked kneed and stomped. Untill he was force to his feet to repeat the process.

94. Despite Mr. Alli's agony filled cries for help and mercy the officers were excited and futhered the abuse. Captain Steward Bowden cheered her ruthless fellow malicious officers to continue the abuse.

95. After approx 10 minutes of this malicious assault and death threats officers dixon and Alceus shoved a D.O.C Orange uniform shirt over my head and shoulder while Mr. Alli was still rear cuffed.

96. Before exiting the mini clinic Captain Steward-Bowden slapped Mr. Alli with powerful force, with a unknown sharp object in her hand leaving abrasions to both cheeks of his face.

97. After leaving the mini clinic I was then escorted to the Main clinic by officers Dixon and Arkhurst and Captain Steward Bowden. While being escorted back rear cuff to the main clinic officers Arkhurst and Dixon twisted and bended Mr. Alli's fingers and wrist. Threating to kill me if I report injuries to the reviewing doctor.

A. D.O.C Policy and written directives does not allow excessive force or entering a inmates cell without cause.

98. In accordance to the Departments rules, directive, and protocol officers are not allowed to use excessive or unnecessary force. Officers are instructed to use the methods taught to them by the training acedemy, not hand combat. Officer are not premitted to enter a inmates cell without following mandated procedures.

B. Supervisory Defendants Personal involvment.

99. Due to the failure to train, discipline, supervise, implement better directiv or policies regarding the use of force or investigating use of force, tolerating a code of silence, and the failure to take remedial action to cease the unlawfull conduct despite knowledge goverens deliberate indifference, Municipal polily and Personal involvment.

27.

IV. Retaliation Claims, Cruel and Unusual Punishment and Serious deprivations of basic human needs and life's necessities.

A. Individual defendants and Captain Steward-Bowden Personal involvment in the Retaliation Claims

100. The May 5 2011 excessive use of force that occured in Mr. Alli Cell and the Mini Clinic of G.R.V.C by Officers Victor, Alceus, Arkurst, Dixon and Captain Steward-Bowden. Took Place in retaliation for Submitting numerous grievances and Complaints. A inmate on inmate fight on May 2, 2011, that took place on Captain Steward-Bowden Working shift.

B. Individual defendants, Captain Steward-Bowden and Security Captains Beharri and Sherma Dunbar Personal involvment in the retaliation, Cruel and Unusual Punishmet and Serious deprivation of basic human needs and life's necessities

101. Captain Steward-Bowden and Captain Sherma Dunbar were both the Steady housing area Captain of the unit Mr. Alli was Confined to. They routinely Conducted tours of the gallery and knew or should have know the Conditions Mr. Alli was forced to endure. Mr. Alli daily made verbal Complaints to both Captains yet they disregarded Mr. Alli's Complaints with evil intent. They failed to remedy the unlawful action of their housing area officers, or discipline or recommend discipline against these Officers. Captain Steward-Bowden and Sherma Dunbar both facilitated, Sanctioned, Participated and tolerated these Unlawful Practices.

102. Security Captain Beharri, and Security Officer Bunton were both the Security Officials of GRVC Punitive Segregation Units. They daily Conducted tours of the housing area Mr. Alli was Confined to, and was made aware of the Unlawful Conditions Mr. Alli was forced to endure. They knew of these actions due to there participation, Sanctioning, tolerating, and Mr. Alli's written and verbal Complaints. Yet they failed to take any action to cease these Unlawful Practices or report or discipline the Officers for the Unlawful Policies.

103. Officers Velez, Phillips, and Dixon were the Steady housing area Officers Whom daily Conducted Approx 15 tours. These Officers intentionally deprived Mr. Alli of his rights with evil intent and disregarded Mr. Alli Continuous Cries for help.

28

104. Officers Bohr also had Personal involvement as Further stated herein.

C. The City and the supervisory defendants Personal involvement in the retaliation Cruel and Unusual Punishment and Serious deprivation of basic human needs and life's Necessities

105. Through all Prior incidents regarding the Similar Conduct, the officers involved Prior history, Citizen Complains, Inmates Complaints, and departmental reports, The City and Supervisory defendants have been made aware of the widespread Practice by DOC Staff Sanctioning or encouraging these Unlaw Practices. They have also been aware of the failures of DOC's investigation Division to adequately investigate, discipline, or take action this also apply's to the Board of Corrections. The City and Supervisory defendants were responsible for the training, discipline, Policy, Practice, Supervison, and Conduct of all DOC Personnel. Defendants are aware of, Cover up and tolerate the Practices stated herein despite them being inconsistent With Formal Policy. Defendants were responsible for enforcing the rules of D.O.C, and for ensuring that DOC Personnel Obey the Laws of the United States, State of New york, and the Directives, Policy and Minium Standards of D.O.C. Plaintiff the Supervisory defendants ample times yet they still failed to take action. Defendants have failed to take Sufficient Steps to curb such Conduct, despite Knowing of a large Number of the pattern of same Conduct.

D. Direct actions that rose the retaliation Cruel and Unusual punishment and Serious deprivation of basic human needs and life's Necessities.

106. All defendants and D.O.C Officials Permitted, tolerated, Participated, and Sanctioned a Persistent and widespread Practice and Custom Subjecting inmates to Cruel and Unusual Punishment after being involved in Use's of force. With the intent to Cause harm, torment, inflict fear, Punish and, Lessen the Chances of the inmate being able to report such incident. These Practices did not serve a legitimate Correctional Purpose.

107. These Practices Violating a number of the Conditions of Mr. Alli's Confinement. Constituting Cruel and Unusual Punishment, deprivation of basic human needs and daily Necessities. In Violation of D.O.C Policy, Directive, and the Minium Standards, Also the Fifth, Fourth Eighth and fourteenth amendments, New york State and City law.

29

108. The Prison Condition Mr. Alli Was Forced to Undergo Were harsh, humiliating and antithetical to human dignity. Defendants Showed plain disregard to the Potential risk, danger, and future harm these Conditions arose. The Practice Used by the defendants was objectively intolerable alone and in Combination.

109. Defendants Captain Steward-Bowden, Captain Dunbar, Captain beharri, and Officers Velez, dixon, Phillips and roht, Seeking retaliation intended to harm humiate Chastise, and inflict fear to Mr. Alli for inmate on inmate fight On May 2, 2011, Use of Excessive force in Mr. Alli Cell and the mini Clinic on May 5, 2011, And a Sprinkler triggering causing a flood on May 8, 2011. Subjecting Mr. Alli to Unnecessary wanton of Pain, Unsanitary Conditions, imminent danger and denial of basic human needs causing a safety and Security hazard.

110. From May 3, 2011 through May 13, 2011 Captin Dunbar, and Officers Velez and dixon denied Mr. Alli the Mandated by DOC Policy Shower Usuage, with should be afforded daily. Mr. Alli ask the stated Officer to be Premitted to take a Shower yet was denied. These Officials denied Mr. Alli Shower Usuage at the request of Captain Steward-bowden and there own free will. There wasnt any reason for denial except the intent to punish. Mr. Alli body broke out in rashes due to the denial of Showering and the other harsh Conditions he endured.

111. From May 5, 2011 through May 18, 2011 Mr. Alli was denied Phone Usuage for legal and Personal Calls. Officials deprived Mr. Alli Phone Usuage with the Intent to punish and limit the Chances of him reporting the acts of excessive force and Cruel and Unusual Punishment.

112. The Phone System is Programed for punitive Segregation inmates. A inmate gives the housing area Captain or the Security Captain a list of two numbers he wishes to routinely Call and a Six digit Pin Number Which only allows the inmate through his identifacation number and Pin Number acess to the Phone Usuage. These numbers and Pin Code Cant be Changed unless Authorized by the housing Area Captain or Security Captain.

113. Captains Dunbar, Steward-Bowden, beharri and Officers Dixon, Velez, and Phillips all denied Mr. Alli request to Call his attorney and relatives. When the officers did bring me the Phone Mr. Alli Pin number didnt Work due to the officers intentionally Changing it. despite the Captains abillity and the officers

30

ability to request or make change of the false Pin and allow Mr. Alli to use the phone, they stated they will not help me or take steps to remedy the wrong.

114. After a sprinkler was triggered in Mr. Alli Cell Causing a flood in his cell on May 8th 2011. Captain Steward-Bowden and Officer Rohr removed Mr. Alli from the flooded Cell into another Cell in the housing area. The Cell was low temperture and extremely disconfortable due to the high Powered Cooling System. Due to the housing area being housed Mostly for mentally ill detamee's this Cell Contained Feces and Urine Covered Walls. Each Cell has its Own Water Power Switch Controlled by the Officers. Before Mr. Alli entered this Cell Captain Steward-Bowden and Officer Rohr intentionally turned off the Sink water and toliet Water. Making it impossible to Flush the toliet Or Use the Sink to drink water, Wash hand or body, Or brush teeth. Mr. Alli was placed into this Cell without any Personal Property, Sheets, blankets, toothPaste, toothbush, And Soap.

115. When I told Captain Steward-Bowden and Officer Rohr of the Conditions of the Cell, they told me to deal with it and this was my Punishment for acting like a "Dxxx".

116. From May 8th 2011 through May 13 2011 Mr. Alli was Forced to sleep Under a naked mattress, Using the mattress as Protection From the extreme Cold A/C Powered Cell. Mr. Alli didnt Contain any warmth Clothing Only having a t-Shirt and a Pair of Underwear, Or any blankets or sheets to keep Warm. Mr. Alli was forced to hold his bowel Movement and or Use a Nonfunctional toliet And inhale, Smell, and eat in the odor and Presence of the feces remains in the toilet, and on the Walls.

117. Captains Dunbar, Steward-Bowden, Beharri and Officers phillip, Rohr, Dixon, Bunton, and Velez daily made routinely tours Pass and directly stoping at Mr. Alli's Cell laughing and making Jokes along with the encouragement towards Other inmates teasing and making Jokes due to the Conditions Mr. Alli was placed Under.

118. On May 13, 2011 I was afforded two Sheet and My Sink/toliet water was turned on Finally after making tons of Complaints to the warden, Commissioner, Board of Corrections, And Many More. Despite My indepth Complaints I Still was not afforded any Personal Property, Clothing, blankets, Cleaning Supplies, hygiene Products or toiletries.

119. On May 21 2011 Officer Rohr Came to My Cell Calling Me a Sintch (snitch "someone who tell") due to my Complaint Writing. He then intentionally turned off My Cell's Sink/toliet Water. Telling Me to

31

have fun smelling my own feces.

120. From May 8 2011 through June 15 2011 Mr. Alli was deprived of personal property and blankets. Being subjected to extreme cold. All defendants stated herein acted under pretense color of state law with persistent malicious cruelty and deliberate indifference.

E. DOC Policy requires that all inmates receive Phone usuage, Shower usuage, Personal Property, Clean and orderly living areas, Sheet blankets, hygiene Products and basic life necessities.

121. All defendants herein knew of or should've known of the Directives, Policy, Protocol and Minimum Standards that govern their conduct and deprivation of Mr. Alli's Mandated Services or items. Defendants intentionally disregarded these rule and regulations.

122. All inmates are entitled to daily showers, daily Phone usuage, an oppurtunity to clean or have cell cleaned with Proper materials, hygiene Products, Adequate beding, Adequate toilet and Sink Usuage. Yet defendant all denied and deprived Plaintiff's rights.

V.    Deprivation of Serious Medical needs, deprivation of adquate Medical Care.

123. After Mr. Alli was assaulted on May 5 2011 in the Confines of his cell and the mini clinic of G.R.V.C he was escorted to the main intake awaiting medical Care at the main clinic. Mr. Alli awaited Medical Care for a hour in the holding Pins of the Main intake. During his wait he was in exterme Pain and disconfort due to being rear cuffed and injured.

124. When Mr. Alli was finally taken into the Main clinic to be Medically examined the reviewing doctor under the Orders of the Prison Officials failed report, treat, or document Alli Mr. Alli's visual and nonvisual injuries.

125. Despite Mr. Alli Pain and injuries he was denied the Prescription of any Pain medications during the initial Examination. The doctor also denied the Scheduling of further appointments to review the Sincereity of Mr. Alli's Claimed injuries. After the examination Mr. Alli was forced to walk a long route through the Jail barefooted, and was forced to endure the intense Pain with no help or aid.

32

126. In the housing area Mr. Alli was Confined to a Sick nurse daily Conducted a tour of the galleries. Yet these Sick Call nurse's are Often lazy and Unwilling to help inmates. These nurse tend to rush when walking the galleries to avoid alerting inmate or their Prescence. These nurse are Suspose to stop by each Cell assuring the inmate has no injuries or medical Complaints to report. Yet if nurses happen to walk Past a inmates Cell they will not walk back, even if Called or told by other inmates. When a inmate reports Conditions to the Sick Call Nurses they fail to report or document the allegations. Being that all inmates are in Punitive Segregation locked 24 hours in there Cell, they have no means of Obtaining Medical Care other than Sick Call, requesting emergency Sick Call to the housing area Officers or Captain. If those Methods fail a inmate is forced to have his family Call and Make Complaints to the Facility, Board of Correction, Department of Corrections, Inspector division/General or write and Mail all these Parties.

127. The City, Correctional health Service and Supervisory defendants are all aware and tolerate of the Unlawful Practice.

128. After May 5 2011 Mr. Alli daily Made emergency Sick Call and Sick Call request to the Passing Medical Staff, Security Captain, housing area Captain and Officers Dixon, Velez, and Phillips. These request were indepth specifing each injury yet they refuse to report or request Medical Care to be afforded

129. Stating that Mr. Alli Could not receive any internal help he begin writing The Board of Correction, Deptment of Corrections, Warden of G.R.V.C, Inspector General and Investigation Division regarding the same injuries he reported to the Prision Official.

130. These injuries were rashes to skin, loss of vision, loss of hearing, back pains and neck pains.

131. Only because Mr. Alli Continued to submit Grievances and Complaints he began to receive Medical Care months later.

132. Mr. Alli was Seen by the audiologist and ENT approx after Five (5) months later and was deemed hearing impaired needing a hearing aid.

133. Despite the determination rendered and Mr. Alli's Mutiple Written Complaints he still hasn't received his hearing aid. Mr. Alli Was fitted for a hearing aid yet one wasn't Provided, forcing him to

Strain to hear.

134. Mr. Alli was seen by the optometrist serveral months after the incident. After extensive testing it was determined the incident scared and damaged Mr. Alli's eye causing the loss of vision. The specialist prescribed eye drops and pain medications due to the constant throbbing and pain. Yet the prison officials and doctors failed to provide prescribed medications, despite Mr. Alli's continuous complaints. Mr. Alli is awaiting surgery.

135. Mr. Alli was receiving multiple medications for his back pains such as naposin, robexsin. After a x-ray of his back it showed back spasms. Mr. Alli was provided with physical therapy after several months yet was often denied the opportunity to go.

136. The defendants stated herein intentionally denying and delaying medical care and interfering with treatment once prescribed, inflicted wanton unnecessary pain. The defendants hade a responsibility to attend to or report the medical needs of Mr. Alli yet failed to do so. Therefore it can be said with certainty that these conditions have been deliberately indifferent to the medical needs of Mr. Alli.

A. Defendants City, Correctional health service, officers Dixon, Velez, Phillips, and the supervisory defendants Personal involvement and direct participation in the denial and delay of serious medical care.

137. As inmates and Punitive Segregation inmates, inmates cannot provide for their own medical care. They are wholly dependent on prison or jail officials for that care. An individual incarcerated becomes both vulnerable and dependent upon the state. Denial of necessary medical attention may well result in further injuries. Restrained by the authority of the state a inmate cannot himself seek aid. So if the authorities fail to take actions those needs will not be met. Historically, through the Department and United States, inmate medical care has been inadequate and case law is replete with examples of both individual stories and prison medical care systems, that would shock the most hostile to rights of prisoners.

138. As a pre-trail detainee during the times relevant to the complaint Mr. Alli had a greater right to medical care that cannot be deprived unless the deprivation is "reasonably related to a legitimate government objective. Defendants willful conduct did not rise such objective

36.

139. Although Mr. Alli Conditions were not ultamently life threating they were serious due to these five factors; (1) it has been diagnosed by a Physician as mandating treatment (2) the conditions were so obvious that even a lay Person would easily recognize the necessity for a doctor's attention (3) If it Causes Pain (4) It Significantly affected daily acts and (5) The conditions Offered life-long disabilities.

140. Defendants indifference was manifested by the stated defendants and defendants Prison doctors in their response to the Plaintiff's needs, Nurse/doctor gave inappropriate treatment, Prison guards and doctors intentionally denied and delayed access to medical Care, interfered with Prescribed treatment, and defendants failed to report and Seek Medical despite the future risk

141. Defendants stated within this section Know of, Knew of, tolerated, sanctioned, Participated and or Covered up the long standing Unwritten Policy to denial, deprive and Or delay medical Care and medical treatment.

**B. DOC Policy mandates adequate medical Care and Procedures**

142. In accordance to DOC Policy inmates are entitled to medical attention for their Problems. Aside from Screening, inmates are entitled to emergency care and to Some reasonable System of making their need for Care known in nonemergency situations at well, including to but not limiting to sick call. Yet defendants all Violated these rights by not Premitting Mr. Alli's sick Call and emergency medical request.

**VI. Additional Facts**

143. Days after the May 5 2011 assault Mr. Alli received a Notice of infraction Stating defendants alleged Version of the incident. Defendants alleged Mr. Alli was trying to cause Self harm to himself Which Warranted the officers illegally entering his cell without following Proper Procedures. Defendant also alleged the excessive force they used warranted due to trying to Prevent the Self harm alleged in Mr. Alli's Cell. Defendants denied entering the mini Clinic and taking Place in the second assault.

144. Defendants reports were inconsistent in the light of Material Facts". They alleged Mr. Alli stabbed himself in the neck

Despite this Outrageous allegation, this allegation was not reported to the reviewing doctor after the incident or any mental health Personnel.

145. During the relevant time Period Mr. Alli was Confined to a M.H.A.U.I.I Unit (Mental health assesment Unit for infracted inmates) Or otherwise know as the Mental health bing. Any and all attempts of Self harm or suicide will not be taking lightly and will lead to immeadiate extra intense Supervision and Suicide Observation.

146. In accordance to DOC Policy any attempts or threats OF Self harm or Suicide Must be reported directly to mental health Personnell and the inmate must be placed on Suicide Observation. Yet defendants failed to report such Falsified allegations or Place Mr. Alli On Observation, due to these allegations being false and only Used a Cover For the Unauthoriz entering OF Mr. Alli's Cell and Use Of force.

VII. Captain Joesph Caputo's Personal involvment

147. A hearing was held for the May 5 2011 incident by Captain Joesph Caputo on or about May 10 2011. During this hearing Mr. Alli told Caputo that he was maliciously assaulted in his Cell and the Mini Clinic. Caputo Knew of Or Should have Known of the malicious assault. When told he disregarded Mr. Alli Claims stating it did not Concern him and he didn't Care.

A. D.O.C Policy mandates all hearing Captains to report any allegations OF excessive Use of force Or Cruel and Unusual Punishment

148. Despite after being told and having Personall Knowledge Caputo failed to report the allegations OF Cruel and Unusual Punishment/Excessive force. It is in his scope of duties in accordance to DOC Policy For him to report Said allegations. He was therefore deliberately Coving Up for his employees In this mailious assault.

VIII. Mr. Alli Exhausted, Or was Otherwise excused from Exhausting, His Administrative remedies.

36