149. Mr. Alli exhausted his administrative remedies before bringing this action, and only commenced formal litigation after the defendants and the DOC failed to adequately address and resolve any of his numerous grievances regarding denial of basic life necessities, use of force in his cell and Minic Clinic, Cruel and unusual punishment, unsanitary living conditions and denial of medical care.

150. Specifically Mr. Alli submitted at least Twenty-five grievances/complaints to nine different people or organizations, in which he complained about the above stated

151. Those grievances were sent to, among other people, the G.R.V.C Grievance Coordinator, Defendants Wardens Argo and Mulvey, Defendant Commissioner Dora Schriro, Chair of the Board of Correction Hildy J. Simmons, State Commissioner of the Department, The investigation Division, The Prisoners rights Project, Central Office Control review, Bellvue health hospital, West facility, And the Prisoners rights Project.

152. At least three of Mr. Alli's Grievances allegedly was being investigated these were the Grievances mailed to DOC. Yet the complaints mailed to DOC were also mailed to the above parties, in the same manner on the same day.

153. At least two of Plaintiff's grievances spurred investigations and formal written memoranda that were sent to Warden Agro. Upon information and belief, Warden Agro and or Mulvey directed that those investigations take place. Yet Plaintiff did not receive any notice formally or informally regarding the outcome or a response to these grievances. In fact, in several of Mr. Alli grievances he had made clear that he had not received any response, hearing or log number

154. Moreover, the legal Aid Society (Prisoners rights Project) Submitted at least two complaints on the behalf of Mr. Alli requesting for him to be afforded medical care and to preserve the facility camera video footage of the incident on May 5 2011.

155. Plaintiff also submitted multiple grievance to the commissioner of Board of Corrections Dora Schriro complaining of the deprivation of medical care, deprivation of basic necessities, unsanitary living conditions, and the May 5 2011 assault. Dora Schriro office forwarded Mr. Alli two letters stating his claims were being investigated. Yet no remedial actions were taken to stop or change actions. Plaintiff never received a determination to the alleged investigation.

37

156. Mr. Alli followed the grievance procedure up to the chains of highest authority.

157. To the extent that Plaintiff did not formally comply with the formal grievance requirements and exhaust his administrative remedies, Plaintiff's conduct is excused because administrative remedies were not available to him, the DOC's own conduct inhibited exhaustion and special circumstances existed that excused non-performance.

158. First, the grievance procedure was not available to Plaintiff because no one explained it to him and it was otherwise impossible for him to understand. Indeed, the grievance process is such a complexity that DOC Personnel at all levels of employment - including the Commissioner, Chair of BOC, Associate Commissioner, Wardens, Deputy Wardens and Captains - are largely unfamiliar with how the process work. Nor do they know the specific steps of the process or manner by which inmates are required to exhaust their administrative remedies. To that end, it would be unreasonable, if not impossible, for plaintiff to adequately understand the process.

159. Moreover, despite Plaintiff's numerous request for a copy of the grievance directive that sets forth the grievance process, DOC staff did not provide him with a copy. Instead, DOC staff, including officers, Captains and law library Personnel, told Plaintiff that he was not permitted to have a copy of the directive. And if inmates received the directive from the legal aid Society, DOC Personnel would confiscate the grievance directives from inmates. Similarly, Plaintiff's inmate handbook, was also confiscated. Plaintiff was otherwise precluded from any materials that explained the grievance process.

160. In addition, because Plaintiff never received a formal response to any of his grievances, The DOC own conduct inhibited Plaintiff from exhausting his administrative remedies. Specifically Plaintiff was retaliated against during the relevant time period for filing grievances.

161. Third, Special circumstances exist to excuse Plaintiff from exhausting his administrative remedies, there was no grievance box in the MHAUII area and no grievance officer was circulating MHAUII to collect grievances or to explain the grievance process to MHAUII inmates. In addition Plaintiff was housed in MHAUII and confined to his cell 23 hours per day. He was therefore forced to submit grievances on open forms to correctional officers who would read the grievances on open forms to Grievance Personnel and fail to submit them.

162. Because DOC Staff Refused to Submitt Plaintiff's grievances or forward his appeal to the Proper Parties to Whom Plaintiff grievances were addressed, the grievance Process was unavailable to plaint. Indeed upon information and belief, DOC Staff throughout G.R.V.C were aware of Plaintiff's history of Filing grievances, and intentionally failed to address or respond to Plaintiff's grievances.

## IX. DEFENDANTS WERE ON NOTICE OF PLAINTIFF'S CLAIMS.

163. Defendant Schriro was aware of, and on notice of Plaintiff's claims. At the minimal of five of Plaintiff's Complaints and or grievance appeals were addressed directly to defendant Schriro. In addition, the Prisoners right Project (Legal Aid Society) submitted at least four Complaints to DOC's Constituent Services. All of Plaintiff Complaints mailed directly to Commissioner Schriro, Schriro either opened her own mail or would otherwise be made aware of the inmates complaint from her staff. Schriro has also directed her staff to investigate Plaintiff's Claims and inform him his Claims were being investigated. Plaintiff received two reply's from Schriro's office.

164. Defendant Hildy J Simmons was aware of, and on notice of Plaintiff's Claims. At the minimal of five of Plaintiff's Complaints and or grievance appeals were addressed directly to defendant Simmons whom is the chair of the board of Corrections. In addition, the Prisoners rights Project forwarded at least four Complaints to the Boards of Corrections Executive director (Richard T Wolf), B.O.C'S Deputy Executive Cathy Potler, BOC's Tanya Glover, and B.O.C's Director of field Operations Kenneth T. Armstead. All of Plaintiff Complaints mailed directly to Simmons, Simmons either opened her own mail or would otherwise be made aware of the inmates complaint. On information and belief Hildy J. Simmons directed diana Sang of B.O.C to investigate Plaintiff's Claims.

165. Defendants Cathy Potler, Kenneth T. Armstead, Richard T Wolf, and Diana Sang were all aware of Plaintiff's Claims, due to the Prisoners rights Project forwarding Complaints directly to the above stated.

166. Defendants Rose agro, and Kathleen Mulvey were aware of and, on notice of Plaintiff's Claims. Plaintiff forwarded at least ten Complaints to each defendant.

167. All individual defendants were on notice and aware due to their personal involvment and direct Participation

39

168. Despite the allegations of the defendants to be investigating Plaintiff's claims no actions were taken to cease the cruel and unusual punishment methods subjected to Plaintiff, remove the officers whom Plaintiff claimed to participate or sanction the excessive use of force and or cruel and unusual punishment, or discipline said officials.

## X. DEFENDANTS HISTORY OF MISCONDUCT

169. All defendants herein have extensive records of misconduct whether disciplined or not and regardless if said conduct was five year prior to the incident Plaintiff endured

170. Captain Sherma Dunbar has been reported more than 50 times to the Department of Corrections, Complaint hotlines, Inspector General, and Board of Corrections for the allegation of misuse of force and other forms of misconduct. Approximately three inmates died while in the direct custody of Defendant Dunbar. These deaths could have been avoided if Dunbar would have taken the proper steps of her position. Dunbar was investigated for all three matters yet on information and belief only disciplined once. Dunbar is known for her malicious ways and foul degrading language towards inmates and Prison officials. On one occassion Dunbar was disciplined for her blunt hateful biasis steriotypical commets and actions. Dunbar ridiculed her Captain for being a homosexual calling him a "Faggot" and other terms. On one occassion in G.R.V.C during 2011 approx Febuary A inmate committed suicide, yet before the inmate even took steps to take his own life the inmate and other fellow inmates told Dunbar of this inmates intentions, yet she disregarded and failed to take any action to prevent the successfully suicide. After the inmate was found died in his cell, Dunbar stated she didn't care and took her money out and flashed it on the teir stating regardless of what she does, or what happen she will be still paid and dont worry about her being in trouble because the Inspector general office, Investigation Division, DOC and BOC will cover any of her actions. Despite numerous inmates writing statements verifing the above statement and the cameras showing her actions she was not disciplined for this incident. Despite Dunbar history of misconduct she still manage to become a Deputy warden.

171. Officer Arkhurst has been investigated or complained upon more than 20 times for use's of force. Due to him and fellow officers habbit of falsifying report many of the assaults he took place in were covered up or not properly investigated. Inmates have made ample complaints against him for useing force in the Mini Clinic. Outside of the internally reports, allegations, complaints and investigations conducted by O.A.t.h, D.O.C, B.O.C, Inspector General, Investigation division, and Prisoner rights Project, At least one incident Arkhurst was sued due to his malicious actions. For a incident involving servere injuries imposed and force used on an inmate In April 2011 A civil suit has be filed against Arkhurst. Even after plaintiff's incident Arkhurst continued to use force in the Mini Clinic. In 2011 febuary, and March allegations was made to the Investigation Division, BOC, DOC, Prisoners rights Project, and inspector general of said use's of force.

172. Officer Velez has been investigated, complained upon, or disciplined Multiple times. On one occassion Velez participated in the sanctioning of a inmate being slashed with a scapel cuasing extreme injuries SEE. LENNIO MARTINIEZ v. CITY OF NEW YORK 10 Civ. 6044 (DLC)(GWG). Velez has also took place in the Prior malicious assaults in the Mini Clinic.

173. Officer Phillips has been discipline on at least 5 different incidents for execessive use's of force and the illegally entering of a inmates cell to cause harm. Officers Phillips has also participated in Multiple use's of force in the Mini Clinic.

174. Officers Dixon, Bunton, Alceus, Victor and Captain Beharri, has all participated in Prior use's of unneccersaryy force inside the Mini Clinic. These Officers have been reported to DOC, BOC, Prisoners rights Project, Investigation Division, and Inspector General, for there misconduct. the stated officers have been subjected to Prior discipline due to the malicious conduct.

175. Captain Steward-Bowden has a extensive complaint record and discipline history. Having taking Participation in Multiple Mini Clinic assaults, illegal cell extractions, and writing false reports.

176. No sufficient actions were taken to Prevent the furthering of defendants repeated conduct. Many of these incidents go uncovered, unfounded, or unreported, D.O.C's Discipline and Investigation System are surely unresponsive.

41

## XI. Camera Footage/Facility D-V-R System

177. The Prisoners rights Project requested for the video footage of the incident on May 5 2011 in Plaintiff cell and inside the mini Clinic be Perserved. The Prisoners right Project directed this request to the B.O.C, and D.O.C, Upon information and belief Prisoners rights Project received a response stating said request will be granted.

178. Plaintiff has also requested the video footage, Plaintiff directed said request to the Investigation Division, DOC, BOC and the warden of G.R.V.C. yet Plaintiff received no response. During Plaintiff disciplinary hearing held by defendant Caputo Plaintiff asked for the camera footaged yet was wrongfully denied said respectful request.

179. After reviewing the footage it shall be undisputed Plaintiff's allegations are factual.

## XII. Injuries

180. As a result of defendants Conduct, Plaintiff has suffered and continues to suffer from embarrassment and humiliation.

181. Plaintiff has suffered Permenet Vision loss, Awaiting Surgery for treatment

182. Plaintiff has become hearing impaired requiring hearing aids.

183. Plaintiff suffered severe Fungi rashes from the Unsanitary living Conditions.

184. Plaintiff has also suffered Contusions and or rashes, and or Abrasions to his arms, legs, face, rib cage, Eye, Wrist, and head.

185. All of Plaintiff's Claims of Injury is Supported by medical reports.

## XIII. Claim for Relief

186. Plaintiff repeats and realleges the foregoing Paragraphs as if they was fully stated herein. This Claim rose Violations of the United State Constitution, Civil Law, Correctional law, federal Laws, Statutory rights, DOC & BOC Directives, Policy and Minimum Standards, And The Fifth, fourthteenth, fourth and Eight Amendment of the United States Constitution.

187. State Law Claims for the Misuse of force, Assault and Battery, And the Inhumane Unsanitary living Conditions.

188. All defendants herein acted Under Pretense Color of State Law. Each defendant had Personal Involvement and direct Participation in the Claimed Conduct, Actions, Or inaction throughout the Complaint.

189. All defendants herein knew of, Should have known, or was made aware of Plaintiff's Claims, through Prior simmilar Conduct, D.O.C & B.OC report and investigation system, Plaintiffs Verbal and written Complaints and or direct Participation.

190. Under the N.Y. McKinney's Correction Law § 112, All Commissioners have a duty to inquire into all matters Connected with said Correctional facilities.

191. Defendants maintained a Code of Silence, Participated, Sanctioned Covered up and or Failed to take any actions to remedy the wrong. These Practices are so long standing and deeply embedded in the Culture of the Department they implement municipal Policy.

## XIV. Plaintiff STATE LAW CLAIMS have Merit, And Shall be heard.

192. Under 28 U.S.C § 1367(a), Any civil action of which the district courts have original Jurisdiction, the district Courts Shall have Supplemental Jurisdiction over all Other Claims that are so related to the Claims in the action within such Original Jurisdiction that they form part of the Same case or Controversy under Article III of the united State Constitution.

193. Federal Courts may exercise Jurisdiction over related State Law Claims, where an Independent basis of Subject-matter Jurisdiction exists. SEE E.g., Montefiore Med.Ctr. v. Teamster local 272 642 F.3d 321, 323 (2d. Cir. 2011)

194. In accordance with the New york Law, (1) Plaintiff has Served the notice of claim, (2) at least thirty (30) days has elapsed Since the notice of claim was filed, and before the Complaint was filed; And (3) in that time the defendants has neglected to or refused to adjust to Satisfy the Claim. SEE N.Y. Gem. Mun. Law § 50-i (McKinney's 1986); N.Y. Unconsol. Law § 7401 (McKinney's 1979 & Supp. 1998); Davidson v. Bronx Mun. Hosp., 64 N.Y.2d 59, 61-62, 484 N.Y.S.2d 533, 534-35, 473 N.E.2d 761, 762-63 (1984)

195. On the 8th day of June 2011, Plaintiff adequately Served the City of New York with a Notice of Claim in Accordance with N.Y. Gem. Mun. Law § 50-e. Stating that Plaintiff served a notice of Claim setting forth inter alia, the nature of the claim within ninety days of when the Claim arose, Plaintiff's State law Claims are sufficient and reviewable.

43

## Prayers for Relief

196. WHEREFORE, Plaintiff seeks Judgment awarding damages for each asserted claim and for claimed injuries against each defendant.

1. Compensatory damages in an amount to be determined at trail.

2. Punitive damages against each defendant, except the City of New York, in an amount to be determined at trial

3. Injuntive relief to improve the methods of using force, investigating use's of force, disciplining officers for the use of force, inadequate medical care and follow up reviews and screening after use's of force

4. Injunction to place camera's in each clinic of Rikers Island.

5. Such other relief as the courts deem Just and Proper.

Verified Complaint, to be true and accurate
Sworn to by the Undersigned.

Umar Alli    Umar. Alli
                            U.A

Dated: ~~~~~~~~
October 5, 2012

Pro Se Attorney
Umar. Alli    Umar. Alli
                            U.A
Cayuga Corr. fac
P.O. Box 1186
Moravia N.Y. 13118

44



Sing Sing Correctional Facility
354 Hunter Street
Ossining New York 10562

Pro Se Office
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES DISTRICT COURT
NEW YORK, NEW YORK 10007

RECEIVED
SDNY PRO SE OFFICE
2012 OCT 18 P 3 43

LEGAL MAIL