UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UMAR ALLI,

        Plaintiff,

        v.

CAPTAIN LISA STEWARD-BOWDEN (#1225);
CAPTAIN JOHANNA BANKS (#819);
CAPTAIN JOSEPH CAPUTO, CAPTAIN B.
BEHARI (#1603); OFFICER LYDON VICTOR (#14410);
OFFICER SANDY ARKHURST (#18507);
OFFICER BUNTON; OFFICER TERRANCE DIXON
(#17963); OFFICER ANDERSON ALCEUS (#18380);
OFFICER VELEZ (#11352);  OFFICER PHILLIPS;
OFFICER ROHR (#18104); MARK A. SCOTT
SHARMA  DUNBAR (#717); WARDENS
ROSE AGRO AND KATHLEEN MULVEY;
CITY OF NEW YORK; DORA SCHRIRO;
LEWIS FINKELMAN; CHARLTON LEMON;
HILDY J. SIMMONS; MICHAEL J. REGAN;
FLORENCE FINKLE; MICHAEL HOURIHANE;
LARRY DAVIS, SR.; RICHARD T. WOLF
CATHY POTLER; KENNITH T. ARMSTEAD
CORRECTIONAL HEALTH SERVICES/
PRISON HEALTH SERVICES and
JOHN DOES 1 THROUGH 6.

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Case No. 11-cv-4952
(PKC) (KNF)



**SECOND**
**AMENDED**
**COMPLAINT**

**JURY TRIAL**
**DEMANDED**

        Plaintiff, Umar Alli, through his undersigned *pro bono* counsel, hereby alleges as follows:

## INTRODUCTION

    1.      This is a civil rights action in which Plaintiff seeks to vindicate rights secured by 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

2.      This action arises from a series of events, beginning on or about May 5, 2011 when Plaintiff was brutally attacked by certain of the named-Defendants at the George R. Vierno Center ("GRVC") on Rikers Island, East Elmhurst New York (the "Incident" or "Assault"). At the time of the Assault, Plaintiff was a pre-trial detainee awaiting trial and sentencing, and only nineteen years old.

3.      To conceal their assault, the Assaulting Officers, defined *infra*, conspired with other named-Defendants to, amongst other things, lodge disciplinary infractions against Mr. Alli for a number of offenses, for which a hearing was held on May 13, 2011 (the "Hearing").

4.      The Hearing was riddled with due process deficiencies, which ran afoul of Mr. Alli's constitutional rights, the policies and directives of the New York City Department of Corrections (the "Department" or "DOC") and the laws of the state of New York.

5.      As a consequence of these massive breaches, Mr. Alli was confined to disciplinary segregation for 100 days, during which time certain named-Defendants caused Plaintiff to endure heinous confinement conditions and exhibited deliberate indifference towards Mr. Alli's serious medical needs.

6.      As a result of these and other deprivations described herein, Mr. Alli has sustained permanent physical injuries, including but not limited to reduced vision, hearing loss, and other physical injuries as well as emotional harm.

7.      Plaintiff seeks monetary damages (special, compensatory, and punitive) against all Defendants, public disciplining and sanctioning of certain Defendants named herein, an award of costs and attorneys' fees, and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

8.      Jurisdiction is proper unde r 28 U.S.C. §§ 1331 because P laintiff seeks to enforce rights secured by 42 U.S.C. § 1983, 1988.  This Cour t also has jurisdiction  over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)  and (c).

## DEMAND FOR JURY

10.      Plaintiff hereby dem ands a trial by jury of   any and all is sues per taining to th is case including, but not limited to, damages.

## THE PARTIES

11.      Plaintiff Um ar Alli is a United S tates Ci tizen.  At all times alleged h  erein, Mr. Alli was a pre-trial detainee in DOC custody, at GRVC.

12.      Defendants Lisa Steward-Bowden, Ande rson Alceus, Sandy Arkhurst, Terrence Dixon and Lydon Victor ("Assaulting Officers") were, at all times referred to in this Complaint, uniformed correction officers em   ployed by DOC   and assigned to G    RVC. The Assaulting Officers were required   to conduct their resp    onsibilities in accord  ance with Departm  ental directives governing the use of force, inmate access to medical care, and the minimum standards governing conditions of confinem ent es tablished by the New York   City Board of Corrections ("BOC").  At all tim es referred to in this Com plaint, Assaulting Officers acted within the scope of their DOC employment and under color of state law.  These Defendants are each sued in their individual and official capacities.

13.      Defendants Behari, Bunton, Dunbar, Phillip s, Rohr and Velez ("Uniform ed and Supervisory Of ficers") were, a  t a ll tim es ref erred to  in  th is Com plaint, unif ormed of ficers, captains and/or first-line supervisory offi    cers em ployed by DOC a   nd assigned to GRVC.

3

Uniformed and Supervisory Officers were required to perform their duties in accordance with Departmental directives governing the use of force, investigation thereof, inmate access to medical care, inmate grievance procedures and BOC minimum standards. At all times referred to in this Complaint, Uniformed and Supervisory Officers acted within the scope of their DOC employment and under color of state law. These Defendants are each sued in their individual and official capacities.

14.     Defendants Dora Schriro and Lewis Finkelman were at all times referred to in this Complaint, and still are, the Commissioner and First Deputy Commissioner of DOC, respectively. Defendants Schriro and Finkelman are legally responsible for the operation of all Department facilities, including but not limited to the selection, supervision, promotion, training, and discipline of the uniformed staff, first-line supervisors, supervisory security personnel and for the care, custody, and control of all inmates in DOC custody. These responsibilities were and are required to be conducted in accordance with the legal mandates applicable to DOC facilities, including but not limited to directives governing the use of force, inmate access to medical care, inmate grievance procedures and BOC minimum standards. At all times referred to in this Complaint, Defendants Schriro and Finkelman acted within the scope of their DOC employment and under color of state law. These Defendants are sued in her individual and official capacities.

15.     Defendants Rose Agro and Kathleen Mulvey were, at all times referred to in this Complaint, GRVC Wardens responsible for the supervision of Assaulting Officers as well as Uniformed and Supervisory Officers, and for the care, custody and control of inmates confined to GRVC. These responsibilities were and are required to be conducted in accordance with the legal mandates applicable to DOC facilities, including but not limited to directives governing

4

the use of force, inm    ate acces s to m  edical  care, inm ate grievance procedures    and BOC minimum s tandards.  A t a ll ti mes r eferred t o i n this Com plaint, Defendants Agro an d Mulvey acted within the scope of their DOC employment and under color of state law.  Defendants Agro and Mulvey are sued in their individual and official capacities.

16.     Defendant Mark A. Scott was, at all tim      es r eferred to  in this Complain   t, a Supervising W arden assigned to GRVC and re     sponsible for the supervis  ion of Assaulting Officers as well as Uniformed and Supervisory Officers, and for the care, custody and control of inmates confined to GRVC.  These responsibili    ties were and are required to be conducted in accordance with the leg al m andates applicab le to DOC facilities, inclu  ding but not lim ited to directives g overning th e use of force, inm      ate acces s to  m edical care, inm  ate grievan ce procedures and BOC m inimum standards.  At all tim es referred to in this Complaint, Defendant Scott acted within the scope of his DOC e  mployment and under color of state law.  Defendant Scott is sued in his individual and official capacities.

17.     Defendant Florence Finkle was, at all times referred to in this Complaint, Deputy Commissioner of Integrity and Policy for th      e DOC.  In this role, Defendant Finkle was responsible for ordering and supervising the inve  stigation of all use of  force incidents and for initiating recommendations for disciplinary action   against officers and captains who engage in misconduct.  These responsibilities were to be conducted in accordance with the legal mandates applicable to DOC facilities.  At all tim es referred to in this Com plaint, Defendant Finkle ac ted within the scope of her DOC e  mployment and unde r color of state law.  She is sued in her individual and official capacities.

18.     Defendant Charlton  Le mon was, a  t a ll tim es ref erred to  in th  is Co mplaint, Deputy W arden for Security for the DOC assigne  d to GRVC.  In this role, Defendant Lem   on

was responsible for the supervisi on of correction officers, captai ns and other supervisors with respect to the care, custody and control of inm ates confined to GRVC.   These responsibilities were to be conducted in accordance with the legal mandates applicable to DOC facilities.  At all times referred to in this Complaint, Defendant Lemon was acting within the scope of his DOC employment and under color of state law.  De     fendant Lemon is sued in his individual and official capacities.

19.    Defendant Larry Davis, Sr. was, until approx  imately December 2011, th e Chief of the Depa rtment and was responsible for the     supervision, oversight  and discipline of the uniformed security staf  f, including  the superv isory se curity staf f, in all Depar    tment jails, including GRVC.   The  se respon sibilities were  to be condu cted in acco rdance with  the legal mandates applicab le to DOC f acilities.  At all   times ref erred to in th is Com plaint, Def endant Davis acted within the s cope of his DOC e mployment and under color  of state law.  He is sued in his individual and official capacities.

20.    Defendant Michael Hourihane was at all ti mes referred to in this Complaint until approximately Decem ber 2011, Deputy Chief of Depart    ment, and since Decem ber 2011 has been Chief of Departm    ent.  As Deputy Chie      f, Defendant Hourihane was responsible for monitoring and addressing all operational, safety      and  sec urity m atters in DOC f   acilities, including GRVC.  These responsi bilities inc luded maintaining statistics on violen t incidents at DOC facilities and creati ng procedures to protect the persona l safety of DOC staf f and inmates confined to DOC custody.  At all times referred to in this Complaint Defendant Hourihane acted within the scope of his DOC e mployment and under color of state law.  Defendant Hourihane is sued in his individual and official capacities.

21.     Defendants Michael J. Regan  and Hildy J. Simmons were, at all times referred to in th is Complain t, Chair and Vice-  Chair of  th e BOC, res pectively.  Defendants Regan and Simmons were responsible for establishing      and ensuring com pliance with BOC m  inimum standards regulating conditions of  confinement and hea lth care in a ll New York City (  "City") correctional facilities.  These Defendants were required to actively investigate serious incidents, evaluate DOC perfor mance, review inm ate grie vances and m ake recommendations concerning the sam e.  At all tim es ref erred to  in this   Complaint, Defendants Regan and Simmons acted within the scope of their DOC e mployment and under color of state law.  These Defendants are sued in their individual and official capacities.

22.     Defendants Cathy Potler and Richard T. W olf, Esq. were, a t all times referred to in this Complain t, Executive Director and Deputy Executive  Director of the BOC, respectively.  These full-time DOC e mployees were responsible fo r ensuring that health  care provided within all DOC facilities, including GRVC, was m        aintained "at a level consistent with lega        l requirements, accepted professional standards and   sound professional judgm ent and practice." Together, D efendants P otler and Wolf were responsible for m   onitoring the com pliance of all DOC f acilities with the  se m inimum standards .   At all tim es ref erred to in th  is Com plaint, Defendants Potler and Wolf acted within the sc ope of their DOC e mployment and under color of state law.  These Defendants are sued in their individual and official capacities.

23.     Defendant Kennith T. Ar mstead was, at a ll tim es ref erred to in this Com plaint, Director of Field Operations a  nd a full tim e employee of the BO  C.  I n this  ro le, Def endant Armstead supervised the daily activities of the field rep resentatives who are required to canvas DOC facilities daily for purposes  of monitoring compliance with BOC m inimum standards.  In this role, Defendant Arm stead was  required to   conduct frequent and targeted inspections of

DOC facilities to identify and resolve known problems, including but not limited to, unjustifiable uses of force and conditions of confinement in breach of BOC Minimum Standards. At all times referred to in this Complaint, Defendant Armstead acted within the scope of his DOC employment and under color of state law. Defendant Armstead is sued in his individual and official capacities.

24.     Defendants Agro, Armstead, Davis, Finkle, Finkelman, Hourihane, Lemon, Mulvey, Potler, Regan, Schriro, Scott, Simmons and Wolf are hereinafter collectively referred to as "Policy-making Defendants."

25.     At all times referred to in this Complaint, John Does 1 through 6 were field representatives, serving as BOC's "eyes and ears" into the City's jails. These six Defendants were responsible for conducting site visits at all DOC facilities for the purpose of handling prisoner and staff complaints and violent and unusual incidents within all DOC facilities. At all times referred to in this Complaint, John Does 1 through 6 acted within the scope of their DOC employment and under color of state law. These Defendants are sued in their individual and official capacities.

26.     Defendant City of New York ("City") is a municipal corporation, which, through the Department, operates a number of detention facilities, including the GRVC. The DOC, through its senior officials at the central office and in each facility, promulgates and implements policies, including policies with respect to the use, reporting and investigation of force employed by uniformed staff, inmate grievance procedures and inmate access to medical and other services mandated by local law and court orders. The DOC is also responsible for the appointment, training, monitoring, supervision, hiring and conduct of all DOC personnel, including the Defendants named herein.

8

**NOTICE OF CLAIM**

27.     On June 8, 2011, and within ninety days of the accrual of the claims stated herein, Plaintiff, Umar Alli, served on the Comptroller of the City of New York a Notice of Claim setting forth the time, place and manner in which his claims arose. More than 30 days have elapsed since the Plaintiff's Notice of Claim was served upon Defendant City and the matter has not been settled or otherwise resolved.

**FACTUAL ALLEGATIONS**

28.     The conduct engaged in by the Defendants named herein was, at all times, subjectively and objectively unreasonable and in violation of Mr. Alli's clearly established rights.

**Pre-textual Entry into Mr. Alli's**
**Punitive Segregation Cell**

29.     On May 5, 2011, Mr. Alli became yet another victim of the "pattern of brutality" that has become "deeply entrenched" in New York City jails. *See e.g.*, *Nunez v. City of New York*, No. 11-cv-5845 (LTS) (JCF) (S.D.N.Y. Aug. 30, 2012) (the sixth and most recent class action challenging the "routine and institutionalized staff violence against inmates" in New York City jails); *Ingles v. Toro*, No. 01-cv-8279 (S.D.N.Y. April 4, 2006) (requesting system-wide relief from the excessive use of force in New York city jails); *Sheppard v. Phoenix*, No. 91-cv-4148 (S.D.N.Y. July 10, 1998) (challenging excessive use of force in the City's Central Punitive Segregation Unit); *Jackson v. Montemango*, No. 85-cv-2384 (E.D.N.Y. Nov. 26, 1991) (challenging the same conduct in the Brooklyn House of Detention); *Reynolds v. Ward*, No. 81-cv-101 (S.D.N.Y. 1990) (challenging excessive and unnecessary force in the Bellevue Prison

Psychiatric Ward); *Fisher v. Ward*, No. 83-cv-2128 (S.D.N.Y. March 28, 1990) (challenging the same conduct in the Eric M. Taylor Center, a Rikers Island jail).[1]

30.     At the time of the Assault, Plaintiff was housed in the GRVC Mental Health Assessment Unit for Infracted Inmates ("MHAUII").

31.     At approximately 10:42 pm, Defendant Steward-Bowden along with Defendant Arkhurst approached Plaintiff's cell door purportedly to serve Mr. Alli an infraction related to a prior, unrelated incident.

32.     At approximately 10:44 pm, a third officer joined Defendants Steward-Bowden and Arkhurst outside of Mr. Alli's cell. Upon information and belief Defendant Dixon was the third officer. When Defendant Dixon arrived, Defendant Steward-Bowden appeared to be completing the paperwork she intended to serve on Mr. Alli.

33.     Shortly thereafter, Steward-Bowden opened the outer portion of the cuffing port on Mr. Alli's cell, purportedly to serve Mr. Alli the infraction. Upon information and belief, infractions are to be served beneath or through the side of the cell door.

---

[1] In addition to these class actions, senior DOC supervisors and uniformed staff have been repeatedly sued by inmates alleging beatings by staff and DOC-sanctioned cover-ups. *See, e.g., Youngblood v. Baldwin*, No. 08-cv-5982 (S.D.N.Y. July 22, 2009) (alleging a staff beating at GRVC resulting in skull laceration and broken nose); *Rice v. New York City Department of Corrections*, No. 03-cv-582 (S.D.N.Y. Aug. 26, 2004) (alleging the beating of two inmates at GRVC resulting in collapsed lung and contusion hematomas, in one case, and neck and spinal cord injuries causing permanent stutter, in the other); *Joseph v. New York City Department of Corrections*, No. 02-cv-9219 (S.D.N.Y. May 28, 2003) (alleging beat-up at GRVC resulting in orbital fracture); *see also Reynolds v. City of New York*, No. 11-cv-621 (S.D.N.Y. Nov. 21, 2011); *Williams v. City of New York*, No. 09-cv-5734 (S.D.N.Y. Aug. 12, 2010); *Lee v. Perez*, No. 09-cv-3134 (S.D.N.Y. March 12, 2010); *Shuford v. City of New York*, No. 09-cv-945 (S.D.N.Y. Oct. 22, 2009); *Belvett v. City of New York*, No. 09-cv-8090 (S.D.N.Y. Nov. 18, 2010); *Mull v. City of New York*, No. 08-cv-8854 (S.D.N.Y. March 22, 2011); *Diaz v. City of New York*, No. 08-cv-4391 (S.D.N.Y. March 24, 2009); *Lugo v. City of New York*, No. 08-cv-2931 (S.D.N.Y. Jan. 20, 2009); *Williams v. City of New York*, No. 07-cv-11055 (S.D.N.Y. Sept. 24, 2008); *Cuadrado v. City of New York*, No. 07-cv-1447 (S.D.N.Y. Dec. 26, 2007); *Scott v. City of New York*, No. 07-cv-3691 (S.D.N.Y. Oct. 18, 2007).

34.     Prior to signing an Investigation Report  and Infraction, an inm ate is to be given an opportunity to such docum ents.  Upon infor mation and belief, Defe ndant Steward-Bowden used the cuf fing port in this ins tance to prev ent Mr. Alli f rom fully reviewing the r eport and infraction.

35.     In addition to the im proper service of the infraction, Steward-Bowden attem pted to pass Mr.  Alli an unauthor ized pen not appropria te f or MAUII inm ates, per DOC and/or GRVC official policy, procedure and directives.

36.     Defendant Steward-Bo wden insisted th at Mr.  Alli take her pen, although he advised her that he had an authorized pen in  his cell.  Upon infor mation and belief, Defendant Steward-Bowden intend ed to claim  that M r. Alli h ad used  her pen to   harm  him self thereby justifying Defendants' improper entry into Mr. Alli's cell. [2]

37.     As Mr. Alli attem pted to review the inf raction, he observed that the inf raction was in an unusual form .  In particular,  he obser ved that the infraction co ntained extra sheets of paper after the signature page, separated by a piece of carbon paper.

38.     Mr. Alli ask ed Defendant Steward-Bowden what was bene ath the c arbon paper. Rather than  answering Mr. Alli's q uestion, De fendant Steward-Bowden  chastised Mr. Alli to "just hurry up, read . . . and sign" the infraction.

39.     Mr. Alli exp lained that h e wanted to avoi d signing something he could not read . In order to r ead the infraction in its e ntirety and avoid signing papers he  had not reviewed, Mr. Alli attempted to review the portions of the infraction underneath the suspicious carbon paper.

---

[2] The investigative and officers' reports contain inconsistent and contradictory allegations regarding Mr. Alli's alleged      attempt to har m him self with  Defendant Steward-Bowden's unauthorized pen; nonetheless, all  Assaulting Officers m aintain that this act prompted entry into Mr. Alli's cell.

40.     Growing increasingly impatie nt, Defendant Steward-Bowden told Mr. Alli he was "taking too long" and pulled the infraction from the cuffing port, causing it to tear.

41.     Mr. Alli tried to assu re Defendant Steward-Bowden that it was not his inten tion for the infraction to rip.  Defe ndant Steward-Bowden nonetheless ordered that the control room officer open or "crack" Mr. Alli's cell.  Defendant Steward-Bowden gave the order to crack Mr. Alli's cell three or four times before control room officers took notice and opened the cell door.

42.     Under DOC and/or GRVC official polic y, procedure and directives, Defendant Steward-Bowden had no legitim ate, non-punitive purpose in entering Mr. Alli's cell.  To be sure, Mr. Alli's conduct warranted neither entry into his cell or the malicious and sadistic assault that transpired upon entry.

43.     Defendant Steward-Bo wden's sole purpose in entering M r. Alli' s cell was to inflict harm upon Mr. Alli.  U pon inform ation and belief, Assaulting Officers were m otivated *solely* by an interest in punishing Mr. Alli for misbehavior during Defendant Steward-Bowden's working shift ("tour") and for previously fi        ling com plaints and grievances against DOC officials.

**The Brutal Attack in Mr. Alli's Cell**

44.     The brutal battery began immediately upon entry into Mr. A lli's cell.  Defendant Arkhurst entered first, followed by Defendants Dixon and Steward-Bowden.

45.     Defendant Arkhurst delivered the first blow, a strike to Mr. Alli's left eye with a closed fist.  The force of the blow knocked Mr. Alli to the floor.  While on the floor, Defendants Arkhurst and Dixon repeatedly kicked, kneed, stomped and punched Mr. Alli.

46.     At approximately 10:46 pm, Defendants Alceus and Victor arrived and promptly joined the attack.[3]

47.     The Assaulting Officers' comments—such as "we're going to kill you;" "you think you're going to get away with fighting on our captain's tour;" "take your beating like a man;" "you deserve it;" and "cry like the little bitch you are;" amongst other debasing comments—demonstrate the malicious, sadistic and punitive motivations behind the attack.

48.     In addition, the Assaulting Officers called Mr. Alli "a smart mouth," "snitch," and asked whether he thought he could get away with "writing complaints and grievances."

49.     These statements make it clear that Assaulting Officers were not acting in good faith *or* in attempt to restore order but rather for the sole purpose of violating Mr. Alli's constitutional rights.

50.     Mr. Alli begged for the Assaulting Officers to stop, but the beating continued. During this time, Defendant Steward-Bowden did nothing to stop the attack but rather watched and encouraged it by cheering the other officers on.

51.     Other inmates who were either in earshot of Mr. Alli's screams or had a direct view of the Assault beckoned for officers to cease the violent attack.

52.     Realizing that other inmates could see the attack, Defendant Steward-Bowden turned off the lights in Mr. Alli's cell.

53.     Minutes later, Steward-Bowden signaled for Defendants Alceus, Arkhurst, Dixon and Victor to end the Assault because too much time had passed. Upon information and belief, this comment demonstrates Defendant Steward-Bowden's awareness of DOC and/or GRVC

---

[3] Upon information and belief, Defendant Victor was responsible for monitoring and supervising pantry and/or sanitation inmates. He abandoned his post, without ensuring that these inmates were contained as required by DOC and/or GRVC directives, policies and procedures, strictly for the purpose of participating in the brutal attack on Mr. Alli.

official policy, procedure and directives with respect to the presence of officers in an inmate's cells.

54.     At approximately 10:49 pm, the Assaulting Officers began escorting Mr. Alli out of his cell, leading him towards the GRVC mini-clinic.

**The Attack Resumes in the Mini-Clinic**

55.     GRVC maintains a main clinic and a mini-clinic. Upon information and belief the main clinic is a 24/7 facility.

56.     There are no cameras in the GRVC mini-clinic. Despite the many complaints by inmates that officers frequently use this unmonitored space to physically and sexually assault inmates, no steps have been taken to correct this major loophole in prison security and inmate safety.

57.     The mini-clinic closes each day at or around 7:45 pm. Upon information and belief, the mini-clinic is used primarily to provide treatment to punitive segregation inmates. After hours, however, punitive segregation inmates with medical needs are to be taken to the main clinic.

58.     Given the time of night, around 10:49 pm, the mini-clinic was already closed at the time the Assaulting Officers approached the mini-clinic with Mr. Alli and there were no doctors or nurses on site. Accordingly, the Assaulting Officers had no legitimate non-punitive penological interest in approaching or entering the mini-clinic at that time.[4]

---

[4] Assaulting Officers' reports collectively omit any reference to the mini-clinic despite the fact that GRVC cameras show Mr. Alli being taken towards the mini-clinic rather than the main clinic after leaving his cell.

59.     While Defendants Steward-Bowden and Di xon searched the c ontrol room  for a key to the locked m ini-clinic, Defendant  Akhurst held Mr.  Alli agains t the wall, twisting h is wrists and fingers, and threatening him with more abuse.

60.     Having failed to find a key for the m   ini-clinic, Defendant Dixon used a utility knife to pick the lock.  Defendants Stewar d-Bowden, Arkhurst, Alceu s and Dixon entered the mini-clinic.  Defendant Victor left the scene and the attack continued.

61.     Prison cam eras show that Mr. Alli was esco     rted from  his cell shirtless and handcuffed.  He remained so throughout the attack.

62.     In the m ini-clinic, as they had in P  laintiff's cell, Defendants Alceus, A  rkhurst and Dixon took turns striking Mr. Alli in th e ribs, stomach, back, head and face.  Each time Mr. Alli fell to the floor he was kicked, kneed and stomped until he was pulled back up to repeat the same vicious cycle.  During this time, Defendant  Steward-Bowden encouraged these officers to continue.

63.     The attack continued for approxim ately ten m inutes, at which point Defendants Alceus and Victor put a DOC shirt over Mr. Alli's head.

64.     Before exiting the m ini-clinic, Defendant  Stew ard-Bowden m ade contact with Mr. Alli's face using a sharp object she held       in her hands.  The Injury to Inmate Report, completed following the attack, records abrasions on both sides of Mr. Alli's face.

65.     The Assaulting Officers threatened to "kill" Mr. Alli if he reported the true cause of his injuries to the examining doctor.

**Mr. Alli was Denied**
**Appropriate Medical Attention**

66.     The BOC's Minimum Health Care Standards ("MHCS") require that inmates receive prompt medical attention and explicitly prohibits delay, denial and interference with an inmate's access to medical treatment.

67.     Inmates in need of emergency services are to be granted access to such services promptly. In addition, such services are to be provided competently and "at a level consistent with legal requirements, accepted professional standards and sound professional judgment and practice." *See* Exhibit A § 3-01(a).

68.     The care Mr. Alli received immediately after the Incident and in the several weeks that followed fell grossly below this standard.

69.     Upon arriving at the main clinic, Mr. Alli waited approximately one hour to receive medical attention, during which time he was in extreme pain and discomfort.

70.     When finally examined by the doctor on call, the bulk of Mr. Alli's visible and nonvisible injuries were *not* recorded on the Injury to Inmate Report.

71.     In addition, despite being in extreme pain, the examining doctor failed to prescribe pain medications *or* schedule follow-up appointments to review the extent of Mr. Alli's injuries.

72.     After the examination, Mr. Alli was forced to walk barefoot with no aid or assistance back to his cell.

73.     Had Mr. Alli received a proper exam, treatment and follow-up care, as required under the MHCS, the permanent injuries he sustained would surely have been—at the very least—minimized.

**The May 10, 2011 Infraction &**
**Corresponding Cover-up**

74.     On May 10, 2011, the Assaulting    Officers in fracted Plain tiff for disciplin ary offenses purportedly arising out of his conduct during the Assault (the "Infraction").

75.     This Infraction was th e first of a ser ies of events intended to cover-up the initial wrongful act, namely the malicious Assault on Mr. Alli.

76.     The Infraction, as required under DOC polic y, triggered an inve stigation. This investigation was, however, laced with inefficiencies, bias and due process violations.

77.     For instance, Defendant Steward-Bowd    en, who was the m    aster-mind and, indisputably, a partic ipant in the Assault, a lso participated in the investigation of the Inciden t. Her par ticipation was strictly prohibited by DOC directives, polic ies and procedures given her involvement in the Assault.

78.     The investigation conducted by Defenda    nt Banks also fell short of DOC directives, polic ies and procedur es, as well as    constitutional princip les. Def endant Banks did not initiate the investig ation within 24 hours of the alleged offenses, failed to investigate Mr. Alli's excessive force allegations, and failed to obtain statements from material witnesses.

79.     Prior to the DOC-mandated Hearing held on May 13, 2011 (the "Hearing"), Adjudication Captain Joseph Caputo failed to review the Infraction for due process violations and failed to investigate and report Mr. Alli's allegations of excessive force.

80.     In fact, when Mr. Alli informed Defendant Caputo of the Assault in the mini-clinic, the latter responded that it did not concern him.

81.     Defendant Caputo similarly failed to review and/or facilitate the preservation of video capturing the Assault and denied Mr. Alli the opportunity to call and examine witnesses

during the Hearing, even where such witnesses would have offered relevant non-duplicative evidence.[5]

**Defendants Demonstrated Deliberate Indifference
to Mr. Alli's Need for Medical Care**

82.     In the week s following  the Ass ault, Mr . Alli was denied   access to n ecessary medical treatment, causing him to suffer permanent physical damage as a result of his injuries.

83.     During his discip linary segrega tion, Mr.  Alli made daily re quests to be  seen by sick-call personnel.

84.     Mr. Alli m   ade these requests to pa       sser-by m edical s taff and Def   endant Assaulting Officers and Unifor med and Supervisor y Officers, all of whom   repeatedly ignored Mr. Alli's requests.

85.     For instance, Mr. Alli m    ade daily re  quests for   medical care to D   efendants Beharri, Bunton, Dixon, Phillips,      Rohr and Velez, each of        whom   conducted daily tours, approximately fifteen per day, of Mr. Alli's housing area.

86.     During this time, Mr. Alli was on medication for back pain and approved for care by a physical therapy.  These Defendants repeat      edly denied Mr. Alli's requests to see his physical th erapist in violation B    OC Health  Care Min   imum Standards and constitu   tional principles.

---

[5]Specifically, Kiaza Loccenitt, then -GRVC in mate, submitted relev ant, non-duplicative evidence in an Article 7 8 proceeding challenging these due process viola tions and the resulting 100 day punitiv e confinement.  There, Loccenitt decl ared under penalty of perjury, that he had witnessed the brutal beating of Mr. Alli but was prevented from offering a vo luntary statement. The Supreme Court of New York ordered that     the Infraction be expunged and the 100 days credited to Mr. Alli on September 28, 2011.

87.     Mr. Alli reported these denials to Defendants Steward-Bowden and Dunbar, both housing area captains of Mr. Alli's housing area.  These Defendants are responsible for the discipline, supervision, monitoring and training of the housing area officers in their charge.

88.     Defendants Steward-Bowden and Dunbar neither ordered housing area officers to permit Mr. Alli to obtain medical attention nor did they facilitate Mr. Alli's access to medical care.

89.     Upon information and belief, Defendants John Does 1 through 6 canvased GRVC during this period and failed to document, report, investigate, remedy or otherwise intervene in protection of Plaintiff's constitutional rights.

90.     The joint and conspiratorial action of    Defendants Steward-Bowden, Dunbar, Behari, Bunton, Dixon, Phillips, Rohr and Velez constituted deliberate indifference to a substantial risk posed to Mr. Alli's health and safety and fell short of DOC and BOC directives, policies and standards governing inmates' access to health care.

### Mr. Alli Reports Medical Needs to Policy-making Defendants[6]

91.     Unable to obtain assistance from GRVC officers and supervisory staff, Mr. Alli began reporting these deprivations to the Policy-making Defendants named herein.

92.     In a letter dated May 18, 2011, Mr. Alli        complained to  Defendants Schriro, Mulvey and/or Agro[7] and Simmons, informing them that he had been assaulted in his cell at GRVC and that he was not "*receiving medical care, despite . . . numerous complaints of severe*

---

[6] To the extent certain letters are undated or without addressee information, we have relied in good faith on the affidavits of service produced in discovery to determine when and to whom such letters were sent.

[7] To the extent Defendant Mulvey was no longer in the position of GRVC Warden, the letter would have been forwarded to Defendant Agro.

*pain. I am in imminent danger and receiving numerous death threats from officers and capt[a]ins.*"

93.     On May 23, 2011, Mr. Alli received a boiler-plate response from the Director of Constituent Services, an employee within the office of Defendant Schriro, advising him in general terms that "the issues described in [his] letter are currently being investigated."

94.     On June 1, 2011, Mr. Alli wrote the Central Office Review Committee referencing prior grievances, describing his injuries and noting that he was being "*deprived [of] medical care and forced to live under foul conditions. I also am struck around [by] these officers who[] daily harass me. Please help, adhere and investigate my complaint.*"

95.     On June 2, 2011, a Legal Aid staff attorney wrote to Defendants Armstead, Finkle, Finkelman, Potler and Wolf on Mr. Alli's behalf. The email noted that Mr. Alli was being denied "*pain medication and other basic necessities . . . while . . . detained in punitive segregation*" and requested that Mr. Alli be "*seen by medical staff as soon as possible*" and given "*appropriate and necessary medical treatment*." (referred to hereinafter as the "Wilker Email").

96.     On June 6, 2011, a Legal Aid Society intern wrote Defendant Finkle, advising him that Alli had "*suffered ocular damage to his left eye, bleeding from his right ear, soft tissue damage to his back, which has caused persistent back pain, extensive bruising to his ribs, and abrasions and contusions on his face and head.*"

97.     On the same day, a Legal Aid Society intern wrote Defendants Armstead, Potler and Wolf, advising them that Mr. Alli had "*suffered a severe traumatic injury to his ear, among other injuries, during a use of force incident at GRVC on May 5 and that he has not been seen by*

*medical staff with respect to that injury.*" Sawyer requested that "*Alli's ear [be] evaluated as soon as possible*" and that he *"receive whatever treatment he needs.*"

98.     On June 21, 2011, Mr. Alli received a response from an IGRP Investigator in Defendant-Schriro's office.

99.     The investigator, a subordinate of Defendant Schriro, advised Mr. Alli that although the commissioner was in receipt of Mr. Alli's complaint, the complaint would not be pursued given that Mr. Alli had not submitted the complaint internally.

100.     This advice was misguided given that DOC Directive No. 3376 establishes that Inmate allegations of physical assault are *not* subject to the Inmate Grievance and Request program.

101.     This misinformation is a clear example of the City and Policy-making Defendants' failure to train DOC officers, staff and employees.  Such failures make it possible for subordinate officers to violate and cover-up their unlawful conduct with impunity.  This, amongst other conduct by *all* Defendants, violated Mr. Alli's constitutional rights.

102.     When Mr. Alli was finally examined and diagnosed, he was nonetheless denied follow-up care, treatment and medication which further aggravated his injuries.

103.     Mr. Alli's medical records confirm that the vision in his left eye has been severely compromised as a result of the Assault.     Medical doctors who have examined Mr. Alli have detected *trauma, iridodialysis, cataract, fluid and scarring* in Mr. Alli's left eye.

104.     When finally examined by a specialist, Mr. Alli was prescribed eye drops and pain medications, which prison officials and prison doctors denied him.     Mr. Alli, to date, is awaiting surgery for his eye.

105.     These records also confirm that Mr. Alli has suffered hearing loss in his left ear and requires use of a hearing aid.

106.     Mr. Alli was fitted for a hearing aid but has not yet received one. A medical report dated February 2, 2012 noted that Mr. Alli had been " *waiting for a hearing aid for 4-5 months.*" Mr. Alli has not received a hearing aid to date.

**The Confinement Conditions imposed on Mr. Alli
Were Punitive and Contrary to Constitutional Mandates**

107.     In the weeks following the Assault, Mr. Alli was forced to endure harsh and humiliating conditions antithetical to basic standards of human dignity. These conditions violated his Constitutional rights, New York law, BOC Minimum Standards and DOC policies and directives.

108.     Defendants-Assaulting Officers and Defendants-Uniformed and Supervisory Officers conspired to create these conditions for no legitimate non-punitive penological purpose.

109.     Upon information and belief, these Defendants intended to punish Mr. Alli for filing prior grievances and to prevent Mr. Alli from filing grievances regarding the conditions of his confinement at that time.

110.     During this period, Mr. Alli was placed in a cell covered in feces. Despite many requests, Mr. Alli was not given cleaning supplies, nor were cleaning personnel instructed to sterilize his cell. These deprivations are contrary to BOC Minimum Standards.

111.     Defendant Victor was the sanitation officer during the relevant period. It was directly within his purview to instruct maintenance personnel to sanitize or otherwise clean Mr. Alli's cell. Defendant Victor had no legitimate non-punitive penological purpose in failing to ensure compliance with BOC Minimum Standards in this regard.

112.    Mr. Alli's cell was also  extremely cold during this period because of the high levels of air condition   ing in  MA UII.    Defendants-Assaulting Officers and Defendants-Uniformed and Supervisory Officers knew that Mr. Alli did not have warm clothing in his cell.

113.    These officers observed that the only clothing Mr. Alli ha d in his cell at that time was a t-shirt and und   erwear.  Thes e officers m aliciously, and with  de liberate indifference, refused to provide Mr. Alli with blankets, sheets or warm clothing.

114.    Defendant Victor was  the linen exchange officer dur ing the relevant period.  It was thus directly within his pu  rview to provide Mr. A lli with clean and appropriate clothing. Defendant Victor had no legitim    ate non-punitive penological purpose in failing to ensure compliance with BOC Minimum Standards in this regard.

115.    As a resu lt, Mr. Alli was forced to s  leep *under* a naked m attress to keep warm . These deprivations are contrary to BOC Minimum Standards.

116.    A working toilet and sink in each cell is mandated by BOC Minimum Standards. Upon information and belief, Defendant Rohr inten  tionally turned off water  in Mr. Alli's cell. As a resu lt, Mr. Alli w as forced to  either ho ld his bowel move ments  or use a non-functional toilet.

117.    When Mr. Alli repo   rted these m atters to Def endants-Assaulting Of ficers an d Defendants-Uniformed and Supervisory Officers, he   was told to "dea  l with it," to   "have f un smelling his own feces," and that these condition s were his punishment for acting lik e a "dick," for "snitch[ing]" and for writing complaints.

118.    Defendants' comm ents in this regard illu  strate the punitive, ev il and retaliatory motive behind their despicable conduct.

119.    Mr. Alli was also denied phone usage.   Upon information and belief, Defendants did so for the purpose of preventing Mr. Alli from calling the Department of Investigation or his attorney.  Indeed, during this period, Defenda nts Steward-Bowden, Behari, Dixon, Phillips and Velez denied Mr. Alli's requests to call his counsel.

120.    During this  tim e, Mr. Alli com    plained of these conditions to Defendants Steward-Bowden, Beha ri, Bunton, Dixon, Dunbar,    Phillips, Rohr, and Velez who exhibited deliberate indifference and, in fact,  laughed and t eased Mr. Alli du ring their daily tours of th e housing area, and encouraged inmates to do the same.

121.    Mr. Alli was prohibited from   showering duri ng this p eriod, a res triction that is inconsistent with BOC Minimum Standards.

122.    Upon inform ation and belief, Defendants John Does 1 through 6 canvased GRVC during this period and fail    ed to docum ent, report, investigate, rem  edy or otherwise intervene in protection of Plaintiff's constitutional rights.

123.    Defendants-Assaulting Off icers an d Def endants-Uniformed and Sup   ervisory Officers had no leg  itimate non-punitiv e pen ological purpose for su  bjecting M r. Alli to these unconscionable conditions.

### Mr. Alli Reports Confinement Conditions to Policy-making Defendants

124.    On May 18, 2011, Mr. Alli wrote Defendant s Mulvey and /or Agro, Schriro and Simmons to provide a detailed report of the conditions to which he was being subjected.

125.    The letter s tates, in p art, "*I was plac ed in a cell with  feces on the walls, with no working toilet or sink due to officers turning of  [f] my water, no  personal property or sheets & blankets. . . . No cleaning materials were prov    ided to clea n feces even after complaining to officers.*"   The letter also noted that Mr. Alli was denied phone usage during this period.

126.    In a letter dated May 19, 2011 whi ch, upon inform ation and belief, was sent to Defendants Mulvey, Schriro and Simmons, Mr. Alli  wrote about being denied sheets, a blanket, phone usage, and the ability to use the toilet and sink.

127.    In addition, Mr. Alli stated th at he had inf ormed Def endants Behari, Steward-Bowden, Di xon, Rohr, Velez and other DOC personne  l, all of whom dem onstrated deliberate indifference to the substantial risk posed to Mr. Alli's health and safety by these conditions.

128.    On May 26, 2011, Mr.    Alli wrote a com  plaint to the GR  VC W arden. Upon information and belief, Defendant Agro had,     by that tim e, assum ed the position  of GRVC Warden.  The letter stated:

> I have wrote many grievances and have received no response.  [T]his is an appeal
> for the grievances I filed on May 12, 2011.  I also have wrote you ample times for
> the same incident on May 5, 2011, where I  was assaulted in my cell and the mini-
> clinic of GRVC.    **I'm being force  [d] to undergo unsanitary conditio  n[s] and
> being denied medical care.  Please help**.

129.    The W ilker Em ail, discussed at paragraph 95,       *supra*,   further infor med Defendants Finkle, Finkelman, Armstead and Wolf that Mr. Alli was being denied "*ample food*" and requested that these Defendants and the   other recipients ensure that Mr. Alli " *receive[] all meals each day and any other mandated services*."

130.    On June 8, 2011, Mr. Alli received a s     econd boiler-plate response from   the Director of Constituent Services, an employee w ithin the o ffice of Defendant Sch riro, advising him in general terms that "the issues described in [his] letter are currently being investigated."

131.    Mr. Alli wrote Defendant Schriro again on June 12, 2011 stating:

*I have not received a grievance log number [n]or ha[ve] any of my appeal steps . . . been
answer[ed].  Please help resolve this  matte r and remove me from these cruel conditions,
. . . discipline the officers w hom participated in these acti ons and the grievance staff and
committee for not answering my grievances including but not limited to my May 12, 2011
grievances.  Also keep me away from the following staff because they were trying to harm*

*me; Officer Dixon, Arkhurst, Victor, Alceu s, Rohr, Phillips, Bunto n and Captains Steward-Bowden, Beharri and Dunbar.*

132.    This letter was a cry for help and put Defendant Schriro on notice that Mr. Alli's health and safety were substantially at risk.

**Defendants' Conduct Egregiously**
**Violated DOC and BOC Policies & Directives**

      A.    Use of Force

133.    The Department has implemented Use of Force Directive No. 5006R (attached as "**Exhibit A**" hereto). Under this Directive, force is to be used only after all reasonable efforts to resolve a situation have failed.

134.    Correction officers and DOC staff are permitted to use force commensurate to the level of treat posed by the inmate at that time.

135.    This directive prohibits use of force as a m eans to *punish*, when an inm ate poses no threat, or when an inmate is not resisting staff.

136.    This directive m andates that "blows s hould not be struck if control holds, grasping" or other less harmful methods "would be adequate to restrain the inmate."

      B.    Health Care Minimum Standards

137.    The BOC has established m inimum standa rds pertaining to inm ate access to medical care. Medical care within DOC facilities is to be maintained "at a level consistent with legal requ irements, accepted professional stan dards and sound professional jud gment and practice." (attached as "**Exhibit B**" hereto)

138.    These stand ards con template (i) the provi sion of prom pt me dical tr eatment and follow-up care as well as emergency services; (ii) the regular training and development of health

care personnel and correctional staff as appropriate to their role in the health care delivery system; and (iii) an ongoing review and assessment of the quality of care provided to inmates.

139.    In addition, these standards expressly prohibit DOC staff, officers and personnel from delaying, denying or otherwise interfering with an inmate's access to medical attention. DOC officers with knowledge of an inmate's need for medical care are to report such need promptly.

140.    In addition, all decisions regarding medical attention are to be made by health care personnel *only* and sick calls are to be available to inmates every day within 24 hours of a request for care.

141.    To the extent appropriate treatment for an inmate's injuries is not available within the correctional facility, these standards mandate that specialty services be provided to inmates *in the time frames specified* by referring medical personnel.

       C.     Minimum Standards Governing Conditions of Confinement

142.    The BOC has established Minimum Standards pertaining to inmate conditions of confinement that apply to all inmates.  (attached as "**Exhibit C**" hereto) These standards prohibit the imposition of restrictions on inmates that do not serve a legitimate non-punitive penological purpose.

143.    These standards afford inmates the right to shower daily, and require that all inmates be given personal health items, including soap, toothbrushes and powder (a substitute for toothpaste), towels and toilet paper.

144.    These standards mandate that inmates be given adequate bedding, which includes one pillow and pillow case, two sheets, one mattress, a mattress cover and "*sufficient blankets to provide comfort and warmth*." (emphasis added)

145.     These standards mandate the "regular cleaning of all housing areas including *cells*, tiers, dayrooms, and windows" and contemplate that inmates are supplied with brooms and mops, appropriate cleaning substances and disinfectants, and other materials sufficient to properly clean and maintain housing areas. (emphasis added)

146.     These standards govern inmate clothing and require that inmates be provided with clean clothes every four days.  All named-Defendants were required to adhere to and/or ensure compliance with these standards.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

147.     Pursuant to Directive N o. 3376, Inm ate allegations of physical assault are *not* subject to the Inm ate Grievance and Request  program.  Nonetheless, Mr. Alli has exhausted administrative remedies with respect to all claims raised herein.

148.     On May 27, 2011, Plaintiff se rved a grievance on the  GRVC grievance clerk in which he complained of all of the conduct at issue herein.   The letter read, in pertinent part:

> *On May 5th I was assaulted by officers.  On May 8th, I was placed in a cell with feces on the walls, no working sink or toilet . . . no personal property, phone usage or blankets. Despite numerous complaints on all the above, no changes were made.*

149.     On June 1,  2011, Mr.  Alli m ailed a lett er to the Cen  tral Office Review Committee which noted, in pertinent part, " *I was assaulted on May 5, 2011 in my cell and the mini clinic resulting [in] multiple injuries.  I have been deprived medical care and forced to live under foul conditions*."

150.     On June 28, 2011, Mr. Alli wrote a letter      to th e GRVC Gr ievance Superviso r which advised that as a result of the Assault, Mr. Alli was experiencing "*pains in [his] head and eyes*," reduced vision, deafness and severe back pains.

151.    In addition, multiple complaints documenting the conduct at issue herein were made to Defendants Agro, Armstead, Finkle, Finkelman, Mulvey, Schriro, Simmons and Wolf, both by Mr. Alli and the Legal Aid Society acting on his behalf.

152.    In any event, Plaintiff's efforts to strictly comply with grievance procedures were inhibited by the conduct of DOC staff. Despite numerous requests for the relevant grievance directives, DOC staff refused to provide them to Mr. Alli.

153.    Upon information and belief, DOC staff on more than one occasion have confiscated copies of the grievance directives found in the possession of inmates.

154.    Due to the complexity of the grievance process, Mr. Alli required assistance to fully understand the process required for administrative exhaustion. However, DOC staff were unable and/or unwilling to explain the necessary steps of exhaustion.

155.    In addition, the MAUII area in which Plaintiff was confined was not equipped with a grievance box, nor did grievance officers regularly canvas the MAU II unit. Thus, any failure by Mr. Alli to exhaust administrative remedies should be excused.

## CLAIMS FOR RELIEF

### FIRST CLAIM: CLAIM FOR FOURTEENTH AMENDMENT VIOLATIONS
(Against Assaulting Officers for Use of Excessive Force Pursuant to § 1983)

156.    Plaintiff repeats, re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein with the same force and effect.

157.    Defendants Steward-Bowden, Alceus, Arkhurst, Dixon and Victor, by their conduct, willfully violated Mr. Alli's clearly established rights by intentionally and maliciously subjecting him to excessive force for no legitimate non-punitive penological purpose.

158.    These Defendants acted in clear viola    tion of well-settled law, of which a reasonable person should have been aware, an    d are not entitled to a     good faith or qualified immunity defense.

159.    As a proxim ate result of such conduct,    Mr. A lli suffered severe and perm  anent injuries, including hearing loss, reduced vision, other physical injuries and emotional harm.

160.    Defendants' conduct demonstrated deliberat e indifference to the substantial risk such excessive force posed to Mr. Alli's hea lth and safety.  Mr. Alli is e ntitled to da mages for this conduct.

### SECOND CLAIM: CLAIM FOR FOURTEENTH AMENDMENT VIOLATIONS
(Against Defendants-Assaulting Officers and Defendants Behari, Bunton, Dunbar, Phillips, Rohr, Velez, John Does 1 through 6 and Correctional Health Services/Prison Health Services for Deliberate Indifference to Medical Needs Pursuant to § 1983)

161.    Plaintiff repeats, re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein with the same force and effect.

162.    Defendants Steward-Bowden, Alceus, Ar khurst, Dixon, and Victor intentionally delayed, po stponed and /or in terfered with Mr. A lli's need for m edical atten tion following th e Assault.

163.    These Assaulting  Officers then co    nspired with Defendants Behari, Bunton, Dunbar, Phillips, Rohr and Velez to prevent Mr. Alli from  receiving necessary, appropriate and prompt medical care.

164.    Despite Mr. Alli's num erous complaints to each of these officers and Joh n Does 1-6, these Defendants delayed, denied, postponed, or otherwise interfered with Mr. Alli's access to medical care for no legitimate non-punitive penological purpose.

165.    These Defendants acted in clear viola    tion of well-settled law, of which a reasonable person should have been aware, an    d are not entitled to a    good faith or qualified immunity defense.

166.    By their conduct, these Defendants dem   onstrated deliberate indifference to the substantial risk posed to Mr. Alli's health and safety as a result of his injuries. As a consequence thereof,  Mr. Alli sustained permanent loss of hearing, vision and other bodily injuries as well as emotional harm.

167.    Mr. Alli is entitled to damages for this conduct.

### THIRD CLAIM: CLAIM FOR RELIEF FOURTEENTH AMENDMENT VIOLATIONS
(Against Defendants Banks and Caputo
for Violation of Due Process Pursuant to § 1983)

168.    Plaintiff repeats, re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein with the same force and effect.

169.    Pre-trial detainees are entitled to certain procedural protections whenever further loss of liberty can result from disciplinary action.

170.    Under the Fourteenth Amendment, an inmate is entitled to (i) advanced notice of the charges against him; (ii) a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; and (iii) a fair and impartial hearing officer, amongst other things.

171.    This standard is supplemented by DOC Directive 6500-R, which establishes the procedure for processing pre-hearing detention and inmate disciplinary infractions.

172.    Defendant Caputo violated DOC due process procedures as well as Mr. Alli's constitutional rights by, amongst other things:

(i)     failing to dismiss the Infraction despite the fact that Defendant Steward-Bowden, who participated in the Assault, was also involved in the investigation;

(ii)    failing to dismiss the Infraction on due process grounds given that the investigation was not initiated within 24 hours of the Incident;

(iii)   failing to call witnesses with knowledge of the Incident;

(iv)    failing to credit Mr. Alli's account of the Incident;

(v)     failing to take, review and preserve crucial evidence, including witness accounts, videotape, medical records and physical evidence;

(vi)    turning a blind eye to falsified reports submitted by Assaulting Officers;

(vii)   turning a blind eye to inconsistencies in material facts stated in the investigative and officers' reports;

(viii)  relying on facts outside of the evidentiary record;

(ix)    confining Plaintiff to 100 days of disciplinary segregation;

(x)     failing to credit said days upon the outcome of the Article 78 proceeding; and

(xi)    failing to consider Plaintiff's mental health status during the hearing.

173.    Defendant Banks violated DOC due process Directives and Mr. Alli's constitutional rights by, amongst other things, (i) failing to interview witnesses with knowledge of the Incident; (ii) failing to commence an investigation within 24 hours of the Incident; and (iii) conducting a biased investigation.

174.    Defendants Banks and Caputo acted in clear violation of well-settled law, of which a reasonable person should have been aware, and are not entitled to a good faith or qualified immunity defense.

175.    These deficiencies led to Mr. Alli's disciplinary confinement and loss of liberty without due process of law in violation of Mr. Alli's clearly established rights.

176.    Mr. Alli is entitled to damages for this conduct.

### FOURTH CLAIM: CLAIM FOR RELIEF FOURTEENTH AMENDMENT VIOLATIONS
(Against Policy-making Defendants for Due Process Violations Pursuant to § 1983)

177.    Plaintiff repeats, re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein with the same force and effect.

178.    Policy-making Defendants have, for some time, been on actual notice of the inadequacy of hearings offered to inmates within the GRVC and other DOC facilities.

179.    Former and current lawsuits made plain that Hearing and Investigating Officers frequently fail to credit inmate accounts, fail to take, review and preserve crucial evidence, including witness accounts, videotapes, medical records and physical evidence.

180.    Policy-making Defendants' failure to take measures to correct these behaviors created an environment where subordinates were and continue to be able to commit due process and other violations with impunity.

181.    Such failure to act constituted deliberate indifference to the rampant due process violations within DOC facilities, including GRVC, in connection with the administration of inmate infractions and disciplinary procedures.

182.    In addition, Policy-making Defendants affirmed Defendant Caputo's Hearing determination by failing to take action even after the Infraction was expunged by the New York Supreme Court.

183.    In so doing, these Defendants directly participated in the liberty deprivations imposed upon Mr. Alli and violated Mr. Alli's clearly established rights.

184.     Policy-making Defendants acted in clear violation of well-settled law, of which a

reasonable person should have been aware, an   d are not entitled to    a good faith defense or

qualified immunity defense.

185.     Mr. Alli is entitled to damages for this conduct.

**FIFTH CLAIM: CLAIM FOR FOURTEENTH AMENDMENT VIOLATIONS**
(Against Defendants Assaulting Officers, Defendants Uniformed and Supervisory
Officers, Defendants Agro, Armstead, Finkle, Finkelman, Mulvey, Potler, Schriro, Simmons and
Wolf, and Defendants John Does 1 through 6 for Constitutionally Inadequate Conditions of
Confinement Pursuant to § 1983)

186.     Plaintiff repeats, re-alleges and incorporates by reference the Paragraphs above as

if fully set forth herein with the same force and effect.

187.     The conditions of Plaintiff's confinement following the Assault and throughout

the 100 day disciplinary confinement was objectively and subjectively serious and an affront to

the basic dignities afforded to inmates under the Constitution and New York law.

188.     Following the Assault and throughout the disciplinary period, Mr. Alli was

deprived of adequate food, clothing, medical care, a working toilet and sink; he was forced to

hold his feces or use a non-working toilet; he was deprived of cleaning items and personal

property mandated by BOC Minimum Standards; and forced to occupy a cell covered in feces.

189.     Assaulting Officers conspired with Defendants Uniformed and Supervisory

Officers to impose these conditions in an attempt to punish Mr. Alli for previous grievances and

what they perceived as prior misbehavior.

190.     Defendants John Does 1 through 6 were responsible for regularly canvasing all

DOC facilities during this time period, including GRVC and MAUII and were required, but

failed to, record and investigate Mr. Alli's complaints regarding the heinous conditions to which

he was being subjected.

191.    In addition, Defendants Agro, Armstead, Finkle, Finkelman, Mulvey, Potler, Schriro, Simmons and Wolf were aware of the conditions imposed on Mr. Alli and failed to take corrective action.

192.    The multiple complaints made by Mr. Alli to Defendants Agro, Armstead, Finkle, Finkelman, Mulvey, Schriro, Simmons and Wolf provided sufficient information from which to draw an inference that Mr. Alli's health and safety were substantially at risk as a result of these conditions and Mr. Alli's clearly established rights.

193.    These Defendants acted in clear viola      tion of well-settled law, of which a reasonable person should have been aware, and t  hus are not entitled to a good faith defense or qualified immunity defense.

194.    Mr. Alli is entitled to damages for this conduct.

### SIXTH CLAIM: CLAIM FOR FIRST & FOURTEENTH AMENDMENT VIOLATIONS
(Against Assaulting Officers and Defendants Uniformed and Supervisory Officers for Unlawful Retaliation Pursuant to § 1983)

195.    Plaintiff repeats, re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein with the same force and effect.

196.    Plaintiff's First Amendment right to complain and to file grievances was chilled by the conduct described herein.

197.    As demonstrated by their comments during the attack, Assaulting Officers were motivated in part by retaliation against Mr. Alli for reporting the prior misconduct of DOC officers.

198.    Defendants Behari, Bunton, Dunbar, Phillips, Rohr and Velez thereafter caused further First Amendment deprivations by preventing Mr. Alli from making calls to family

members, his attorney and investigative agencies to report the heinous conditions he was forced to endure.

199.    In addition, during Mr. Alli's disciplinary segregation, DOC staff and employees restricted Mr. Alli's access to grievance procedures.

200.    The aforementioned conduct would prevent a person of ordinary firmness, and did prevent Mr. Alli, from exercising clearly established rights guaranteed by the First Amendment.

201.    These Defendants acted in clear violation of well-settled law, of which a reasonable person should have been aware, and are not entitled to a good faith defense or qualified immunity defense.

202.    Mr. Alli is entitled to damages for this conduct.

**SEVENTH CLAIM: CLAIM FOR FOURTEENTH AMENDMENT VIOLATIONS**
(Municipal & Supervisory Liability Pursuant to § 1983 for All Claims)

203.    Plaintiff repeats, re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein with the same force and effect.

204.    Defendants Agro, Armstead, Davis, Finkle, Finkelman, Hourihane, Lemon, Mulvey, Potler, Regan, Schriro, Scott, Simmons and Wolf are municipal agents "whose acts may be fairly said to be those of the municipality."

205.    These Defendants failed to intervene to protect Plaintiff's constitutional rights from infringement, were grossly negligent in supervising subordinates who committed the wrongful acts, and/or aided and abetted and/or conspired to deprive, participated in depriving, and/or did deprive Plaintiff of certain constitutionally protected rights including, but not limited to:

(i)    the right not to be subjected to excessive force;

    (ii)    the right to a fair inve    stigation and non-biased    disciplinary hearing in connection with disciplinary infractions and offenses;

    (iii)    the right to conditions of confinem   ent comm ensurate to BO C Minim um Standards and the United States Constitution;

    (iv)    the righ t to m edical care commensurate to BOC Health Care Min    imum Standards and the United States Constitution; and

    (v)    the right to com    plain about and/or   grieve all m    atters involving the misconduct of DOC uniformed officers and officials.

206.    The City and Policy-m aking Defendants  knew or should have known that their employees, agents, and subordinates had the propensity to engage in the illegal and wrongful acts described herein.

207.    Indeed, upon inform   ation and belief,     Defendants Arkhurst,  Behari, Bunton, Dixon, Dunbar,  Philips,  Steward-Bowden, Vel    ez and Victor, have al    l been implicated in excessive force incidents involving inmates housed in GRVC or other DOC facilities.

208.    In addition, the City and Policy-making Defendants have been aware for some time (from lawsuits, notices of claim, and complaints from inmates, their family members, friends, press reports and internal investigations) that their employees, subordinates and agents routinely engage in incidents of excessive force followed by concerted efforts to cover up wrongdoing.

209.    The City and Supervisory Defendants created, fostered, perpetuated and promoted unconstitutional customs, practices and policies by, amongst other things:

    (i)    failing to protect and supervise deta    inees within the care, custody and control of the DOC;

    (ii)    failing to equip unm  onitored areas, su ch as th e GRVC m ini-clinic with cameras and /or o ther devices to red  uce the incidence of physical assault on inmates;

    (iii)    failing to implem  ent a nd develop polic  ies and  procedures  sufficient to safeguard the health, s   afety and welf  are of  detain ees within th  e ca re custody and control of the DOC;

(iv)    failing to e nforce exis ting ru les d esigned to sa feguard the  health, saf ety and welfare of detainees within the care, custody and control of the DOC;

(v)     failing to discipline and/or prosecu   te correction officers for em   ploying excessive force against detainees in     their care, custody and control or engaging in other misconduct under color of state law;

(vi)    failing to train and instruct subordina   te em ployees regarding the inm ate grievance p rocess and  the pro  tections guaranteed to    all inm ates a nd detainees subject to disciplinary infractions and/or hearings;

(vii)   failing to monitor the conduct of s   ubordinate em ployees to determine whether DOC directives and official    polices were bei ng co mplied with ; and

(viii)  failing to investigate and   penetrate the code of   silence amongst officers participating in wrongful conduct.

210.    These Defendants acted in clear viola      tion of well-settled law, of which a reasonable person should have been aware, an   d are not entitled to     a good faith defense or qualified immunity defense.

211.    These failures facilitated, promoted and exacerbated the unconstitutional practices which proximately caused the injuries alleged herein and violated Plaintiff's clearly established rights.

212.    Plaintiff is entitled to damages for this conduct.

### EIGHTH CLAIM:  CLAIM FOR ASSAULT & BATTERY
(Against Assaulting Officers)

213.    Plaintiff repeats, re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein with the same force and effect.

214.    At all times alleged herein, Defendants Steward-Bowden, Alceus, Arkhurst, Dixon and Victor were acting within the scope of their employment and under color of state law.

215.     Upon approaching and entering Mr. Alli's cell, Defendants Steward-Bowden, Alceus, Arkhurst, Dixon and Victor placed Mr. Alli in apprehension of immediate harm and/or offensive touching.

216.     These Defendants thereafter engaged in and subjected Plaintiff to immediate harmful and/or offensive touching, giving rise to an unlawful battery.

217.     These Defendants acted in clear viola     tion of well-settled law, of which a reasonable person should have been aware, an     d are not entitled to     a good faith defense or qualified immunity defense.

218.     As a proximate cause of such conduct, Mr. Alli sustained permanent loss of vision, hearing, other bodily injuries and emotional harm.

219.     This conduct violated Mr. Alli's clearly established rights and he is entitled to damages for such conduct.

### NINTH CLAIM: CLAIM FOR NEGLIGENCE
(Against all Defendants)

220.     Plaintiff repeats, re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein with the same force and effect.

221.     At all times alleged herein, Defendants acted under color of state law in their capacity of DOC officers, employees, staff, and/or agents and were required to act with due care and in conformity with DOC standards and directives and with the United States Constitution.

222.     Assaulting Officers as well as Defendants Behari, Bunton, Dunbar, Phillips, Rohr and Velez breached this duty by causing Mr. Alli's bodily injuries and/or deliberately denying, delaying or otherwise interfering with his access to appropriate medical care.

223.     Policy-making Defendants Agro, Armstead, Davis, Finkle, Finkelman, Hourihane, Lemon, Mulvey, Potler, Regan, Schriro, Simmons and Wolf breached this duty by

failing to monitor, supervise, train, remove and discipline subordinate officers who were predisposed to committing the acts complained of herein.

224.    These Defendants acted in clear viola      tion of well-settled law, of which a reasonable person should have been aware, an    d are not entitled to    a good faith defense or qualified immunity defense.

225.    The negligence of these Defendants was the proximate cause of the injuries sustained by Mr. Alli and violated his clearly established rights.

226.    Plaintiff is entitled to damages for this conduct.

## TENTH CLAIM: CLAIM FOR NEGLIGENT HIRING AND SUPERVISION
### (Against Policy-making Defendants and the City)

227.    Plaintiff repeats, re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein with the same force and effect.

228.    At all times alleged herein, Defendants acted under color of state law in their capacity of DOC high-ranking officials and were required to act with due care in the hiring, monitoring, appointment, training and supervision of all DOC personnel, including the defendants referenced herein.

229.     The City and Policy-making Defendants failed to exercise due care in the hiring, monitoring, appointment, training and supervision of the employees within their charge, including Defendants Assaulting Officers and Defendants-Uniformed and Supervisory Officers.

230.    The City and Policy-making Defendants knew or should have known that Defendants Steward-Bowden, Alceus, Arkhurst, Behari, Dixon, Dunbar, Phillips, Velez and Victor were unfit to serve their respective roles and had a propensity to engage in violent, unprovoked conduct against inmates and detainees.

231.   The negligence of Defendant City and Policy-making Defendants proximately caused Plaintiff's injuries and violated Mr. Alli's clearly established rights.

232.   These Defendants acted in clear viola     tion of well-settled law, of which a reasonable person should have been aware, an     d are not entitled to     a good faith defense or qualified immunity defense.

233.   Plaintiff is entitled to damages for this conduct.

## ELEVENTH CLAIM: CLAIM FOR CONSPIRACY
### (Against Defendants Assaulting Officers, Defendants Banks, Behari, Bunton, Caputo, Dunbar, Phillips, Rohr and Velez)

234.   Plaintiff repeats, re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein with the same force and effect.

235.   At all times alleged herein, Defendants acted under color of state law in their capacity of DOC officers, employees, staff, and/or agents.

236.   Defendants Steward-Bowden, Alceus, Arkhurst, Banks, Behari, Bunton, Caputo, Dixon, Dunbar, Phillips, Rohr, Velez and Victor made an agreement to retaliate against Mr. Alli as punishment for filing grievances, complaining about officer misconduct and misbehavior during Steward-Bowden's tour.

237.   In furtherance of said agreement, these Defendants assaulted Mr. Alli, conducted a biased investigation and administrative hearing, denied Mr. Alli appropriate health care, and subjected him to heinous conditions of confinement.

238.   These Defendants acted in clear viola     tion of well-settled law, of which a reasonable person should have been aware, an     d are not entitled to     a good faith defense or qualified immunity defense.

239.    These actions proximately caused Mr. Alli's injuries and violated his clearly established rights.

240.    Mr. Alli is entitled to damages for this conduct.

### TWELFTH CLAIM: CLAIM FOR AIDING & ABETTING
(Against Defendants Banks, Caputo and Uniformed & Supervisory Officers)

241.    Plaintiff repeats, re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein with the same force and effect.

242.    At all times alleged herein, Defendants acted under color of state law in their capacity of DOC officers, employees, staff, and/or agents.

243.    Defendants Banks, Behari, Bunton, Caputo, Dunbar, Phillips, Rohr and Velez aided and abetted Assaulting Officers in subjecting Mr. Alli to excessive force by, amongst other things: (i) failing to carry out an adequate investigation; (ii) failing to provide a non-biased Hearing, (iii) failing to investigate and/or report Mr. Alli's allegations of excessive force; (iv) delaying, postponing or otherwise interfering with prompt medical care for injuries resulting from the Assault; and (v) preventing Mr. Alli from reporting the same by, amongst other things, denying him phone usage for no legitimate, non-punitive penological purpose.

244.    These Defendants shared the purpose of the principal Assaulting Officers, namely to punish, retaliate against and/or otherwise harm Mr. Alli in connection with prior complaints and grievances Mr. Alli filed against DOC officers and officials.

245.    These Defendants acted in clear viola    tion of well-settled law, of which a reasonable person should have been aware, an    d are not entitled to    a good faith defense or qualified immunity defense.

246.    This conduct violated Mr. Alli's clearly established rights and Plaintiff is entitled to damages for this conduct.

## THIRTEENTH CLAIM: CLAIM FOR VICARIOUS LIABILITY UNDER RESPONDEAT SUPERIOR
### (Against City and Policy-making Defendants)

247.     Plaintiff repeats, re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein with the same force and effect.

248.     At all times alleged herein, Defendants acted under color of state law in their capacity of DOC officers, employees, staff, and/or agents.

249.     The acts of Assaulting Officers and Uniformed and Supervisory Defendants was intentional, willful and tortious and committed within the scope of their DOC employment and in furtherance of the City's interests.

250.     These acts proximately caused Mr. Alli's injuries and violated Mr. Alli's clearly established rights.

251.     Plaintiff is entitled to damages for this conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby prays for relief and demands judgment in his favor against defendants, as follows:

(i)      Compensatory damages in an amount to be determined at trial;

(ii)     Punitive damages against each defendant, except the City of New York, in any amount to be determined a trial;

(iii)    Public discipline and sanctioning of Assaulting Officers

(iv)     Award of reasonable attorneys' fees, costs and disbursements of this action;

(v)      Award of Pre- and post-judgment interest, as permitted by law; and

(vi)     Granting such other and further relief as this Court deems just and proper.

43

## DEMAND FOR JURY TRIAL

252.  Plaintiff demands a trial by jury.

Dated:    New York, New York
          March 27, 2013                    WINSTON & STRAWN LLP

                                            By: _____
                                                Bianca M. Forde (bforde@winston.com)
                                                200 Park Avenue
                                                New York, New York 10166
                                                (212) 294-4733

                                                Attorney for Plaintiff
                                                *Umar Alli*