# Exhibit C

Chapter 1 of Title 40 of the Rules of the City of New York is amended to read as follows:

## CHAPTER 1
## CORRECTIONAL FACILITIES

**CONTENTS**

Section 1-01    Non-discriminatory Treatment ……………….............................
Section 1-02    Classification of Prisoners ........ .......... ......... ...................... .......
Section 1-03    Personal Hygiene..........................................................................
Section 1-04    Overcrowding ……………………………………………………………………
Section 1-05    Lock-In.......................................................................................
Section 1-06    Recreation .................... .......... .......... ......... ......... ........................
Section 1-07    Religion .... .................. .......... .......... ......... ......... .....................
Section 1-08    Access to Courts and Legal Services ………..............................
Section 1-09    Visiting...... .................. .......... .......... ......... ......... ...................
Section 1-10    Telephone Calls ......... .......... ......... ......... ........ ....................
Section 1-11    Correspondence.......... .......... ......... ......... ......... ...................
Section 1-12    Packages . .................. .......... ......... ......... ......... ...................
Section 1-13    Publications ................ .......... ......... ......... ......... ......... ..........
Section 1-14    Access to Media.......... .......... ......... ......... ......... .......... ..........
Section 1-15    Variances . .................. .......... ......... ......... ......... ..................

§ 1-01 **Non-discriminatory Treatment.**

(a)    *Policy.*

Prisoners shall not be subject to discriminatory treatment based upon race, religion, nationality, sex, sexual orientation, gender, disability, age or political belief.  The term "prisoner" means any person in the custody of the New York City Department of Correction ("the Department").  "Detainee" means any prisoner awaiting disposition of a criminal charge.  "Sentenced prisoner" means any prisoner serving a sentence of up to one year in Department custody.

(b)    *Equal protection.*

(1)    Prisoners shall be afforded equal opportunity in all decisions including, but not limited to, work and housing assignments, classification, and discipline.

(2)    Prisoners shall be afforded equal protection and equal opportunity in being considered for any available programs including, but not limited to educational, religious, vocational, recreational, or temporary release.

(3)    Each facility shall provide programs, cultural activities and foods suitable for those racial and ethnic groups with significant representation in the prisoner population, including Black and Hispanic prisoners.

1

(4)   Nothing contained in this section shall prevent the Department from using rational criteria for a particular program or opportunity.

(c)   *Hispanic prisoners and staff.*

(1)   Each facility shall have a sufficient number of employees and volunteers fluent in the Spanish language to assist Hispanic prisoners in understanding, and participating, in the various facility programs and activities, including use of the law library and parole applications.

(2)   Bilingual prisoners in each housing unit should be used to assist Spanish-speaking prisoners in the unit and in the law library.

(3)   Communications on any significant matter from correctional personnel to prisoners, including, but not limited to, orientation, legal research, facility programs, medical procedures, minimum standards and disciplinary code shall be in Spanish and English.

(4)   Communications on any significant matter from correctional personnel to outside individuals or organizations regularly involved with New York City prisoners shall be in Spanish and English.

(5)   Spanish-speaking prisoners shall be afforded opportunities to read publications and newspapers printed in Spanish, and to hear radio and television programs broadcast in Spanish. Facility libraries shall contain Spanish language books and materials.

(d)   *Different languages.*

(1)   Prisoners shall be permitted to communicate with other prisoners and with persons outside the facility by mail, telephone, or in person, in any language, and may read and receive written materials in any language.

(2)   Provisions shall be made by the Department to assist in assuring prompt access to translation services for non-English speaking prisoners.

(3)   Procedures shall be employed to ensure that non-English speaking prisoners understand all written and oral communications from facility staff members, including but not limited to, orientation procedures, health services procedures, facility rules and disciplinary proceedings.

## § 1-02  Classification of Prisoners.

(a)   *Policy.*

Consistent with the requirements of this section the Department shall employ a classification system for prisoners.

(b)     *Categories.*

      (1)     Prisoners serving sentence shall be housed separate and apart from prisoners awaiting trial or examination, except when housed in:

            (i)     punitive segregation;
            (ii)    medical housing areas;
            (iii)   mental health centers and mental observation cell housing areas;
            (iv)    close custody housing areas; and
            (v)     nursery.

      (2)     Within the categories set forth in paragraph (1), the following groupings shall be housed separate and apart:

            (i)     male adults, ages 19 and over;
            (ii)    male minors, ages 16 to 18 inclusive;
            (iii)   female adults, ages 19 and over;
            (iv)    female minors, ages 16 to 18 inclusive.

(c)     *Civil prisoners.*

      (1)     Prisoners who are not directly involved in the criminal process as detainees or serving sentence and are confined for other reasons including civil process, civil contempt or material witness, shall be housed separate and apart from other prisoners and, if possible, located in a different structure or wing. They must be afforded at least as many of the rights, privileges and opportunities available to other prisoners.

      (2)     Within this category, the following groupings shall be housed separate and apart:

            (i)     male adults, ages 19 and over;
            (ii)    male minors, ages 16 to 18 inclusive;
            (iii)   female adults, ages 19 and over;
            (iv)    female minors, ages 16 to 18 inclusive.

(d)     *Limited commingling.*
Nothing contained in this section shall prevent prisoners in different categories or groupings from being in the same area for a specific purpose, including, but not limited to, entertainment, classes, contact visits or medical necessity.

(e)     *Security classification.*

      (1)     The Department shall use a system of classification to group prisoners according to the minimum degree of surveillance and security required.

      (2)     The system of classification shall meet the following requirements:

(i)     It shall be in writing and shall specify the basic objectives, the classification categories, the variables and criteria used, the procedures used and the specific consequences to the prisoner of placement in each category.

(ii)    It shall include at least two classification categories.

(iii)   It shall provide for an initial classification upon entrance into the corrections system. Such classification shall take into account only relevant factual information about the prisoner, capable of verification.

(iv)    It shall provide for involvement of the prisoner at every stage with adequate due process.

(v)     Prisoners placed in the most restrictive security status shall only be denied those rights, privileges and opportunities that are directly related to their status and which cannot be provided to them at a different time or place than provided to other prisoners.

(vi)    It shall provide mechanisms for review of prisoners placed in the most restrictive security status at intervals not to exceed four weeks for detainees and eight weeks for sentenced prisoners.

## § 1-03  Personal Hygiene.

(a)    *Policy.*

Each facility shall provide for and maintain reasonable standards of prisoner personal hygiene.

(b)    *Showers.*

(1)    Showers with hot and cold water shall be made available to all prisoners daily. The hot water temperature norms of the American Public Health Association shall be followed.  Consistent with facility health requirements, prisoners may be required to shower periodically. The shower area shall be cleaned at least once each week.

(2)    Notwithstanding paragraph (1) of this subdivision, prisoners confined in punitive segregation may be denied daily access to showers for infraction convictions for misconduct on the way to, from or during a shower, as follows:  for a first offense, access to showers may be reduced to five days per week for two consecutive weeks; for subsequent convictions during the same punitive segregation confinement, as follows: for a second conviction, access to showers may be reduced to three days per week for up to three consecutive weeks; for a third conviction, to three days per week for up to four consecutive weeks; and for a fourth conviction, to three

days per week for the duration of the current punitive segregation confinement. The provisions of this paragraph (2) shall not apply to prisoners making court appearances, during times of hot weather when access to cool showers protects prisoners' health, and to female prisoners who are menstruating.

(c)    *Shaving.*

    (1)    All prisoners shall be permitted to shave daily.  Hot water sufficient to enable prisoners to shave with care and comfort shall be provided.  Upon request, necessary shaving items shall be provided at Department expense and shall be maintained in a safe and sanitary condition.

    (2)    Notwithstanding paragraph (1) of this subdivision, prisoners confined in punitive segregation may be denied access to daily shaves, except for court appearances, for infraction convictions for misconduct on the way to, from or during a shower, in accordance with the schedule in paragraph (b)(2) of this section.

(d)    *Haircuts.*

    (1)    Hair shall be cut by persons capable of using barber tools. Such persons include, but are not limited to:

        (i)      licensed barbers;
        (ii)     facility staff members; and
        (iii)    prisoners.

    (2)    Barber tools shall be maintained in a safe, sanitary condition.

(e)    *Hair styles.*

    (1)    Consistent with the requirements of this subdivision, prisoners shall be permitted to adopt hair styles, including facial hair styles, of any length.

        (i)      Prisoners assigned to work in areas where food is stored, prepared, served or otherwise handled may be required to wear a hair net or other head covering.

        (ii)     The Department may determine that certain work assignments constitute a safety hazard to those prisoners with long hair or beards. Prisoners unwilling or unable to conform to the safety requirements of such work assignment shall be assigned elsewhere.

        (iii)    Should examination of a prisoner's hair reveal the presence of vermin, medical treatment should be initiated immediately. The cutting of a prisoner's hair is permissible under these circumstances

pursuant to a physician's written order and under the direct supervision of the physician.

(2) When the growth or removal of a prisoner's hair, including facial hair, creates an identification problem, a new photograph may be taken of that prisoner.

(f) *Personal health care items.*

(1) Upon admission to a facility, all prisoners shall be provided at Department expense with an issue of personal health care items, including but not limited to:

(i)     soap;
(ii)    toothbrush;
(iii)   toothpaste or tooth powder;
(iv)    drinking cup;
(v)     toilet paper;
(vi)    towel; and
(vii)   aluminum or plastic mirror, unless this is permanently available in the housing area.

(2) In addition to the items listed in paragraph (1) of this subdivision, all women prisoners shall be provided at Department expense with necessary hygiene items.

(3) Towels shall be exchanged at least once per week at Department expense. All other personal health care items issued pursuant to paragraphs (1) and (2) of this subdivision shall be replenished or replaced as needed at Department expense.

(g) *Clothing.*

(1) Prisoners shall be entitled to wear clothing provided by the Department as needed.   Such clothing shall be laundered and repaired at Department expense and shall include, but is not limited to:

(i)     one shirt;
(ii)    one pair of pants;
(iii)   two sets of undergarments;
(iv)    two pairs of socks;
(v)     one pair of suitable footwear; and
(vi)    one sweater or sweatshirt to be issued during cold weather.

(2) The Department may require sentenced prisoners to wear facility clothing. Upon establishment and operation of clothing services described in paragraph (h)(2) of this section, the Department may require all prisoners to wear seasonally appropriate facility clothing, except that for trial appearances, prisoners may wear clothing items described in paragraph

(3) of this subdivision.  The facility clothing that is provided for detainees shall be readily distinguishable from that provided for sentenced prisoners. Facility clothing shall be provided, laundered and repaired at Department expense.

(3) Until the Department establishes and operates clothing services described in paragraph (h)(2) of this section, detainees shall be permitted to wear non-facility clothing.  Such clothing may include items:

  (i) worn by the prisoner upon admission to the facility; and
  (ii) received after admission from any source. This clothing, including shoes, may be new or used.
  (iii) Detainees shall be permitted to wear all items of clothing that are generally acceptable in public and that do not constitute a threat to the safety of a facility.

(4) Prisoners engaged in work assignment or outdoor recreation requiring special clothing shall be provided with such clothing at Department expense.

(5) Upon establishment and operation of clothing services described in paragraph (h)(2) of this section and requiring all prisoners to wear facility clothing, the Department shall provide to all prisoners upon admission at least the following:

  (i) two shirts;
  (ii) one pair of pants;
  (iii) four sets of undergarments;
  (iv) four pairs of socks;
  (v) one pair of suitable footwear; and
  (vi) one sweater or sweatshirt to be issued during cold weather.

(6) Upon requiring all prisoners to wear facility clothing, the Department shall provide prisoners with a clean exchange of such clothing every four days.

(h) *Clothing services.*

(1) Laundry service sufficient to provide prisoners with a clean change of personal or facility clothing at least twice per week shall be provided at Department expense.

(2) Prior to requiring detainees to wear facility clothing, the Department shall establish and operate:

  (i) laundry service sufficient to fulfill the requirements of paragraphs (g)(5) and (6) of this section at Department expense, and

     (ii)    secure storage facilities from which prisoners' personal clothing can be retrieved promptly and cleaned for trial court appearances, and retrieved promptly upon prisoners' discharge from custody.

(i)    *Bedding.*

    (1)    Upon admission to a facility, all prisoners shall be provided at Department expense with an issue of bedding, including but not limited to:

        (i)    two sheets;
        (ii)    one pillow;
        (iii)    one pillow case;
        (iv)    one mattress;
        (v)    one mattress cover; and
        (vi)    sufficient blankets to provide comfort and warmth.

    (2)    Prior to being issued, all bedding items shall be checked for damage and repaired or cleaned, if necessary.

    (3)    Pillowcases and sheets shall be cleaned at least once each week. Blankets shall be cleaned at least once every three months. Mattresses shall be cleaned at least once every six months.

    (4)    Mattresses must be constructed of fire retardant materials. Mattress covers must be constructed of materials both water resistant and easily sanitized.

    (5)    All items of clothing and bedding stored within the facility shall be maintained in a safe and sanitary manner.

(j)    *Housing areas.*

    (1)    Prisoners shall be provided at Department expense with a supply of brooms, mops, soap powder, disinfectant, and other materials sufficient to properly clean and maintain housing areas, except when contraindicated by medical staff.  Under such circumstance, the Department shall make other arrangements for cleaning these areas.

    (2)    The Department shall provide for regular cleaning of all housing areas, including cells, tiers, dayrooms, and windows, and for the extermination of rodents and vermin in all housing areas.

    (3)    All housing areas shall contain at least the following fixtures in sufficient supply to meet reasonable standards of prisoner personal hygiene:

        (i)    sink with hot and cold water;
        (ii)    flush toilet; and
        (iii)    shower with hot and cold water.

§ 1-04  **Overcrowding.**

(a)      *Policy.*

Prisoners shall not be housed in cells, rooms or dormitories unless  adequate space and furnishings are provided.

(b)      *Single occupancy.*

(1)      A cell or room designed or rated for single occupancy shall house only one prisoner.

(2)      Each single cell shall contain a flush toilet, a wash basin with drinking water, a single bed and a closeable storage container for personal property.

(3)      A single-cell housing area shall contain table or desk space for each occupant that is available for use at least 12 hours per day.

(c)      *Multiple occupancy.*

(1)      A multiple-occupancy area shall contain for each occupant a single bed, a closeable storage container for personal property, and a table or desk space that is available for use at least 12 hours per day.

(2)      Multiple-occupancy areas shall provide a minimum of 60 square feet of floor space per person in the sleeping area.

(3)      A multiple-occupancy area shall provide a minimum of one operable toilet and shower for every 8 prisoners and one operable sink for every 10 prisoners. Toilets shall be accessible for use without staff assistance 24 hours per day.

(4)      A multiple-occupancy area shall provide a dayroom space that is physically and acoustically separate from but immediately adjacent and accessible to the sleeping area, except for cells designed or rated for two or more occupants, opened on or prior to January 1, 2000.

(5)      A multiple occupancy area shall house no more than:

(i)      50 Detainees

(ii)     60 Sentenced Prisoners.  This subparagraph shall be applicable to all multi-occupancy areas opened after July 1, 1985.

9

§ 1-05  **Lock-in.**

(a)    *Policy.*

The time spent by prisoners confined to their cells should be kept to a minimum and required only when necessary for the safety and security of the facility.  The provisions of this section are inapplicable to prisoners confined in punitive segregation or prisoners confined for medical reasons in the contagious disease units.

(b)    *Involuntary lock-in.*

No prisoner shall be required to remain confined to his or her cell except for the following purposes:

(1)    At night for count or sleep, not to exceed eight hours in any 24-hour period;

(2)    During the day for count or required facility business that can only be carried out while prisoners are locked in, not to exceed two hours in any 24-hour period.  This time may be extended if necessary to complete an off count.

(c)    *Optional lock-in.*

(1)    Prisoners shall have the option of being locked in their cells during lock-out periods. Prisoners choosing to lock in at the beginning of a lock-out period of two hours or more shall be locked out upon request after one-half of the period. At this time, prisoners who have been locked out shall be locked in upon request.

(2)    The Department may deny optional lock-in to a prisoner in mental observation status if a psychiatrist or psychologist determines in writing that optional lock-in poses a serious threat to the safety of that prisoner. A decision to deny optional lock-in must be reviewed every ten days, including a written statement of findings, by a psychiatrist or psychologist. Decisions made by a psychiatrist or psychologist pursuant to this subdivision must be based on personal consultation with the prisoner.

(d)    *Schedule.*

Each facility shall maintain and distribute to all prisoners or post in each housing area its lock-out schedule, including the time during each lock-out period when prisoners may exercise the options provided by paragraph (c)(1) of this subdivision.

§ 1-06  **Recreation.**

(a)     *Policy.*

Recreation is essential to good health and contributes to reducing tensions within a facility.  Prisoners shall be provided with adequate indoor and outdoor recreational opportunities.

(b)     *Recreation areas.*

Indoor and outdoor recreation areas of sufficient size to meet the requirements of this section shall be established and maintained by each facility. An outdoor recreation area must allow for direct access to sunlight and air.

(c)     *Recreation schedule.*

Recreation periods shall be at least one hour; only time spent at the recreation area shall count toward the hour. Recreation shall be available seven days per week in the outdoor recreation area, except in inclement weather when the indoor recreation area shall be used.

(d)     *Recreation equipment.*

(1)     The Department shall make available to prisoners an adequate amount of equipment during the recreation period.

(2)     Upon request each facility shall provide prisoners with appropriate outer garments in satisfactory condition, including coat, hat, and gloves, when they participate in outdoor recreation during cold or wet weather conditions.

(e)     *Recreation within housing area.*

(1)     Prisoners shall be permitted to engage in recreation activities within cell corridors and tiers, dayrooms and individual housing units. Such recreation may include but is not limited to:

(i)     table games;
(ii)    exercise programs; and
(iii)   arts and crafts activities.

(2)     Recreation taking place within cell corridors and tiers, dayrooms and individual housing units shall supplement, but not fulfill, the requirements of subdivision (c) of this section.

(f)     *Recreation for prisoners in the contagious disease units.*

The Department shall not be required to provide an indoor recreation area for

use during inclement weather by prisoners confined for medical reasons in the contagious disease units.

(g)  *Recreation for prisoners in segregation.*

Prisoners confined in close custody or punitive segregation shall be permitted recreation in accordance with the provisions of subdivision (c) of this section.

(h)  *Limitation on access to recreation.*

A prisoner's access to recreation may be denied for up to five days only upon conviction of an infraction for misconduct on the way to, from or during recreation.


§  1-07  **Religion.**

(a)  *Policy.*

Prisoners have an unrestricted right to hold any religious belief, and to be a member of any religious group or organization, as well as to refrain from the exercise of any religious beliefs.  A prisoner may change his or her religious affiliation.

(b)  *Exercise of religious beliefs.*

(1)  Prisoners are entitled to exercise their religious beliefs in any manner that does not constitute a clear and present danger to the safety or security of a facility.

(2)  No employee or agent of the Department or of any voluntary program shall be permitted to proselytize or seek to convert any prisoner, nor shall any prisoner be compelled to exercise or be dissuaded from exercising any religious belief.

(3)  Equal status and protection shall be afforded all prisoners in the exercise of their religious beliefs except when such exercise is unduly disruptive of facility routine.

(c)  *Congregate religious activities.*

(1)  Consistent with the requirements of subdivision (a) of this section, all prisoners shall be permitted to congregate for the purpose of religious worship and other religious activities, except for prisoners confined for medical reasons in the contagious disease units.

(2)  Each facility shall provide all prisoners access to an appropriate area for congregate religious worship and other religious activities. Consistent with the requirements of paragraph (b)(1) of this section, this area shall be

made available to prisoners in accordance with the practice of their religion.

(d)     *Religious advisors.*

    (1)    As used in this section, the term "religious advisor" means a person who has received endorsement from the relevant religious authority.

    (2)    Religious advisors shall be permitted to conduct congregate religious activities permitted pursuant to subdivision (c) of this section. When no religious advisor is available, a member of a prisoner religious group may be permitted to conduct congregate religious activities.

    (3)    Consistent with the requirements of paragraph (b)(1) of this section, prisoners shall be permitted confidential consultation with their religious advisors during lock-out periods.

(e)     *Celebration of religious holidays or festivals.*

Consistent with the requirements of paragraph (b)(1) of this section, prisoners shall be permitted to celebrate religious holidays or festivals on an individual or congregate basis.

(f)     *Religious dietary laws.*

Prisoners are entitled to the reasonable observance of dietary laws or fasts established by their religion. Each facility shall provide prisoners with food items sufficient to meet such religious dietary laws.

(g)     *Religious articles.*

Consistent with the requirements of paragraph (b)(1) of this section, prisoners shall be entitled to wear and to possess religious medals or other religious articles, including clothing and hats.

(h)     *Exercise of religious beliefs by prisoners in segregation.*

    (1)    Prisoners confined in administrative or punitive segregation shall not be prohibited from exercising their religious beliefs, including the opportunities provided by subdivisions (d) through (g) of this section.

    (2)    Congregate religious activities by prisoners in close custody or punitive segregation shall be provided for by permitting such prisoners to attend congregate religious activities with appropriate security either with each other or with other prisoners.

(i)     *Recognition of a religious group or organization.*

    (1)    A list shall be maintained of all religious groups and organizations

recognized by the Department. This list shall be in Spanish and English, and shall be distributed to all incoming prisoners or posted in each housing area.

(2)   Each facility shall maintain a list of the religious advisor, if any, for each religious group and organization, and the time and place for the congregate service of each religion. This list shall be in Spanish and English, and shall be distributed to all incoming prisoners or posted in each housing area.

(3)   Prisoner requests to exercise the beliefs of a religious group or organization not previously recognized shall be made to the Department.

(4)   In determining requests made pursuant to paragraph (3) of this subdivision, the following factors among others shall be considered as indicating a religious foundation for the belief:

   (i)   whether there is substantial literature supporting the belief as related to religious principle;

   (ii)   whether there is formal, organized worship by a recognizable and cohesive group sharing the belief;

   (iii)   whether there is an informal association of persons who share common ethical, moral, or intellectual views supporting the belief; or

   (iv)   whether the belief is deeply and sincerely held by the prisoner.

(5)   In determining requests made pursuant to paragraph (3) of this subdivision, the following factors shall not be considered as indicating a lack of religious foundation for the belief:

   (i)   the belief is held by a small number of individuals;

   (ii)   the belief is of recent origin;

   (iii)   the belief is not based on the concept of a Supreme Being or its equivalent; or

   (iv)   the belief is unpopular or controversial.

(6)   In determining requests made pursuant to paragraph (3) of this subdivision, prisoners shall be permitted to present evidence indicating a religious foundation for the belief.

(7)   The procedure outlined in paragraphs (1) and (3) of this subdivision shall apply when a prisoner request made pursuant to paragraph (i)(3) of this subdivision is denied.

(j)     *Limitations on the exercise of religious beliefs.*

    (1)     Any determination to limit the exercise of the religious beliefs of any prisoner shall be made in writing, and shall state the specific facts and reasons underlying such determination. A copy of this determination, including the appeal procedure, shall be sent to the Board and to any person affected by the determination within 24 hours of the determination.

    (2)     This determination must be based on specific acts committed by the prisoner during the exercise of his or her religion that demonstrate a serious and immediate threat to the safety and security of the facility. Prior to any determination, the prisoner must be provided with written notification of the specific charges and the names and statements of the charging parties, and be afforded an opportunity to respond.

    (3)     Any person affected by a determination made pursuant to this subdivision may appeal such determination to the Board.

        (i)     The person affected by the determination shall give notice in writing to the Board and the Department of his or her intent to appeal the determination.

        (ii)     The Department and any person affected by the determination may submit to the Board for its consideration any relevant material in addition to the written determination.

        (iii)     The Board or its designee shall issue a written decision upon the appeal within 14 business days after receiving notice of the requested review.

## § 1-08  Access to Courts and Legal Services.

(a)     *Policy.*

Prisoners are entitled to access to courts, attorneys, legal assistants and legal materials.

(b)     *Judicial and administrative proceedings.*

    (1)     Prisoners shall not be restricted in their communications with courts or administrative agencies pertaining to either criminal or civil proceedings except pursuant to a court order.

    (2)     Timely transportation shall be provided to prisoners scheduled to appear before courts or administrative agencies. Vehicles used to transport prisoners must meet all applicable safety and inspection requirements and provide adequate ventilation, lighting and comfort.

(c)   *Access to counsel.*

    (1)   Prisoners shall not be restricted in their communication with attorneys. The fact that a prisoner is represented by one attorney shall not be grounds for preventing him or her from communicating with other attorneys. Any properly identified attorney may visit any prisoner with the prisoner's consent.

        (i)   An attorney may be required to present identification to a designated official at the central office of the Department in order to obtain a facility pass. This pass shall permit the attorney to visit any prisoner in the custody of the Department.

        (ii)   The Department only may require such identification as is normally possessed by an attorney.

    (2)   The Department may limit visits to any attorney of record, or an attorney with a court notice for prisoners undergoing examination for competency pursuant to court order.

    (3)   Visits between prisoners and attorneys shall be kept confidential and protected, in accordance with provisions of § 1-09.  Legal visits shall be permitted at least eight hours per day between 8 a.m. and 8 p.m. During business days, four of those hours shall be 8 a.m. to 10 a.m., and 6 p.m. to 8 p.m. The Department shall maintain and post the schedule of legal visiting hours at each facility.

    (4)   Mail between prisoners and attorneys shall not be delayed, read, or interfered with in any manner, except as provided in § 1-11.

    (5)   Telephone communications between prisoners and attorneys shall be kept confidential and protected, in accordance with the provisions of § 1-10.

(d)   *Access to co-defendants.*

Upon reasonable request, regular visits shall be permitted between a detainee and all of his or her co-defendants who consent to such visits. If any of the co-defendants are incarcerated, the Department may require that an attorney of record be present and teleconferencing shall be used, if available.

(e)   *Attorney assistants.*

    (1)   Law students, legal paraprofessionals, and other attorney assistants working under the supervision of an attorney representing a prisoner shall be permitted to communicate with prisoners by mail, telephone and personal visits, to the same extent and under the same conditions that the attorney may do so for the purpose of representing the prisoner. Law students, legal paraprofessionals and other attorney assistants working

under the supervision of an attorney contacted by a prisoner shall be permitted to communicate with that prisoner by mail, telephone, or personal visits to the same extent and under the same conditions that the attorney may do so.

(2)     An attorney assistant may be required to present a letter of identification from the attorney to a designated official at the central office of the Department in order to obtain a facility pass. A pass shall not be denied based upon any of the reasons listed in § 1-09 (h)(1).

(3)     The pass shall permit the assistant to perform the functions listed in subdivision (e) of this section. It may be revoked if specific acts committed by the legal assistant demonstrate his or her threat to the safety and security of a facility. This determination must be made pursuant to the procedural requirements of paragraphs (2), (4) and (5) of subdivision (h) of §1-09.

(f)     *Law libraries.*

Each facility shall maintain a properly equipped and staffed law library.

(1)     The law library shall be located in a separate area sufficiently free of noise and activity and with sufficient space and lighting to permit sustained research.

(2)     Each law library shall be open for a minimum of five days per week including at least one weekend day. On each day a law library is open:

(i)     in facilities with more than 600 prisoners, each law library shall be operated for a minimum of ten hours, of which at least eight shall be during lock-out hours;

(ii)    in facilities with 600 or fewer prisoners, each law library shall be operated for a minimum of eight and a half hours, of which at least six and a half shall be during lock-out hours;

(iii)   in all facilities, the law library shall be operated for at least three hours between 6 p.m. and 10 p.m.; and

(iv)    the law library will be kept open for prisoners' use on all holidays which fall on regular law library days except New Year's Day, July 4th, Thanksgiving, and Christmas.  The law library may be closed on holidays other than those specified provided that law library services are provided on either of the two days of the same week the law library is usually closed. On holidays on which the law library is kept open, it shall operate for a minimum of eight hours. No changes to law library schedules shall be made without written notice to the Board of Correction, and shall be received at least five business days before the planned change(s) is to be implemented.

(3)     The law library schedule shall be arranged to provide access to prisoners during times of the day when other activities such as recreation, commissary, meals, school, sick call, etc., are not scheduled. Where such considerations cannot be made, prisoners shall be afforded another opportunity to attend the law library at a later time during the day.

(4)     Each prisoner shall be granted access to the law library for a period of at least two hours per day on each day the law library is open. Upon request, extra time may be provided as needed, space and time permitting. In providing extra time, prisoners who have an immediate need for additional time, such as prisoners on trial and those with an impending court deadline shall be granted preference.

(5)     Notwithstanding the provisions of paragraph (f)(4), prisoners housed for medical reasons in the contagious disease units may be denied access to the law library.  An alternative method of access to legal materials shall be instituted to permit effective legal research.

(6)     The law library hours for prisoners in punitive segregation may be reduced or eliminated, provided that an alternative method of access to legal materials is instituted to permit effective legal research.

(7)     Legal research classes for general population prisoners shall be conducted at each facility on at least a quarterly basis. Legal research training materials shall be made available upon request to prisoners in special housing.

(8)     The Department shall report annually to the Board detailing the resources available at the law library at each facility, including a list of titles and dates of all law books and periodicals and the number, qualifications and hours of English and Spanish-speaking legal assistants.

(g)     *Legal documents and supplies.*

(1)     Each law library shall contain necessary research and reference materials which  shall be kept properly updated and supplemented, and shall be replaced without undue delay when materials are missing or damaged.

(2)     Prisoners shall have reasonable access to typewriters, dedicated word processors, and photocopiers for the purpose of preparing legal documents. A sufficient number of operable typewriters, dedicated word processors, and photocopy machines will be provided for prisoner use.

(3)     Legal clerical supplies, including pens, legal paper and pads shall be made available for purchase by prisoners. Such legal clerical supplies shall be provided to indigent prisoners at Department  expense.

    (4)    Unmarked legal forms which are commonly used by prisoners shall be made available. Each prisoner shall be permitted to use or make copies of such forms for his or her own use.

(h)    *Law library staffing.*

    (1)    During all hours of operation, each law library shall be staffed with trained civilian legal coordinator(s) to assist prisoners with the preparation of legal materials. Legal coordinator coverage shall be provided during extended absences of the regularly assigned legal coordinator(s).

    (2)    Each law library shall be staffed with an adequate number of permanently assigned correction officers knowledgeable of law library procedures.

    (3)    Spanish-speaking prisoners shall be provided assistance in use of the law library by employees fluent in the Spanish language on an as needed basis.

(i)    *Number of legal documents and research materials.*

    (1)    Prisoners shall be permitted to purchase and receive law books and other legal research materials from any source.

    (2)    Reasonable regulations governing the keeping of materials in cells and the searching of cells may be adopted, but under no circumstances may prisoners' legal documents, books, and papers be read or confiscated by correctional personnel without a lawful warrant.  Where the space in a cell is limited, an alternative method of safely storing legal materials elsewhere in the facility is required, provided that a prisoner shall have regular access to these materials.

(j)    *Limitation of access to law library.*

    (1)    A prisoner may be removed from the law library if he or she disrupts the orderly functioning of the law library or does not use the law library for its intended purposes. A prisoner may be excluded from the law library for more than the remainder of one law library period only for a disciplinary infraction occurring within a law library.

    (2)    Any determination to limit a prisoner's right of access to the law library shall be made in writing and shall state the specific facts and reasons underlying such determination. A copy of this determination, including the appeal procedure, shall be sent to the Board and to any person affected by the determination within 24 hours of the determination.

    (3)    An alternative method of access to legal materials shall be instituted to permit effective legal research for any prisoner excluded from the law library. A legal coordinator shall visit any excluded prisoner to determine his or her law library needs upon request.

(4)     Any person affected by a determination made pursuant to subdivision (j) may appeal such determination to the Board.

    (i)     The person affected by a determination shall give notice in writing to the Board and to the Department of his or her intent to appeal the determination.

    (ii)    The Department and any person affected by the determination may submit to the Board for its consideration any relevant material in addition to the written determination.

    (iii)   The Board or its designee shall issue a written decision upon the appeal within five business days after receiving notice of the requested review.

## § 1-09  Visiting.

(a)     *Policy.*

Prisoners are entitled to receive personal visits of sufficient length and number.

(b)     *Visiting and waiting areas.*

(1)     A visiting area of sufficient size to meet the requirements of this section shall be established and maintained in each facility.

(2)     The visiting area shall be designed so as to allow physical contact between prisoners and their visitors as required by subdivision (f) of this section.

(3)     The Department shall make every effort to minimize the waiting time prior to a visit. Visitors shall not be required to wait outside a facility unless adequate shelter is provided and the requirements of paragraph (b)(4) of this section are met.

(4)     All waiting and visiting areas shall provide for at least minimal comforts for visitors, including but not limited to:

    (i)     sufficient seats for all visitors;

    (ii)    access to bathroom facilities and drinking water throughout the waiting and visiting periods;

    (iii)   access to vending machines for beverages and foodstuffs at some point during the waiting or visiting period; and

(iv)    access to a Spanish-speaking employee or volunteer at some point during the waiting or visiting period. All visiting rules, regulations and hours shall be clearly posted in English and Spanish in the waiting and visiting areas at each facility.

(5)    The Department shall make every effort to utilize outdoor areas for visits during the warm weather months.

(c)    *Visiting schedule.*

(1)    Visiting hours may be varied to fit the schedules of individual facilities but must meet the following minimum requirements for detainees:

(i)    Monday through Friday. Visiting shall be permitted on at least three days for at least three consecutive hours between 9 a.m. and 5 p.m. Visiting shall be permitted on at least two evenings for at least three consecutive hours between 6 p.m. and 10 p.m.

(ii)    Saturday and Sunday. Visiting shall be permitted on both days for at least five consecutive hours between 9 a.m. and 8 p.m.

(2)    Visiting hours may be varied to fit the schedules of individual facilities but must meet the following minimum requirements for sentenced prisoners:

(i)    Monday through Friday. Visiting shall be permitted on at least one evening for at least three consecutive hours between 6 p.m. and 10 p.m.

(ii)    Saturday and Sunday. Visiting shall be permitted on both days for at least five consecutive hours between 9 a.m. and 8 p.m.

(3)    The visiting schedule of each facility shall be available by contacting either the central office of the Department or the facility.

(4)    Visits shall last at least one hour. This time period shall not begin until the prisoner and visitor meet in the visiting room.

(5)    Sentenced prisoners are entitled to at least two visits per week with at least one on an evening or the weekend, as the sentenced prisoner wishes. Detainees are entitled to at least three visits per week with at least one on an evening or the weekend, as the detainee wishes. Visits by properly identified persons providing services or assistance, including lawyers, doctors, religious advisors, public officials, therapists, counselors and media representatives, shall not count against this number.

(6)    There shall be no limit to the number of visits by a particular visitor or category of visitors.

(7)     In addition to the minimum number of visits required by paragraphs (1), (2) and (5) of this subdivision, additional visitation shall be provided in cases involving special necessity, including but not limited to, emergency situations and situations involving lengthy travel time.

(8)     Prisoners shall be permitted to visit with at least three visitors at the same time, with the maximum number to be determined by the facility.

(9)     Visitors shall be permitted to visit with at least two prisoners at the same time, with the maximum number to be determined by the facility.

(10)    If necessitated by lack of space, a facility may limit the total number of persons in any group of visitors and prisoners to four. Such a limitation shall be waived in cases involving special necessity, including but not limited to, emergency situations and situations involving lengthy travel time.

(d)     *Initial visit.*

(1)     Each detainee shall be entitled to receive a non-contact visit within 24 hours of his or her admission to the facility.

(2)     If a visiting period scheduled pursuant to paragraph (c)(1) of this section is not available within 24 hours after a detainee's admission, arrangements shall be made to ensure that the initial visit required by this subdivision is made available.

(e)     *Visitor identification and registration.*

(1)     Consistent with the requirements of this subdivision, any properly identified person shall, with the prisoner's consent, be permitted to visit the prisoner.

    (i)     Prior to a visit, a prisoner shall be informed of the identity of the prospective visitor.

    (ii)    A refusal by a prisoner to meet with a particular visitor shall not affect the prisoner's right to meet with any other visitor during that period, nor the prisoner's right to meet with the refused visitor during subsequent periods.

(2)     Each visitor shall be required to enter in the facility visitors log:

    (i)     his or her name;
    (ii)    his or her address;
    (iii)   the date;
    (iv)    the time of entry;
    (v)     the name of the prisoner or prisoners to be visited; and
    (vi)    the time of exit.

(3)     Any prospective visitor who is under 16 years of age shall be required to enter, or have entered for him or her, in the facility visitors log:

    (i)     the information required by paragraph (2) of this subdivision;
    (ii)    his or her age; and
    (iii)   the name, address, and telephone number of his or her parent or legal guardian.

(4)     The visitors log shall be confidential, and information contained therein shall not be read by or revealed to non-Department staff except as provided by the City Charter or pursuant to a specific request by an official law enforcement agency. The Department shall maintain a record of all such requests with detailed and complete descriptions.

(5)     Prior to visiting a prisoner, a prospective visitor under 16 years of age may be required to be accompanied by a person 18 years of age or older, and to produce oral or written permission from a parent or legal guardian approving such visit.

(6)     The Department may adopt alternative procedures for visiting by persons under 16 years of age. Such procedures must be consistent with the policy of paragraph (e) (5) of this subdivision, and shall be submitted to the Board for approval.

(f)   *Contact visits.*

Physical contact shall be permitted between every prisoner and all of his or her visitors throughout the visiting period, including holding hands, holding young children, and kissing. The provisions of this subdivision are inapplicable to prisoners housed for medical reasons in the contagious disease units.

(g)   *Visiting security and supervision.*

(1)     All prisoners, prior and subsequent to each visit, may be searched solely to ensure that they possess no contraband.

(2)     All prospective visitors may be searched prior to a visit solely to ensure that they possess no contraband.

(3)     Any body search of a prospective visitor made pursuant to paragraph (2) of this subdivision shall be conducted only through the use of electronic detection devices. Nothing contained herein shall affect any authority possessed by correctional personnel pursuant to statute.

(4)     Objects possessed by a prospective visitor, including but not limited to, handbags or packages, may be searched or checked. Personal effects, including wedding rings and religious medals and clothing, may be worn by visitors during a visit. The Department may require a prospective visitor

to secure in a lockable locker his or her personal property, including but not limited to bags, outerwear and electronic devices. A visit may not be delayed or denied because an operable, lockable locker is not available.

(5)   Supervision shall be provided during visits solely to ensure that the safety or security of the facility is maintained.

(6)   Visits shall not be listened to or monitored unless a lawful warrant is obtained, although visual supervision should be maintained.

(h)   *Limitation on visiting rights.*

(1)   Visiting rights shall not be denied, revoked, limited or interfered with based upon a prisoner's or prospective visitor's:

   (i)     sex;
   (ii)    sexual orientation;
   (iii)   race;
   (iv)    age, except as otherwise provided in this section;
   (v)     nationality;
   (vi)    political beliefs;
   (vii)   religion;
   (viii)  criminal record;
   (ix)    pending criminal or civil case;
   (x)     lack of family relationship;
   (xi)    gender; or
   (xii)   disability.

(2)   The visiting rights of a prisoner with a particular visitor may be denied, revoked or limited only when it is determined that the exercise of those rights constitutes a serious threat to the safety or security of a facility, provided that visiting rights with a particular visitor may be denied only if revoking the right to contact visits would not suffice to reduce the serious threat.

This determination must be based on specific acts committed by the visitor during a prior visit to a facility that demonstrate his or her threat to the safety and security of a facility, or on specific information received and verified that the visitor plans to engage in acts during the next visit that will be a threat to the safety or security of the facility. Prior to any determination, the visitor must be provided with written notification of the specific charges and the names and statements of the charging parties, and be afforded an opportunity to respond. The name of an informant may be withheld if necessary to protect his or her safety.

(3)   A prisoner's right to contact visits as provided in subdivision (f) of this section may be denied, revoked, or limited only when it is determined that such visits constitute a serious threat to the safety or security of a facility. Should a determination be made to deny, revoke or limit a prisoner's right

to contact visits in the usual manner, alternative arrangements for affording the prisoner the requisite number of visits shall be made, including, but not limited to, non-contact visits.

This determination must be based on specific acts committed by the prisoner while in custody under the present charge or sentence that demonstrate his or her threat to the safety and security of a facility, or on specific information received and verified that the prisoner plans to engage in acts during the next visit that will be a threat to the safety or security of the facility. Prior to any determination, the prisoner must be provided with written notification of the specific charges and the names and statements of the charging parties, and be afforded an opportunity to respond. The name of an informant may be withheld if necessary to protect his or her safety.

(4)     Any determination to deny, revoke or limit a prisoner's visiting rights pursuant to  paragraphs (2) and (3) of this subdivision shall be in writing and shall state the specific facts and reasons underlying such determination. A copy of this determination, including the appeal procedure, shall be sent to the Board and to any person affected by the determination within 24 hours of the determination.

(5)     Any person affected by a determination made pursuant to paragraphs (2) and (3) of this subdivision may appeal such determination to the Board.

(i)     The person affected by the determination shall give notice in writing to the  Board and the Department of his or her intent to appeal the determination.

(ii)    The Department and any person affected by the determination may submit to the Board for its consideration any relevant material in addition to the written determination.

(iii)   The Board or its designee shall issue a written decision upon the appeal within five business days after receiving notice of the requested review.

§  1-10  **Telephone Calls.**

(a)     *Policy.*

Prisoners are entitled to make periodic telephone calls. A sufficient number of telephones to meet the requirements of this section shall be installed in the housing areas of each facility.

(b)     *Initial telephone call.*

Upon admission to a facility, each detainee shall be permitted to make one completed local telephone call at Department expense. Requests to make

additional telephone calls upon admission shall be decided by the facility. Long distance telephone calls shall be made collect, although arrangements may be made to permit the prisoner to bear the cost of such calls.

(c)   *Detainee telephone calls.*

Detainees shall be permitted to make a minimum of one telephone call each day. Three calls each week shall be provided to indigent detainees at Department expense if made within New York City.  Long distance telephone calls shall be made collect or at the expense of the detainee.

(d)   *Sentenced prisoner telephone calls.*

Sentenced prisoners shall be permitted to make a minimum of two telephone calls each week. These calls shall be provided to indigent sentenced prisoners at Department expense if made within New York City. Long distance telephone calls shall be made collect or at the expense of the sentenced prisoner.

(e)   *Duration of telephone calls.*

The Department shall allow telephone calls of at least six minutes in duration.

(f)   *Scheduling of telephone calls.*

In meeting the requirements of subdivisions (c) and (d) of this section, telephone calls shall be permitted during all lock-out periods. Telephone calls of an emergency nature shall be made at any reasonable time.

(g)   *Incoming telephone calls.*

(1)   A prisoner shall be permitted to receive incoming telephone calls of an emergency nature, or a message shall be taken and the prisoner permitted to return the call as soon as possible.

(2)   A prisoner shall be permitted to receive incoming telephone calls from his or her attorney of record in a pending civil or criminal proceeding, or a message shall be taken and the prisoner permitted to return the call as soon as possible. Such calls must pertain to the pending proceeding.

(h)   *Supervision of telephone calls.*

Upon implementation of appropriate procedures, prisoner telephone calls may be listened to or monitored only when legally sufficient notice has been given to the prisoners.  Telephone calls to the Board of Correction, Inspector General and other monitoring bodies, as well as to treating physicians and clinicians, attorneys and clergy shall not be listened to or monitored.

(i)    *Limitation on telephone rights.*

    (1)    The telephone rights of any prisoner may be limited only when it is determined that the exercise of those rights constitutes a threat to the safety or security of the facility or an abuse of written telephone regulations previously known to the prisoner.

        (i)    This determination must be based on specific acts committed by the prisoner during the exercise of telephone rights that demonstrate such a threat or abuse. Prior to any determination, the prisoner must be provided with written notification of specific charges and the names and statements of the charging parties, and be afforded an opportunity to respond. The name of an informant may be withheld if necessary to protect his or her safety.

        (ii)    Any determination to limit a prisoner's telephone rights shall be made in writing and state specific facts and reasons underlying such determination. A copy of this determination, including the appeal procedure, shall be sent to the Board and to any person affected by the determination within 24 hours of the determination.

    (2)    The telephone rights provided in subdivisions (c) and (d) of this section may be limited for prisoners in punitive segregation, provided that such persons shall be permitted to make a minimum of one telephone call each week.

(j)    *Appeal.*

Any person affected by a determination made pursuant to this subdivision may appeal such determination to the Board.

    (1)    The person affected by the determination shall give notice in writing to the Board and the Department of his or her intent to appeal the determination.

    (2)    The Department and any person affected by the determination may submit to the Board for its consideration any relevant material in addition to the written determination.

    (3)    The Board or its designee shall issue a written decision upon the appeal within five business days after receiving notice of the requested review.

## § 1-11 Correspondence.

(a)    *Policy.*

Prisoners are entitled to correspond with any person, except when there is a reasonable belief that limitation is necessary to protect public safety or maintain facility order and security. The Department shall establish appropriate

procedures to implement this policy.  Correspondence shall not be deemed to constitute a threat to safety and security of a facility solely because it criticizes a facility, its staff, or the correctional system, or espouses unpopular ideas, including ideas that facility staff deem not conducive to rehabilitation or correctional treatment.  The Department shall provide notice of this policy to all prisoners.

(b)   *Number and language.*

(1)   There shall be no restriction upon incoming or outgoing prisoner correspondence based upon either the amount of correspondence sent or received, or the language in which correspondence is written.

(2)   If a prisoner is unable to read or write, he or she may receive assistance with correspondence from other persons, including but not limited to, facility employees and prisoners.

(c)   *Outgoing correspondence.*

(1)   Each facility shall make available to indigent prisoners at Department expense stationery and postage for all letters to attorneys, courts and public officials, as well as two other letters each week.

(2)   Each facility shall make available for purchase by prisoners both stationery and postage.

(3)   Outgoing prisoner correspondence shall bear the sender's name and either the facility post office box or street address or the sender's home address in the upper left hand corner of the envelope.

(4)   Outgoing prisoner correspondence shall be sealed by the prisoner and deposited in locked mail receptacles.

(5)   All outgoing prisoner correspondence shall be forwarded to the United States Postal Service at least once each business day.

(6)   Outgoing prisoner non-privileged correspondence shall not be opened or read except pursuant to a lawful search warrant or the warden's written order articulating a reasonable basis to believe that the correspondence threatens the safety or security of the facility, another person, or the public.

(i)   The warden's written order shall state the specific facts and reasons supporting the determination.

(ii)   The affected prisoner shall be given written notification of the determination and the specific facts and reasons supporting it.  The warden may delay notifying the prisoner only for so long as such notification would endanger the safety and

security of the facility, after which the warden immediately shall notify the prisoner.

(iii) A written record of correspondence read pursuant to this paragraph shall be maintained and shall include: the name of the prisoner, the name of the intended recipient, the name of the reader, the date that the correspondence was read, and the date that the prisoner received notification.

(iv) Any action taken pursuant to this paragraph shall be completed within five business days of receipt of the correspondence by the Department.

(7) Outgoing prisoner privileged correspondence shall not be opened or read except pursuant to a lawful search warrant.

(d) *Incoming correspondence.*

(1) Incoming correspondence shall be delivered to the intended prisoner within 48 hours of receipt by the Department unless the prisoner is no longer in custody of the Department.

(2) A list of items that may be received in correspondence shall be established by the Department. Upon admission to a facility, prisoners shall be provided a copy of this list or it shall be posted in each housing area.

(e) *Inspection of incoming correspondence.*

(1) Incoming prisoner non-privileged correspondence

(a) shall not be opened except in the presence of the intended prisoner or pursuant to a lawful search warrant or the warden's written order articulating a reasonable basis to believe that the correspondence threatens the safety or security of the facility, another person, or the public.

(i) The warden's written order shall state the specific facts and reasons supporting the determination.

(ii) The affected prisoner and sender shall be given written notification of the warden's determination and the specific facts and reasons supporting it. The warden may delay notifying the prisoner and the sender only for so long as such notification would endanger the safety or security of the facility, after which the warden immediately shall notify the prisoner and sender.

29

   (iii) A written record of correspondence read pursuant to this subdivision shall be maintained and shall include: the name of the sender, the name of the intended prisoner recipient, the name of the reader, the date that the correspondence was received and was read, and the date that the prisoner and sender received notification.

   (iv) Any action taken pursuant to this subdivision shall be completed within five business days of receipt of the correspondence by the Department.

  (b) shall not be read except pursuant to a lawful search warrant or the warden's written order articulating a reasonable basis to believe that the correspondence threatens the safety or security of the facility, another person, or the public. Procedures for the warden's written order pursuant to this subdivision are set forth in paragraph (1) of this subdivision.

 (2) Incoming correspondence may be manipulated or inspected without opening, and subjected to any non-intrusive devices. A letter may be held for an extra 24 hours pending resolution of a search warrant application.

 (3) Incoming privileged correspondence shall not be opened except in the presence of the recipient prisoner or pursuant to a lawful search warrant. Incoming privileged correspondence shall not be read except pursuant to a lawful search warrant.

(f) *Prohibited items in incoming correspondence.*

 (1) When an item found in incoming correspondence involves a criminal offense, it may be forwarded to the appropriate authority for possible criminal prosecution. In such situations, the notice required by paragraph (3) of this subdivision may be delayed if necessary to prevent interference with an ongoing criminal investigation.

 (2) A prohibited item found in incoming prisoner correspondence that does not involve a criminal offense shall be returned to the sender, donated or destroyed, as the prisoner wishes.

 (3) Within 24 hours of the removal of an item, the Board and the intended prisoner shall be sent written notification of this action. This written notice shall include:

  (i) the name and address of the sender;
  (ii) the item removed;
  (iii) the reasons for removal;
  (iv) the choice provided by paragraph (2) of this subdivision; and
  (v) the appeal procedure.

(4)    After removal of an item, the incoming correspondence shall be forwarded to the intended prisoner.

(g)    *Appeal.*

Any person affected by the determination to remove an item from prisoner correspondence may appeal such determination to the Board.

(1)    The person affected by the determination shall give notice in writing to the Board and to the Department of his or her intent to appeal the determination.

(2)    The Department and any person affected by the determination may submit to the Board for its consideration any relevant material in addition to the written determination.

(3)    The Board or its designee shall issue a written decision upon the appeal within 14 business days after receiving notice of the requested review.

§ 1-12 **Packages**.

(a)    *Policy.*

Prisoners shall be permitted to receive packages from, and send packages to, any person, except when there is reasonable belief that limitation is necessary to protect public safety or maintain facility order and security.

(b)    *Number.*

The Department may impose reasonable restrictions on the number of packages sent or received.

(c)    *Outgoing packages.*

The costs incurred in sending outgoing packages shall be borne by the prisoner.

(d)    *Incoming packages.*

(1)    Incoming packages shall be delivered within 48 hours of receipt by the Department, unless the intended prisoner is no longer in custody of the Department.

(2)    Packages may be personally delivered to a facility during visiting hours.

(3)    Upon admission to a facility, prisoners shall be provided with a copy of a list of items that may be received in packages or this list or it shall be posted in each housing area.

(e)   *Inspection of incoming packages.*

    (1)   Incoming packages may be opened and inspected.

    (2)   Correspondence enclosed in incoming packages may not be opened or read except pursuant to the procedures set forth in subdivision (e) of §1-11.

(f)   *Prohibited items in incoming packages.*

    (1)   When an item found in an incoming package involves a criminal offense, it may be forwarded to the appropriate authority for possible criminal prosecution. In such situations, the notice required by paragraph (3) of this subdivision may be delayed if necessary to prevent interference with an ongoing criminal investigation.

    (2)   A prohibited item found in an incoming package that does not involve a criminal offense shall be returned to the sender, donated or destroyed, as the prisoner wishes.

    (3)   Within 24 hours of the removal of an item, the Board and the intended prisoner shall be sent written notification of this action. This written notice shall include:

        (i)    the name and address of the sender;
        (ii)   the item removed;
        (iii)  the reasons for removal;
        (iv)   the choice provided by paragraph (2) of this subdivision; and
        (v)    the appeal procedure.

    (4)   After removal of an item, all other items in the package shall be forwarded to the intended prisoner.

(g)   *Appeal.*

Any person affected by the determination to remove an item from an incoming package may appeal such determination to the Board.

    (1)   The person affected by the determination shall give notice in writing to the Board and to the Department of his or her intent to appeal the determination.

    (2)   The Department and any person affected by the determination may submit to the Board for its consideration any relevant material in addition to the written determination.

    (3)   The Board or its designee shall issue a written decision upon the appeal within 14 business days after receiving notice of the requested review.

§ 1-13  **Publications.**

(a)    *Policy.*

Prisoners are entitled to receive new or used publications from any source, including family, friends and publishers, except when there is substantial belief that limitation is necessary to protect public safety or maintain facility order and security. "Publications" are printed materials including soft and hardcover books, articles, magazines and newspapers.

(b)    *Number and language.*

There shall be no restriction upon the receipt of publications based upon the number of publications previously received by the prisoner, or the language of the publication.

(c)    *Incoming publications.*

(1)    Incoming publications shall be delivered to the intended prisoner within 48 hours of receipt by the Department unless the prisoner is no longer in custody of the Department.

(2)    Incoming publications may be opened and inspected pursuant to the procedures applicable to incoming packages.

(3)    Incoming publications shall not be censored or delayed unless they contain specific instructions on the manufacture or use of dangerous weapons or explosives, plans for escape, or other material that may compromise the safety and security of the facility.

(4)    Incoming publications shall only be read to ascertain if they contain material prohibited by paragraph (3) of this subdivision.

(5)    Within 24 hours of a decision to censor or delay all or part of an incoming publication, the Board and the intended prisoner shall be sent written notification of such action. This notice shall include the specific facts and reasons underlying the determination and the appeal procedure.

(d)    *Appeal.*

Any person affected by a determination made pursuant to paragraph (c) (3) of this section may appeal such determination to the Board.

(1)    The person affected by the determination shall give notice in writing to the Board and the Department of his or her intent to appeal the determination.

(2)    The Department and any person affected by the determination may submit to the Board for its consideration any relevant material in addition to the written determination.

(3)    The Board or its designee shall issue a written decision upon the appeal within five business days after receiving notice of the requested review.

## § 1-14 Access to Media.

(a)    *Policy.*

Prisoners are entitled to access to the media. "Media" means any printed or electronic means of conveying information to any portion of the public and shall include, but is not limited to newspapers, magazines, books or other publications, and licensed radio and television stations.

(b)    *Media interviews*

(1)    Properly identified media representatives shall be entitled to interview any prisoner who consents to such an interview. "Properly identified media representative" means any person who presents proof of his or her affiliation with the media.

(2)    The prisoner's consent must be in writing on a form that includes the following information in Spanish and English:

    (i)    the name and organization of the media representative;

    (ii)    notification to the prisoner that statements made to the media representative may be detrimental to the prisoner in future administrative or judicial proceedings;

    (iii)    notification to the prisoner that he or she is not obligated to speak to the media representative; and

    (iv)    notification to the prisoner that he or she may postpone the media interview in order to consult with an attorney or any other person.

(3)    The Department may require the consent of an attorney of record prior to scheduling a media interview with a detainee undergoing examination for competency pursuant to court order.

(4)    The Department may require the consent of an attorney of record or a parent or legal guardian prior to scheduling a media interview with a prisoner under 18 years of age.

(5)    The name of the Department's media contact shall be published. Media representatives shall direct requests for interviews to this person.

(6)   Interviews shall be scheduled promptly by the Department but not later than 24 hours from a request made between 8 a.m. and 4 p.m. The 24-hour period may be extended if necessitated by the prisoner's absence from the facility.

(c)   *Limitation of media interviews.*

(1)   The Department may deny, revoke or limit a media interview with a media representative or a prisoner only if it is determined that such interview constitutes a threat to the safety or security of the facility.

(2)   This determination must be based on specific acts committed by the media representative or by the prisoner during a prior visit that demonstrate his or her threat to the safety and security of the facility. Prior to any determination, the media representative or the prisoner must be provided with written notification of the specific charges and the names and statements of the charging parties, and be afforded an opportunity to respond.

(3)   Any determination made pursuant to paragraph (1) of this subdivision shall be made in writing and shall state the specific facts and reasons underlying such determination. A copy of this determination, including the appeal procedure, shall be sent to the Board and to any person affected by the determination within 24 hours of the determination.

(4)   Any person affected by a determination made pursuant to this subdivision may appeal such determination to the Board.

(i)    The person affected by the determination shall give notice in writing to the Board and to the Department of his or her intent to appeal the determination.

(ii)   The Department and any person affected by the determination may submit to the Board for its consideration any relevant material in addition to the written determination.

(iii)  The Board or its designee shall issue a written decision upon the appeal within five business days after it has received notice of the requested review.

§ 1-15 **Variances.**

(a)   *Policy.*

The Department may apply for a variance from a specific subdivision or section of these minimum standards when compliance cannot be achieved or continued. A "limited variance" is an exemption granted by the Board from full compliance

with a particular subdivision or section for a specified period of time. A "continuing variance" is an exemption granted by the Board from full compliance with a particular subdivision or section for an indefinite period of time.  An "emergency variance" as defined in paragraph (b)(3) of this section is an exemption granted by the Board from full compliance with a particular subdivision or section for no more than 30 days.

(b)   *Limited, continuing and emergency variances.*

    (1)   The Department may apply to the Board for a variance when:

        (i)   despite its best efforts, and the best efforts of other New York City officials and agencies, full compliance with the subdivision or section cannot be achieved, or

        (ii)   compliance is to be achieved for a limited period in a manner other than specified in the subdivision or section.

    (2)   The Department may apply to the Board for a continuing variance when, despite its best efforts and the best efforts of other New York City officials and agencies, compliance cannot be achieved in the foreseeable future because:

        (i)   full compliance with a specific subdivision or section would create extreme practical difficulties as a result of circumstances unique to a particular facility, and lack of full compliance would not create a danger or undue hardship to staff or prisoners; or

        (ii)   compliance is to be achieved in an alternative manner sufficient to meet the intent of the subdivision or section.

    (3)   The Department may apply to the Board for an emergency variance when an emergency situation prevents continued compliance with the subdivision or section.  An emergency variance for a period of less than 24 hours may be declared by the Department when an emergency situation prevents continued compliance with a particular subdivision or section.  The Board or its designee shall be immediately notified of the emergency situation and the variance declaration.

(c)   *Variance application.*

    (1)   An application for a variance must be made in writing to the Board by the Commissioner of the Department as soon as a determination is made that continued compliance will not be possible and shall state:

        (i)   the type of variance requested;

        (ii)   the particular subdivision or section at issue;

(iii)    the requested commencement date of the variance;

(iv)    the efforts undertaken by the Department to achieve compliance by the effective date;

(v)    the specific facts or reasons making full compliance impossible, and when those facts and reasons became apparent;

(vi)    the specific plans, projections and timetables for achieving full compliance;

(vii)    the specific plans for serving the purpose of the subdivision or section for the period that strict compliance is not possible; and

(viii)    if the application is for a limited variance, the time period for which the variance is requested, provided that this shall be no more than six months.

(2)    In addition to the provisions of paragraph (1) of this subdivision, an application for a continuing variance shall state:

(i)    the specific facts and reasons underlying the impracticability or impossibility of compliance within the foreseeable future, and when those facts and reasons become apparent, and

(ii)    the degree of compliance achieved, and the Department's efforts to mitigate any possible danger or hardships attributable to the lack of full compliance; or

(iii)    a description of the specific plans for achieving compliance in an alternative manner sufficient to meet the intent of the subdivision or section.

(3)    In addition to the requirements of paragraph (1) of this subdivision, an application for an emergency variance for a period of 24 hours or more (or for renewal of an emergency variance), shall state:

(i)    the particular subdivision or section at issue;

(ii)    the specific facts or reasons making continued compliance impossible, and when those facts and reasons became apparent;

(iii)    the specific plans, projections and timetables for achieving full compliance; and

(iv)    the time period for which the variance is requested, provided that this shall be no more than thirty days.

(d)     *Variance procedure for limited and continuing variance.*

    (1)     Prior to a decision on an application for a limited or continuing variance, the Board shall consider the position of all interested parties, including correctional employees, prisoners and their representatives, other public officials and legal, religious and community organizations.

    (2)     Whenever practicable, the Board shall hold a public meeting or hearing on the variance application, and hear testimony from all interested parties.

    (3)     The Board's decision on a variance application shall be in writing.

    (4)     Interested parties shall be notified of the Board's decision as soon as practicable, and no later than 5 business days after the decision is made.

(e)     *Granting of variance.*

    (1)     The Board shall grant a variance only if it is presented with convincing evidence that the variance is necessary and justified.

    (2)     Upon granting a variance, the Board shall state:

        (i)     the type of variance
        (ii)     the date on which the variance will commence
        (iii)     the time period of the variance, if any, and
        (iv)     any requirements imposed as conditions on the variance.

(f)     *Renewal and review of variance.*

    (1)     An application for a renewal of a limited or emergency variance shall be treated in the same manner as an original application as provided in subdivisions (b), (c), (d) and (e) of this section. The Board shall not grant renewal of a variance unless it finds that, in addition to the requirements for approving an original application, a good faith effort has been made to comply with the subdivision or section within the previously prescribed time limitation, and that the requirements set by the Board as conditions on the original variance have been met.

    (2)     A petition for review of a continuing variance may be made upon the Board's own motion or by the Department, correctional employees, prisoners or their representatives. Upon receipt of a petition, the Board shall review and re-evaluate the continuing necessity and justification for the continuing variance. Such review shall be conducted in the same manner as the original application as provided in subdivisions (b), (c), (d) and (e) of this section. The Board will review all the facts and consider the positions of all interested parties. The Board will discontinue the variance, if after such review and consideration, it determines that:

(i) full compliance with the standard now can be achieved; or

(ii) requirements imposed as conditions upon which the continuing variance was granted have not been fulfilled or maintained; or

(iii) there is no longer compliance with the intent of the subdivision or section in an alternative manner as required by subparagraph (b) (2) (ii) of this section.

(3) The Board shall specify in writing and publicize the facts and reasons for its decision on an application for renewal or review of a variance. The Board's decision must comply with the requirements of subdivision (e) of this section, and, in the case of limited and continuing variances, paragraphs (d) (3) and (4) of this section. Where appropriate, the Board shall set an effective date for discontinuance of a continuing variance after consultation with all interested parties.

(4) The Board shall not grant more than two consecutive renewals of emergency variances.

Effective date:  June 16, 2008
Hildy J. Simmons
Chair