UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UMAR ALLI,

                            Plaintiff,

       v.

CAPTAIN LISA STEWARD-BOWDEN (#1225);
CAPTAIN JOHANNA BANKS (#819);
CAPTAIN JOSEPH CAPUTO, CAPTAIN B.
BEHARRI (#1603); OFFICER LYDON VICTOR (#14410);    **CASE NOS.**
OFFICER SANDY ARKHURST (#18507);    **11-cv-4952, 11-cv-7665**
OFFICER BUNTON; OFFICER TERRANCE DIXON    **(PKC) (KNF)**
(#17963); OFFICER ANDERSON ALCEUS (#18380);
OFFICER VELEZ (#11352); OFFICER PHILLIPS;
OFFICER ROHR (#18104); MARK A. SCOTT
SHARMA DUNBAR (#717); WARDENS
ROSE AGRO AND KATHLEEN MULVEY;
CITY OF NEW YORK; DORA SCHRIRO;
LEWIS FINKELMAN; CHARLTON LEMON;
HILDY J. SIMMONS; MICHAEL J. REGAN;
FLORENCE FINKLE; MICHAEL HOURIHANE;
LARRY DAVIS, SR.; RICHARD T. WOLF
CATHY POTLER; KENNITH T. ARMSTEAD
CORRECTIONAL HEALTH SERVICES/
PRISON HEALTH SERVICES and
JOHN DOES 1 THROUGH 6.

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE JUNE 21, 2013 SCHEDULING ORDER [DE 181]

### PRELIMINARY STATEMENT

      This never-ending saga began on June 19, 2013 when Your Honor orally denied

Defendant's application to bifurcate discovery and trial of Plaintiff's *Monell* claims in these

proceedings. Transcript of Civil Cause for Telephonic Conference Before the Honorable Kevin

Nathaniel Fox at 10, *Alli v. Steward-Bowden, et al.*, No. 11-Civ-4952 (June 19, 2013) ("6/19/13

Transcript"). From that point forward, Defendants have been on a rampage to elude Your Honor's ruling and put off *Monell* discovery for as long as possible. In their latest attempt, Defendants rely on Judge Castel's September 17, 2013 Order (the "Order") as a springboard upon which to deny Plaintiff's access to crucial discovery. Defendants' moving brief, however, provides no insight into how staging should proceed or why staging makes sense at this juncture of the proceedings. For the following reasons, it does not.

*First*, Defendants' objection that Plaintiff's requests are "expansive" and "sweeping" on grounds that they request "ten years worth" of documents misses the mark. This Court has repeatedly recognized that the "pattern and practice" evidence required to establish a *Monell* violation permits Plaintiff to seek discovery beyond the date of the incidents alleged in a complaint.

*Second*, despite their vigorous objections to Plaintiff's *Monell* demands, Defendants offer no evidence that searching for and producing responsive materials would actually pose a burden to the City.

*Third*, the deposition testimony of individual Defendants supports Plaintiff's allegations that the City failed in providing constitutionally adequate conditions of confinement and medical care to Mr. Alli.

It is clear that Defendants' request for staging is an opportunistic ploy intended to withhold crucial discovery in attempt to extract the most favorable settlement demand possible from Plaintiff between now and the settlement conference scheduled for November 26, 2013. This Court should intervene and stop Defendants' baseless protests against *Monell* discovery once and for all.

## RELEVANT BACKGROUND

Defendants have, thus far, unsuccessfully employed every procedural mechanism possible in their quest to avoid *Monell* discovery.

***12(c) Motion.*** On July 3, 2013, Defendant requested that Judge Castel schedule a conference in anticipation of Defendants' intended motion to dismiss the *Monell* claim. On August 6, 2013, the district court judge determined that any arguments as to the legal sufficiency of Plaintiff's *Monell* claim are best heard at the summary judgment stage. [DE 162].

***Orders of Protection.*** Defendants have moved twice to obtain an order preventing Plaintiff from taking a 30(b)(6) deposition of Defendant City. The second motion followed Your Honor's 10/1/13 Order instructing Defendant to produce a designee to testify on topics noticed in Plaintiff's 30(b)(6) notice dated July 15, 2013 ("First Notice"). [DE 172] On October 11, 2013, Plaintiff revised the First Notice to address Defendant's concerns stemming from the City's antiquated document management system. [DE 187-7]. While Defendants admit that the revised notice is narrower in scope than the "previously noticed deposition," *see, e.g.,* Transcript of Civil Cause for Telephonic Conference Before the Honorable Kevin Nathaniel Fox at 6, *Alli v. Steward-Bowden, et al.*, No. 11-Civ-4952 (October 15, 2013), they argue that the narrower notice moots the 10/1/13 Order.[1]

***Bifurcation.*** On June 19, 2013, Defendants orally sought an order to bifurcate *Monell* discovery, contending that bifurcation would "*save both the parties and the court time and energy because such a Monell claim cannot proceed if there's no underlying violation.*" 6/19/13

---

[1] Defendants' position ignores that the October 1, 2013 Order took into account Plaintiff's request that Defendants be instructed to comply with the First Notice or any notice issued thereafter. [DE 172 at 1]. Defendants' position also overlooks the fact that as a matter of logic, the narrower second notice cannot moot an order permitting a broader range of inquiry. [DE 187-7]. Plaintiff is currently seeking further sanctions from Defendant for its baseless refusal to comply with Your Honor's Order.

Transcript at 5. Your Honor disagreed, and concluded that "bifurcat[ing] discovery, hav[ing] a trial and then resum[ing] . . . discovery" on the *Monell* claim would be inefficient. *Id.* at 9.

On July 3, 2013, Defendant, by letter, requested that the Court reconsider the denial of Defendants' bifurcation application. Your Honor denied the petition on July 17, 2013 [DE 153] and Defendants sought relief through Judge Castel. Significantly, the September 17, 2013 decision issued by Judge Castel agreed that bifurcation was inappropriate at this juncture of the proceedings. Order at 4. For the reasons below, staging would also be an inefficient way to proceed.

**ARGUMENT**

**I.     THE SCOPE OF PLAINTIFF'S MONELL DEMANDS ARE NEITHER "EXPANSIVE" NOR "SWEEPING"**

Defendants' primarily object that Plaintiff's *Monell* demands seek documents spanning a time frame well beyond what Defendants believe to be the relevant time period at issue in this law suit. Defendants' Memorandum of Law In Support of Their Motion to Modify The June 21, 2013 Scheduling Order Pursuant to Fed. R. Civ. P. 16(b)(4), 16(c)(2)(F) and 16(c)(2)(L) ("Mov. Br.") at 6,7. Their protests in this regard ignore relevant case law.

For instance, in *Frails v. City of New York*, 236 F.R.D. 116, 118 (2006), plaintiff sought all disciplinary records concerning all defendants over an unlimited time frame. Defendant sought to limit the production of records to the prior ten years. *Id.* The court rejected the limitation, concluding that "[t]he date of the incidents do not render the records less likely to lead to evidence admissible at trial." *Id.* This court has consistently recognized that such limitations are inappropriate, nothing that a plaintiff asserting *Monell* liability is required to show a pattern and practice of unconstitutional conduct. *Nunez v. City of new York*, No. 11 Civ. 5845(LTS)(JCF), 2013 WL 2149869, at *4 (S.D.N.Y. May 17, 2013) (compelling responses to

4

plaintiff's discovery requests that spanned a ten-year period); *Mays v. Town of Hempstead*, No. CV 10–3998(LDW)(AKT), 2011 WL 4345164, at *1 (E.D.N.Y. Sept. 15, 2011) (finding documents that stemmed back seven years prior to the incident were "relevant and reasonable regarding a pattern and practice claim"). Accordingly, the time span of Plaintiff's *Monell* demands is not a basis to stage or otherwise postpone *Monell* discovery in this suit. Such delay is especially inappropriate given the omission of any fact establishing that the information Plaintiff seeks would actually be difficult to collect and compile and produce.

II. **DEFENDANTS HAVE OFFERED NO EVIDENCE THAT IT WOULD BE BURDENSOME TO SEARCH FOR AND PRODUCE DOCUMENTS RESPONSIVE TO PLAINTIFF'S REQUESTS**

Despite Defendant City's repeated objection to *Monell* discovery, there has been no explanation or evidence offered that it would *actually* be burdensome to produce the information Plaintiff seeks or prepare a designee to testify on the topics noticed.

*Stanford v. City of New York*, No. 13 Civ. 1736(ALC)(MHD), 2013 WL 4829334, at *1 (S.D.N.Y. Sept. 6, 2013), cited in Judge Castel's September 17, 2013 Order, is instructive on this point. There, plaintiff sought *Monell* discovery after being subject to "an unprovoked beating" by DOC correctional officers of the New York City Department of Correction." *Id.* In the order compelling Defendants to produce documents responsive to Plaintiff's *Monell* request, the court observed that while "implicit" in defendants objections is the "notion that it would be unduly burdensome for the City to search for and produce these documents," the defendant's submission was "silent on any evidence to support this contention." *Id.* at *2. The Court went on to state that "since the City (through the Department of Correction and the Law Department) has been litigating [other similar] case[s] and has searched for and produced the very documents in question, there seems to be no question that it is . . . capable . . . (and more so than plaintiff's

5

counsel) of putting its institutional hands on the documents the production of which is called for[.]" *Id.* The same is true here.

## III. DEPOSITIONS OF DEFENDANT-OFFICERS & AGENTS PROVIDES ADEQUATE SUPPORT FOR PLAINTIFF'S *MONELL* CLAIM.

Discovery taken thus far provides ample basis for allowing Plaintiff to proceed with *Monell* discovery. The Third Amended Complaint alleges that, among other things, Defendant City was grossly negligent in the hiring, training, supervising, and disciplining of its officers, all of which brought about the constitutional deprivations Plaintiff complains of. TAC ¶ 223. Thus far, Plaintiff has deposed seven DOC agents and/or officers, and the testimony elicited supports these allegations.

> (i) *The City caused Mr. Alli harm by failing to investigate his grievances alleging unconstitutional conduct by DOC officers, employees and/or staff.*

Recent depositions confirm that the City failed to act upon receiving notice about the repugnant conduct of certain named-Defendants. During their depositions, Defendants Alceus, Victor and Steward-Bowden confirmed that they were never contacted with respect to the allegations made in the letter dated June 12, 2011 letter, (*see* TAC ¶ 143), in which Mr. Alli asked to be kept away from Defendants Alceus, Steward-Bowden and Victor because these individuals were "trying to harm [him]." *Id.* Not one of these officers was aware that Mr. Alli had lodged such a grievance. *See* Declaration of Bianca M. Forde ("Forde Decl.") Ex. A (Alceus Tr.) at 132:18-133:17; Forde Decl. Ex. B (Steward-Bowden Tr.) at 177:20-25. Officer Lydon Victor's testimony is illuminating:

> MS. FORDE: Has anyone ever contacted you with respect to the complaints being made in this letter?
>     A  No.
> MS. FORDE: If an inmate complains against you to Commissioner, would you expect someone to contact you, follow up with you with regard to that complaint?

>           A  I would be notified.
>       MS. FORDE:  Has that happened before?
>           A  No.
>       MS. FORDE:  So, how do you know you would be notified by someone?
>           A.  Because I seen it happen to other people.
>       MS. FORDE:  So, does it surprise you that no one ever contacted you about this complaint being lodged against you with the Commissioner?
>           A  No one ever notified me about this.
>       MS. FORDE:  I'm asking:  Does that surprise you that this is the first time you are learning  about this letter that was sent to the Commissioner in June 2011?
>           A  Yes.

Forde Decl. Ex. C (Victor Tr.) at 130:12-131:18.  Plaintiff is entitled to *Monell* discovery concerning how such complaints are supposed to be investigated, who is charged with conducting the required investigation, and why such procedures were not followed here.  Staging would unjustifiably delay Plaintiff's access to this information.

        (ii)    *The City failed to ensure that Mr. Alli received the medical care necessary to prevent aggravation of his injuries, including a hearing aid*.

The medical records produced by Defendants during discovery reveal that a hearing aid was recommended by various physicians while Mr. Alli was in DOC custody.  It is clear that no such hearing aid was ever provided to Mr. Alli.  During the deposition of Defendant Steward-Bowden, the undersigned inquired as follows:

>       MS. FORDE:  Would it surprise you to learn that Mr. Alli was prescribed a hearing aid --after the May 5th, 2011, incident?
>           A  Yes, that would very much surprise me.
>       MS. FORDE:  Why would that surprise you?
>           A  Because I saw Mr. Alli in 2012, and I never saw him with no hearing aid on him.
>       MS. FORDE:  That's right, because it hadn't been given to him. Is it your understanding that DOC has a responsibility to provide items such as hearing aids when they are prescribed by physicians?
>           A  Yeah. If they prescribed it, they would have gave it to him.

Forde Decl. Ex. B (Steward-Bowden Tr.) at 243:21-244-21.  Plaintiff is entitled to *Monell* discovery concerning the City's failures with respect to follow up care which directly caused Mr.

Alli's harm and violated his right to be afforded constitutionally appropriate medical treatment. Staging would unjustifiably delay Plaintiff's access to this information.

      (iii)    *The City failed to monitor and/or train agents of the third-party health care agency retained by DOC to provide medical care to inmates.*

Plaintiff learned through discovery that Defendant Prison Health Services is a third-party agency, currently called Corizon Health Services ("Corizon"). Neither the relationship between DOC and Corizon, nor DOC's efforts, if any, to monitor and train agents of Corizon can be established without *Monell* discovery. However, the deposition of James Rich, the Corizon-employed physician assistant who provided care to Mr. Alli after the May 5, 2011 Incident suggests that DOC failed to monitor, train and adequately supervise Corizon and its employees.

> MS. HUGHES: While you were working at Rikers, did you ever receive any training from the Department of Corrections?
>     A. I don't think I – I am just trying to recall. Training in terms of the minimum standards of medical care.
> MS. HUGHES: Yes
>     A. From the department, no.

Forde Decl. Ex. D (Rich Tr.) at 69:7-25. Plaintiff is entitled to *Monell* discovery on these issues.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that Defendants' petition [DE 181] be denied.

Dated: November 7, 2013
      New York, New York

Respectfully submitted,

/s/ Bianca M. Forde
Bianca M. Forde
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166-4193
(212) 294-4600
bforde@winston.com

Diana L. Hughes

WINSTON & STRAWN LLP
101 California Street
San Francisco, California 94111-5802
(415) 591-1000
dhughes@winston.com

Counsel for Plaintiff
*Umar Alli*